Eric M. Fraser, 027241
Phillip W. Londen, 032488
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com
plonden@omlaw.com

William L. Niro (*pro hac vice*)
Christopher W. Niro (*pro hac vice*)
M. Chip De Preter (*pro hac vice*)
ARONBERG GOLDGEHN DAVIS & GARMISA
330 North Wabash Avenue, Suite 1700
Chicago, Illinois 60611
(312) 828-9600
wniro@agdglaw.com
cniro@agdglaw.com
cdepreter@agdglaw.com

Attorneys for Plaintiffs/Counterclaim-Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Top Brand LLC, Sky Creations, LLC, E Star LLC, and Flying Star LLC, | No. CV-21-00597-PHX-SPL |
| Plaintiffs, | **SECOND AMENDED COMPLAINT** |
| v. | **(Jury trial demanded)** |
| Cozy Comfort Company LLC, Brian Speciale, and Michael Speciale, | |
| Defendants. | |
| Cozy Comfort Company LLC, | |
| Counterclaim-Plaintiff, | |
| v. | |

Top Brand LLC, Sky Creations, LLC,
E Star LLC, and Flying Star LLC,
John Ngan, XYZ Corporations, John
Does, and Jane Does,

      Counterclaim-Defendants.

Plaintiffs, Top Brand LLC ("Top Brand"), Sky Creations LLC ("Sky"), E Star LLC ("E-Star"), and Flying Star LLC ("Flying Star") (collectively "Plaintiffs"), for their complaint against Cozy Comfort Company LLC ("Cozy Comfort"), Brian Speciale, and Michael Speciale (collectively "Defendants") allege as follows:

**NATURE OF THE ACTION**

1.     This is a declaratory judgement action seeking a determination that Plaintiffs do not infringe any valid or enforceable claim of U.S. Design Patent No. D859,788 ("the '788 patent") under 35 U.S.C. §271.

2.     This is a declaratory judgement action seeking a determination that the '788 Design patent is invalid, and unenforceable.

3.     This is a declaratory judgement action seeking a determination that Plaintiffs do not infringe any valid or enforceable claim of U.S. Design Patent No. D905,380 ("the '380 patent") under 35 U.S.C. §271.

4.     This is a declaratory judgement action seeking a determination that the '380 Design patent is invalid, and unenforceable.

5.     This is a declaratory judgement action seeking a determination that Plaintiffs do not infringe any valid or enforceable claim of U.S. Design Patent No. D886,416 ("the '416 patent") under 35 U.S.C. §271.

6.     This is a declaratory judgement action seeking a determination that the '416 Design patent is invalid, and unenforceable.

7.     This is a declaratory judgement action seeking a determination that Plaintiffs do not infringe any valid or enforceable claim of U.S. Design Patent No. D903,237 ("the '237 patent") under 35 U.S.C. §271.

8. This is a declaratory judgement action seeking a determination that the '237 Design patent is invalid, and unenforceable.

9. This is also an action seeking a determination that that Defendants have engaged in false marking in violation of 35 U.S.C. §292.

10. Plaintiffs also assert in this action Illinois state law claims for Unfair Competition and Intentional Interference with Contract.

11. This is an action seeking damages, attorneys fee and costs for violations of 35 U.S.C. §292 and 815 ILCS 510.

12. A true and correct copy of the '788 patent is attached as Exhibit A.

13. A true and correct copy of the file history of the '788 patent is attached as Exhibit B.

14. A true and correct copy of the '380 patent is attached as Exhibit C.

15. A true and correct copy of the file history of the '380 patent is attached as Exhibit D.

16. A true and correct copy of the '416 patent is attached as Exhibit E.

17. A true and correct copy of the file history of the '416 patent is attached as Exhibit F.

18. A true and correct copy of the '237 patent is attached as Exhibit G.

19. A true and correct copy of the file history of the '237 patent is attached as Exhibit H.

20. A true and correct copy of U.S. Patent No. 10,420,431 ("the '431 patent") is attached as Exhibit I.

21. A true and correct copy of the file history of the '431 patent is attached as Exhibit J.

**THE PARTIES**

22. Top Brand LLC is a California limited liability company with its principal place of business in Carson, California.

23. Top Brand is in the business of producing and selling clothing including hooded sweatshirts as well as wearable blankets through on-line retailers throughout the United States, including the state of Illinois.

24. E Star LLC is a California limited liability company with its principal place of business in Carson, California.

25. E Star is in the business of producing and selling clothing including hooded sweatshirts and wearable blankets through on-line retailers throughout the United States, including the state of in Illinois.

26. Flying Star LLC is an Illinois limited liability company having its principal place of business in Elgin, Illinois.

27. Flying Star is in the business of producing and selling clothing including hooded sweatshirts and wearable blankets though on-line retailers throughout the United States, including the state of in Illinois.

28. Sky Creations, LLC is an Illinois limited liability company located in Chicago, IL.

29. Sky owns all rights, title and interests in U.S. Design Patent No. D728,900 (the '900 patent) for a Hoodie.

30. The '900 patent is cited as a reference in connection with the '788 patent and, along with other cited references, limits the scope of the claims of the '788 patent.

31. Top Brand and Flying Star are the sole licensees of Sky's intellectual property, including the '900 Patent.

32. Cozy Comfort is a limited liability company organized under the laws of Arizona.

33. Cozy Comfort has a principal place of business at 4634 E. Peak View Rd., Cave Creek, AZ 85331.

34. Michael Speciale and Brian Speciale are individuals and the only two members of Cozy Comfort.

35.     On information and belief, Michael Speciale and Brian Speciale, individually and/or together manage, direct and control the actions of Cozy Comfort.

36.     On information and belief, Michael Speciale is a co-founder of Cozy Comfort and is involved with Cozy Comfort's day-to-day operations.

37.     Michael Speciale is a resident of Arizona, and maintains an address of 30604 N. 41st Way, Cave Creek, AZ 85331.

38.     Brian Speciale is a resident of Arizona, and maintains an address of 4634 E. Peak View Rd., Cave Creek, AZ 85331.

39.     In a communication to the United States Patent and Trademark Office ("USPTO") on September 21, 2017, attorney Thomas W. Galvani, acting on behalf of Defendants, represented to the Patent Office that the application that would mature into the '788 patent was assigned to Cozy Comfort by Michael Speciale and Brian Speciale, and that the assignment was recorded on September 14, 2017 on Reel/Frame 043595/0508.

40.     As of the date of the filing of this Second Amended Complaint, there is no assignment of the '788 patent recorded with the United States Patent and Trademark Office.

41.     As of the date of the filing of this Second Amended Complaint, no assignment of U.S. Patent Application No. 29/617,421 has been recorded with the United States Patent and Trademark Office.

42.     As of the date of this filing, searching for Reel/Frame 043595/0508 through the government patent assignment searching website https://assignment.uspto.gov/patent/index.html#/patent/search yields no results of any assignment being recorded with the USPTO.

43.     In the absence of a valid assignment by each of Michael Speciale and Brian Speciale, as the individuals listed as the inventors on the '788 patent, each is presumed to be a co-owner of all right title and interest in and to the '788 patent.

44.     In early November 2019 Cozy Comfort sent an email to Amazon.com alleging that Top Brand products infringed the '788 patent and requested that Amazon take down Top Brand listings to prevent sales of 15 different Top Brand products.

45.     Throughout November of 2019 and continuing to this date, and at all material times, Cozy Comfort has filed multiple patent infringement complaints with Amazon.com in an attempt to bar Defendants from selling products through Amazon.com based on Cozy Comfort's assertions that various products of Defendants infringe Cozy Comfort's intellectual property including the '788 Patent.

46.     Defendants maintain that their products do not infringe any valid and enforceable claim of the '788 Patent.

**JURISDICTION AND VENUE**

47.     Plaintiffs bring this action under Title 35 of the United States Code, and under 28 U.S.C. §§2201 and 2202, to obtain a declaration of non-infringement and invalidity with respect to the '788 Patent.

48.     This action arises under the patent laws of the United States, 35 U.S.C. §§100 et seq., which are within the original subject matter jurisdiction of this Court under 28 U.S.C. §§1331 and 1338(a).

49.     Defendants sell Cozy Comfort products in Illinois through on-line retailers such as Amazon.com, and at Costco, Target, Walmart, Kohl's, Macy's, JC Penny, and Bed Bath & Beyond brick and mortar stores in the Chicagoland area.  On information and belief, in the last two years alone Defendants have over 70 million in sales for their products, a substantial amount of which have been sold and delivered to consumers in Illinois.

50.     This Court has personal jurisdiction over each of the Defendants because each and every Defendant at least resides or transacts business in this jurisdiction.

51.     Brian Speciale and Michael Speciale, as the sole and controlling members of Cozy Comfort, use Cozy Comfort to sell their products, assert the '788 patent, and to engage and maintain continuous and systematic contacts with the state of Illinois,

including conducting substantial and regular business in Illinois at least through marketing and sales of products purportedly covered by the '788 patent including but not limited to "the Comfy" through at least www.thecomfy.com (the "Cozy Website").

52.     Numerous other on-line retailers advertise and sell Cozy products into Illinois including Target.com, QVC.com, big5sportinggoods.com, and others.

53.     The Cozy Website is an interactive website directed to the online promotion and sale of Cozy Comfort's goods throughout the United States.

54.     Defendants utilize at least the Cozy Website to deliver Defendants' products into the stream of commerce with the intent that they will be purchased by consumers in Illinois as evidenced by the Cozy Website's use of a drop-down shipping menu thorough which Illinois may be selected as the shipping destination state.

55.     Through the Cozy Website and others, Defendants knowingly enter into contracts for the sale of goods, including but not limited to *The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip*, as well as *The Comfy Lite, The Comfy Hoodie, and The Comfy Kids,* with customers that are residents of Illinois.

56.     Plaintiffs compete for the exact same customers that are residents of Illinois.

57.     Based on Defendants' actions there exists an actual substantial controversy between the parties with adverse legal interests of such immediacy and existence so as to warrant a declaratory judgment.

58.     Sky and Flying Star, as Illinois companies, are directly impacted and damaged in Illinois by Defendants' wrongful conduct.

59.     Venue is proper in this judicial district under 28 U.S.C. §§1391(b) and (c) at least because a substantial part of the property and events giving rise to the claims herein occurred in this district, because Defendants reside in this district, and because Defendants have sufficient minimum contacts with this district for personal jurisdiction.

60.     Further, this court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

61.     Additionally, pursuant to 35 U.S.C. §292, any person is permitted to sue for false marking.

62.     Accordingly, while each of Plaintiffs have been damaged by Defendants' actions for at least the reasons set forth below, regardless of whether or not each is damaged, each may bring this action under 35 U.S.C. §292 in this District.

## GENERAL ALLEGATIONS

63.     Top Brand, E Star, and Flying Star are each clothing providers that sell a variety of different clothing, some of which are sold under license from Sky, through various retail outlets including Amazon.com.

64.     One of Flying Star and Top Brand's clothing products is a large sweatshirt, referred to by Flying Star and Top Brand as the Tirrinia® Hoodie.  (A true and correct photograph of said Hoodie is attached as Exhibit K).

65.     The Tirrinia® Hoodie is available in a variety of colors, shapes, and sizes.

66.     Top Brand, E Star and Flying Star also sell a variety of other products including:

        a.  clothing for infants, children and adults;

        b.  bed blankets and baby bedding;

        c.  bags for carrying baby accessories;

        d.  wearable blankets; and

        e.  novelty children's wearable blankets.

67.     Cozy Comfort purports to be the owner of the '788 patent titled ENLARGED OVER-GARMENT WITH AN ELEVATED MARSUPIAL POCKET.

68.     Brian Speciale purports to be a co-inventor of the '788 patent

69.     Michael Speciale purports to be a co-inventor of the '788 patent.

70.     Brian Speciale and Michael Speciale are the moving, active, conscious force behind and direct the actions of Defendant Cozy Comfort.

71.     Defendants, collectively by and through Cozy Comfort, have accused Top Brand E Star and Flying Star products of infringing the '788 patent. Those accusations have resulted in Plaintiffs' products being barred from sale on Amazon.com.

72.     Defendants have used the '788 patent to prevent Top Brand, E Star and Flying Star from selling its products on Amazon.com.

73.     Cozy Comfort's actions have resulted in Amazon.com removing listings of Top Brand, E Star and Flying Star products from sale on the Amazon.com website.

74.     On November 13, 2019, attorneys for Top Brand sent a letter to Cozy Comfort counsel, attached hereto as Exhibit L, in which Top Brand described in detail the non-infringement of Top Brand products. Despite that notice, Cozy Comfort has refused to provide any basis for the claim of infringement, has continued to assert patent infringement claims, including those claims of infringement of the '788 patent, against Top Brand, E Star and Flying Star, and has continued its campaign to prevent sales of a wide range of Top Brand, E Star and Flying Star products through Amazon.

75.     Indeed, the letter compared the overall appearance of the accused product and the '788 patent noting numerous significant differences in the design of the accused product.

76.     The letter established that the accused product (the Tirrinia ® Hoodie) has an outward taper at the hemline whereas the '788 patent has a hemline that tapers inward as shown:



| U.S. Design Patent No. D859,788 | Tirrinia Hoodie |

77.     The letter established that the accused product has an enlarged front pocket that covers approximately 2/3 of the width of the front of the garment whereas the '788 patent has a narrow pocket that only covers approximately 1/3 of the width of the front of the garment as shown:



78.     The letter established that the accused product has a wide, rectangular pocket having curved sides as in the prior art '900 patent of Sky whereas the '788 patent has a substantially square pocket with straight sides and no curves at all as shown:



79.    The letter established that the accused product has curved pocket sides that exhibit a shallow angle as in the '900 patent whereas the '788 patent has straight sides with a very steep angle as shown:



80.    The letter established that the accused product has a horizontal hemline whereas the '788 patent has a substantially angled hemline that is significantly longer in the back than in the front as shown:



11

81.     The letter established that the accused product has an elongated, tear-drop hood opening with smooth sides whereas the '788 patent has a substantially circular hood opening with fat, puffy sides as shown:



| U.S. Design Patent No. D859,788 | Tirrinia Hoodie |
|---|---|
| Hood is circular and puffy. | Hood is teardrop shape and thin. |

82.     Accordingly, upon analyzing the '788 patent and comparing it to Top Brand products, it is clear that Top Brand products do not infringe the '788 patent.

83.     Top Brand products exhibit a number of distinguishing characteristics and design elements that establish that they are distinct from what is claimed by the '788 patent.

84.     For example, the hood shape of Top Brand products and the '788 patent is different and would be perceived as distinct in the eyes of an ordinary observer.

85.     For example, the hemline shape of Top Brand products and the '788 patent is different and would be perceived as distinct in the eyes of an ordinary observer.

86.     For example, the pocket shape of Top Brand products and the '788 patent is different and would be perceived as distinct in the eyes of an ordinary observer.

87.     For example, one or more of the forgoing features, whether viewed individually or collectively give the Top Brand product an overall appearance that it district and different from the appearance of anything claimed in the '788 patent.

88.     Defendants' conduct has and continues to cause harm to Plaintiffs through Defendants' use of the '788 patent to interfere with Plaintiffs' sales of its products.

89.     Defendants' conduct and accusations of infringement raise an actual case or controversy between the parties.

90.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged, not only by the prevention of the sale of fleece hooded garments, but also by the prevention of sale of unrelated products such as blankets, bedding, and bags.

91.     Indeed, Cozy Comfort has repeatedly made erroneous patent infringement accusations against Defendants.

92.     For example, Cozy Comfort asserted patent infringement against the Catalonia Wearable Fleece Blanket with Sleeves and Foot Pockets sold by E Star and Flying Star.

93.     An image of the Catalonia Wearable Fleece Blanket with Sleeves and Foot Pockets is as follows:



94.    Cozy Comfort asserted infringement even though the forgoing product has no hood and no marsupial pocket.

95.    As a result of Cozy Comfort's actions, Top Brand, E Star, and Flying Star have all received Notice emails from Amazon identifying that a complaint has been made against them.

96.    The Amazon notices are sent from the email address notice-dispute@amazon.com.

97.    The emails all include the same stock language that merely relays that Amazon has "received a report from a rights owner that claims" that the listed items in the email infringe the alleged owner's patent rights.

98.    The emails instruct the accused company to "work directly with the rights owner to resolve this dispute."

99.    The emails further state that "[f]ailure to do so may result in removal of your offers or your Amazon.com selling privileges."

100.    At no point does the Amazon Notice indicate that Amazon performed any substantive assessment of the claim.

101.    At no point does the Amazon notice provide any infringement analysis.

102.    At no point does the Amazon notice indicate that Amazon has formed a substantive opinion respecting whether the accused products do in fact infringe any purported intellectual property asset.

103.    At no point does the Amazon notice indicate that Amazon has formed a substantive opinion respecting whether the accusation has any merit.

104.    On information and belief, Amazon does not publish or otherwise make available to the rights owner or the seller any notification that it has made any determination respecting infringement.

105.    On information and belief, when Amazon is provided with a complaint by a rights owner, the rights owner is not required to provide Amazon with a copy of the file history of the patent.

106.   On information and belief, when Cozy Comfort contacted Amazon regarding its allegations of infringement by Defendants, Cozy Comfort did not provide Amazon with a copy of the file history of any of the intellectual property it was asserting was infringed.

107.   On information and belief, to the extent that Amazon performed any infringement analysis, Amazon performed that analysis without the benefit of the file history of any asserted patent for the purpose of properly construing the claims.

108.   On information and belief, Amazon does not gather prior art in response to an allegation of infringement by a rights owner.

109.   On information and belief, Amazon did not gather prior art in response to any allegation of infringement by a Cozy Comfort.

110.   On information and belief, Amazon did not perform an invalidity analysis of Cozy Comfort's intellectual property prior to sending any of the defendants a notice of any dispute filed by Cozy Comfort.

111.   On information and belief, Amazon did not perform any analysis as to whether Cozy Comfort engaged in inequitable conduct in prosecuting the '788 patent prior to Amazon's sending any of Defendants a notice of the dispute filed by Cozy Comfort.

112.   Defendants' actions have effectively functioned as an extrajudicial injunction based on a mere claim of infringement, not a judicial finding of infringement or even a judicial finding of a likelihood of infringement of a valid patent. There are at least six pending lawsuits against parties whose actions are similar to Defendants' actions concerning the misuse of the Amazon process to unlawfully suppress competition.

113.   As a result of Cozy Comfort's actions, the Amazon sales of accused products by Top Brand, E Star and Flying Star to Illinois customers were stopped and Plaintiffs have been damaged.

114.    As a result of Cozy Comfort's actions, consumers have been deprived of competition in the market place between the products of Top Brand, E Star and Flying Star and Defendants' products.

115.    As a result of Cozy Comfort's actions, Cozy Comfort has granted itself a de facto injunction against Top Brand, E Star and Flying Star without ever substantiating its claims under the level of legal scrutiny required for the issuance of a legal injunction.

116.    As a result of Cozy Comfort's actions, Sky Creations has been damaged due to Cozy Comfort's interference with Sky's licensees, Top Brand and Flying Star and preventing Top Brand and Flying Star from selling its licensed products on Amazon.

117.    Cozy Comfort has never substantiated any of its claims of infringement.

118.    Counsel for Plaintiffs has written to Cozy Comfort requesting a claim chart identifying how any of Plaintiffs' products meet all of the limitation of any patent claim Cozy has asserted to be infringed.

119.    Cozy Comfort has never provided a claim chart of any kind to any to Plaintiffs.

120.    Despite the Defendants' failure to provide a claim chart for any patent for any of Plaintiffs' products, Defendants have accused the Tirrinia, Catalonia, "or other brands" of having a design that infringes the '788 patent and features that infringe claims of the '431 utility patent.

121.    Defendants' vague accusations make it impossible for Plaintiffs' to identify with particularity all of the Plaintiffs' products that Defendant may assert are infringing.

122.    Due to Defendants' history of making unsubstantiated claims of infringement both directly to Plaintiffs and to 3rd Parties contracting with Plaintiffs, Plaintiffs have a present apprehension of being interfered with, sued, or both by Defendants with respect to each of U.S. Patent Nos.10,420,431, D859,788, D886,416, D903,237, and D905,380.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment of Non-Infringement of the '788 Patent)**

123.   Defendants reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

124.   As a result of the acts set forth in the paragraphs herein, a substantial controversy of sufficient immediacy and reality exists to warrant the issuance of a declaratory judgment.

125.   A judicial declaration is necessary and appropriate so that Plaintiffs may definitively establish their rights with respect to the sale of their products in view of the '788 patent.

126.   Such a determination is further necessary to bar Defendants from continuing to misuse its patent though assertions of infringement by Plaintiffs to third-party retailers (such as Amazon.com) and inducing such third-party retailers to remove Plaintiffs' products.

127.   On information and belief, Defendants knew or should have known that Plaintiffs' products do not infringe the '788 patent.

128.   Specifically, Defendants intentionally approached third-parties just prior to the critical holiday retail selling season, and specifically just prior to 2019 Black Friday, and filed complaints to remove the products of Top Brand, E Star and Flying Star even though those products did not infringe.

129.   The complaints filed by Cozy Comfort with Amazon continue despite Defendants being advised and informed that Plaintiffs' products do not infringe the '788 patent.

130.   Defendants' conduct was egregious and exemplified Defendants' unilaterally and improperly expanding the scope of its patent to misuse the '788 patent against Plaintiffs.

131.   Defendants' conduct makes this case an exceptional case, entitling Plaintiffs to an award of their fees and costs under 35 U.S.C. § 285.

132.    Plaintiffs are entitled to a declaratory judgment that each has not infringed and does not infringe, directly, indirectly, or contributorily any valid and enforceable claim of the '788 patent.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment of Invalidity of the '788 Patent)**

133.    Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

134.    The '788 patent includes a single claim to the ornamental design for an enlarged over-garment with an elevated marsupial pocket, as shown and described in the '788 patent.

135.    The design of the '788 patent is nothing more than a design for an ordinary sweatshirt but made larger.

136.    On information and belief, garments exhibiting the same features as those disclosed and claimed by the '788 patent were on sale, sold, or described in one or more printed publications prior to the priority date of the '788 patent rendering the '788 patent invalid under one or more of 35 U.S.C. §102, 103.

137.    Additionally, or in the alternative, the drawings of the '788 patent are indefinite.

138.    Only solid lines may be used to identify the subject matter of the design.

139.    Dashed (or broken) lines cannot form the subject matter of the design.

140.    Many of the drawings in the '788 Patent include lines that at some points appear to be solid lines, but at other points appear to be dashed (or broken) lines.

141.    Due to the indefinite nature of the drawings, it is not possible to discern the proper scope of the ornamental design that is supposedly covered by the claim of the '788 patent.

142.    The '788 patent is invalid under 35 U.S.C. §112 at least for failing to distinctly set forth the subject matter of the invention.

143.    Additionally, or in the alternative, the '788 patent is invalid under 35 U.S.C. §171 because the design of the alleged invention is primarily functional rather than ornamental.

## THIRD CLAIM FOR RELIEF

### (Declaratory Judgment of Unenforceability of the '788 Patent)

144.    Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

145.    The application that would mature into the '788 patent was filed on September 13, 2017.

146.    The Patent Office did not issue a notice of allowance in the application that would mature into the '788 patent until June 5, 2019.

147.    During the prosecution of the application that would mature into the '788 patent, the Defendants filed a single Information Disclosure Statement.

148.    On September 13, 2018, Defendants filed a utility patent application (U.S. Patent Application No. 16/130,502, "the '502 application") that included identical figures to those figures contained in the '788 patent.

149.    During the prosecution of the '502 application, Defendants filed an Information Disclosure Statement that was limited to disclosing the same references as were disclosed in the Information Disclosure Statement that they filed in the '788 patent.

150.    During the prosecution of the '502 application, and at a time when the application that would mature into the '788 patent was still pending, the Patent Examiner identified a number of prior art references other than those references listed by the Defendants on their Information Disclosure Statements.

151.    Rather than disclosing the existence of the new prior art references in the application that would mature into the '788 patent through the filing of another Information Disclosure Statement, Defendants chose to hide those references from the Examiner of the application that would mature into the '788 patent.

152.   The Defendants knew or should have known that the references identified in the prosecution of the '502 application were relevant and material to the patentability of the claim of the '788 patent.

153.   At least by choosing not to disclose the prior art to the Examiner of the application that would mature into the '788 patent, Defendants breached their duty of candor to the Patent Office and engaged in inequitable conduct that renders the '788 patent unenforceable.

154.   Plaintiffs are entitled to a declaratory judgment that the '788 patent is unenforceable due to inequitable conduct.

**FOURTH CLAIM FOR RELIEF**

**(Declaratory Judgment of Non-Infringement of the '380 Patent)**

155.   Defendants reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

156.   As a result of the acts set forth in the paragraphs herein, a substantial controversy of sufficient immediacy and reality exists to warrant the issuance of a declaratory judgment.

157.   A judicial declaration is necessary and appropriate so that Plaintiffs may definitively establish their rights with respect to the sale of their products in view of the '380 patent.

158.   Such a determination is further necessary to bar Defendants from continuing to misuse its patent though assertions of infringement by Plaintiffs to third-party retailers (such as Amazon.com) and inducing such third-party retailers to remove Plaintiffs' products.

159.   Plaintiffs are entitled to a declaratory judgment that each has not infringed and does not infringe, directly, indirectly, or contributorily any valid and enforceable claim of the '380 patent.

1

**FIFTH CLAIM FOR RELIEF**

2

**(Declaratory Judgement of Invalidity of the '380 patent)**

3        160.    Plaintiffs reallege and incorporate each of the foregoing paragraphs as if

4  fully set forth in this paragraph.

5        161.    Defendants assert that THE COMFY is covered by the claim of the '380

6  patent.

7        162.    The application that matured into the '380 patent was filed as a

8  continuation-in-part application on April 11, 2020.

9        163.    THE COMFY was on sale more than one year before April 11, 2020.

10       164.    THE COMFY was offered for sale more than one year before April 11,

11  2020.

12       165.    THE COMFY was described in a printed publication more than one year

13  before April 11, 2020.

14       166.    The '380 patent is not entitled to the priority date of any of application No.

15  29/705,878, application No. 29/645,978, and application No. 29/617,421.

16       167.    The sale of THE COMFY more than one year before April 11, 2020 is

17  material prior art to the '380 patent.

18       168.    The offer to sell THE COMFY more than one year before April 11, 2020 is

19  material prior art to the '380 patent.

20       169.    The description of THE COMFY in a printed publication more than one

21  year before April 11, 2020 is material prior art to the '380 patent.

22       170.    During the prosecution of the application that matured into the '380 patent,

23  the applicant did not provide side views and front elevation views of each of the

24  embodiment.

25       171.    The '380 patent does not incorporate by reference the subject matter of any

26  of application No. 29/705,878, application No. 29/645,978, and application No.

27  29/617,421.

28

172.    On information and belief, garments exhibiting the same features as those disclosed and claimed by the '380 patent were on sale, sold, or described in one or more printed publications prior to the priority date of the '380 patent rendering the '380 patent invalid under one or more of 35 U.S.C. §102, 103.

173.    Additionally, or in the alternative, the drawings of the '380 patent are indefinite.

174.    Only solid lines may be used to identify the subject matter of the design.

175.    Dashed (or broken) lines cannot form the subject matter of the design.

176.    Many of the drawings in the '380 Patent include lines that at some points appear to be solid lines, but at other points appear to be dashed (or broken) lines.

177.    Due to the indefinite nature of the drawings, it is not possible to discern the proper scope of the ornamental design that is supposedly covered by the claim of the '380 patent.

178.    The '380 patent is invalid under 35 U.S.C. §112 at least for failing to distinctly set forth the subject matter of the invention.

179.    Additionally, or in the alternative, the '380 patent is invalid under 35 U.S.C. §171 because the design of the alleged invention is primarily functional rather than ornamental.

**SIXTH CLAIM FOR RELIEF**

**(Declaratory Judgment of Unenforceability of the '380 Patent)**

180.    Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

181.    During the prosecution of the application that matured into the '380 patent, one or more of the Defendants and the prosecuting attorney decided not to disclose to the Patent Office that THE COMFY was on sale more than one year before April 11, 2020.

182.    During the prosecution of the application that matured into the '380 patent, the fact that THE COMFY was on sale more than one year before April 11, 2020 was never disclosed to the Patent Office.

183.    During the prosecution of the application that matured into the '380 patent, one or more of the Defendants and the prosecuting attorney decided not to disclose to the Patent Office that THE COMFY was offered for sale more than one year before April 11, 2020.

184.    During the prosecution of the application that matured into the '380 patent, the fact that THE COMFY was offered for sale more than one year before April 11, 2020 was never disclosed to the Patent Office.

185.    During the prosecution of the application that matured into the '380 patent, one or more of the Defendants and the prosecuting attorney decided not to disclose to the Patent Office that THE COMFY was described in a printed publication more than one year before April 11, 2020.

186.    During the prosecution of the application that matured into the '380 patent, the fact that THE COMFY was described in a printed publication more than one year before April 11, 2020 was never disclosed to the Patent Office.

187.    None of application No. 29/705,878, application No. 29/645,978, and application No. 29/617,421, disclose an embodiment having an appearance identical to the following image:



FIG. 1

23

188.   None of application No. 29/705,878, application No. 29/645,978, and application No. 29/617,421, disclose an embodiment having an appearance identical to the following image:



189.   None of application No. 29/705,878, application No. 29/645,978, and application No. 29/617,421, disclose an embodiment having an appearance identical to the following image:



190.    As to each of application No. 29/705,878, application No. 29/645,978, and application No. 29/617,421, one or more of the foregoing images constitutes new matter in the application that matured into the '380 patent.

191.    The '380 patent is not entitled to the priority date of any of application No. 29/705,878, application No. 29/645,978, and application No. 29/617,421.

192.    The sale of THE COMFY more than one year before April 11, 2020 is material prior art to the '380 patent.

193.    The offer to sell THE COMFY more than one year before April 11, 2020 is material prior art to the '380 patent.

194.    The description of THE COMFY in a printed publication more than one year before April 11, 2020 is material prior art to the '380 patent.

195.    The decision by one or more of Defendants and the attorney prosecuting the application that matured into the '380 patent was undertaken with the intent to deceive the Patent Office into allowing the '380 patent based on an illegitimate claim of priority to one or more of application No. 29/705,878, application No. 29/645,978, and application No. 29/617,421.

196.    Defendants filed the application that matured into the '380 patent, after being sued by Plaintiffs, after examining Plaintiffs' products and realizing that Plaintiffs' pockets had tops that were below the armpits of the sleeves, and with the intent of capturing Plaintiffs' products.

197.    Defendants' prosecution of the application that would mature into the '380 patent was done with deceptive intent.

198.    The '380 patent was procured through fraudulent and inequitable conduct and is therefore unenforceable.

**SEVENTH CLAIM FOR RELIEF**

**(Declaratory Judgment of Non-Infringement of the '416 Patent)**

199.    Defendants reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

1    200.   As a result of the acts set forth in the paragraphs herein, a substantial controversy of sufficient immediacy and reality exists to warrant the issuance of a declaratory judgment.

201.   A judicial declaration is necessary and appropriate so that Plaintiffs may definitively establish their rights with respect to the sale of their products in view of the '416 patent.

202.   Such a determination is further necessary to bar Defendants from continuing to misuse its patent though assertions of infringement by Plaintiffs to third-party retailers (such as Amazon.com) and inducing such third-party retailers to remove Plaintiffs' products.

203.   Plaintiffs are entitled to a declaratory judgment that each has not infringed and does not infringe, directly, indirectly, or contributorily any valid and enforceable claim of the '416 patent.

**EIGHTH CLAIM FOR RELIEF**

**(Declaratory Judgement of Invalidity of the '416 Patent)**

204.   Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

205.   On information and belief, garments exhibiting the same features as those disclosed and claimed by the '416 patent were on sale, sold, or described in one or more printed publications prior to the priority date of the '416 patent rendering the '416 patent invalid under one or more of 35 U.S.C. §102, 103.

206.   Additionally, or in the alternative, the drawings of the '416 patent are indefinite.

207.   Only solid lines may be used to identify the subject matter of the design.

208.   Dashed (or broken) lines cannot form the subject matter of the design.

209.   Many of the drawings in the '416 patent include lines that at some points appear to be solid lines, but at other points appear to be dashed (or broken) lines.

210.   Due to the indefinite nature of the drawings, it is not possible to discern the proper scope of the ornamental design that is supposedly covered by the claim of the '416 patent.

211.   The '416 patent is invalid under 35 U.S.C. §112 at least for failing to distinctly set forth the subject matter of the invention.

212.   Additionally, or in the alternative, the '416 patent is invalid under 35 U.S.C. §171 because the design of the alleged invention is primarily functional rather than ornamental.

**NINTH CLAIM FOR RELIEF**

**(Declaratory Judgment of Unenforceability of the '416 patent)**

213.   Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

214.   U.S. Patent Application no. 29/645,978 matured into the '416 patent.

215.   The '416 patent is in the same patent family with the '380 patent.

216.   At least due to the inequitable conduct perpetrated by one or more of the Defendants or their attorney in the prosecution of the '380 patent, the '416 patent is tainted with fraud and unenforceable.

**TENTH CLAIM FOR RELIEF**

**(Declaratory Judgment of Non-Infringement of the '237 Patent)**

217.   Defendants reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

218.   As a result of the acts set forth in the paragraphs herein, a substantial controversy of sufficient immediacy and reality exists to warrant the issuance of a declaratory judgment.

219.   A judicial declaration is necessary and appropriate so that Plaintiffs may definitively establish their rights with respect to the sale of their products in view of the '237 patent.

220.   Such a determination is further necessary to bar Defendants from continuing to misuse its patent through assertions of infringement by Plaintiffs to third-party retailers (such as Amazon.com) and inducing such third-party retailers to remove Plaintiffs' products.

221.   Plaintiffs are entitled to a declaratory judgment that each has not infringed and does not infringe, directly, indirectly, or contributorily any valid and enforceable claim of the '237 patent.

## ELEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment Invalidity of the '237 Patent)

222.   Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

223.   The '237 patent is identified as a continuation-in-part of U.S. Application No. 29/671,421 (the '788 patent) and U.S. Application No. 29/645,978 (the '416 patent).

224.   The application that matured into the '237 patent was filed on September 16, 2019.

225.   Defendants assert that THE COMFY is covered by the claim of the '237 patent.

226.   THE COMFY was on sale more than one year before September 16, 2019.

227.   THE COMFY was offered for sale more than one year before September 16, 2019.

228.   THE COMFY was described in a printed publication more than one year before September 16, 2019.

229.   None of the Figures in the '788 patent is identical to any of the Figures in the '237 patent.

230.   None of the Figures in the '416 patent is identical to any of the Figures in the '237 patent.

231.   The '237 patent is not entitled to the priority date of either the '416 patent or the '237 patent.

1    232.    The sale of THE COMFY more than one year before September 16, 2019

2   is material prior art to the '237 patent.

3    233.    The offer to sell THE COMFY more than one year before September 16,

4   2019 is material prior art to the '237 patent.

5    234.    The description of THE COMFY in a printed publication more than one

6   year before September 16, 2019 is material prior art to the '237 patent.

7    235.    On information and belief, garments exhibiting the same features as those

8   disclosed and claimed by the '237 patent were on sale, sold, or described in one or more

9   printed publications prior to the priority date of the '237 patent rendering the '237 patent

10   invalid under one or more of 35 U.S.C. §102, 103.

11    236.    Additionally, or in the alternative, the drawings of the '237 patent are

12   indefinite.

13    237.    Only solid lines may be used to identify the subject matter of the design.

14    238.    Dashed (or broken) lines cannot form the subject matter of the design.

15    239.    Many of the drawings in the '237 Patent include lines that at some points

16   appear to be solid lines, but at other points appear to be dashed (or broken) lines.

17    240.    Due to the indefinite nature of the drawings, it is not possible to discern the

18   proper scope of the ornamental design that is supposedly covered by the claim of the '237

19   patent.

20    241.    The '237 patent is invalid under 35 U.S.C. §112 at least for failing to

21   distinctly set forth the subject matter of the invention.

22    242.    Additionally, or in the alternative, the '237 patent is invalid under 35 U.S.C.

23   §171 because the design of the alleged invention is primarily functional rather than

24   ornamental.

25                    **TWELFTH CLAIM FOR RELIEF**

26              **(Declaratory Judgment Unenforceability of the '237 Patent)**

27    243.    Plaintiffs reallege and incorporate each of the foregoing paragraphs as if

28   fully set forth in this paragraph.

244.    U.S. Patent Application no. 29/705,878 matured into the '237 patent.

245.    The '237 patent is in the same patent family as both the '788 patent and the '380 patent.

246.    During the prosecution of the '237 patent, neither the Defendants nor their attorney disclosed the sale, offer to sell, or printed publication of THE COMFY more than one year prior to September 16, 2019.

247.    Defendants and their attorney's decision not to disclose material prior art was done with deceptive intent and for the purpose of perpetuating a fraud on the Patent Office.

248.    At least due to the inequitable conduct perpetrated by one or more of the Defendants or their attorney in the prosecution of the '380 patent and '788 patent, the '237 patent is tainted with fraud and unenforceable.

## THIRTEENTH CLAIM FOR RELIEF

### (False Marking)

249.    Plaintiffs' reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

250.    It is a violation of 35 U.S.C. §292 to affix or use in advertising in connection with an article any words that imply that the article is covered by a patent when it is not.

251.    At all times relevant, Defendants owned and operate the Cozy Website www.thecomfy.com.

252.    On information and belief, the promotion the Cozy Website by Defendants is one of the day-to-day operations of Cozy Comfort.

253.    On information and belief, at least Michael Speciale is involved in the day-to-day operations of Cozy Comfort, and involved with the promotion of the Cozy Website.

254.    On information and belief, as co-founders, both Michael Speciale and Brian Speciale have knowledge of the contents of the Cozy Website and approved the content of the Cozy Website.

255.    On information and belief, Defendants intend that consumers, including consumers in Illinois, rely on the statements made on the Cozy Website in determining whether to purchase one of Defendants' products over a competitor's product, such as the products of Plaintiffs.

256.    Products offered on the Cozy Website have included *The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* as well as *The Comfy, The Comfy Lite, The Comfy Hoodie, and The Comfy Kids*.

257.    The Cozy Website has stated: "*The Comfy, The Comfy Lite, The Comfy Hoodie, and The Comfy Kids U.S. Patent Nos. D859788 and 10,420,431 and other patents pending.*"

258.    The Cozy Website has stated: "*The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* are protected by U.S. Patent Nos. 10,420,431, D859,788, D886,416, D903,237, D905,380 and other pending patents."

259.    On information and belief, through the Cozy Website, Defendants intend that customers are to believe that each of *The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip*, as well as each of *The Comfy, The Comfy Lite, The Comfy Hoodie, and The Comfy Kids*, is covered by the '788 patent.

260.    The '788 patent includes only a single claim.

261.    One or more of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* do not exhibit the ornamental design that is within the scope of the single claim of the '788 patent.

262.    For example, the shape of the hood exhibited by one or more of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy*

*Original Quarter Zip* do not exhibit the ornamental design that is within the scope of the claim of the '788 patent as the '788 is circular and puffy with two hanging drawstrings while, for example, The Comfy Original is smooth and tear-drop shaped with no drawstrings ('788 shown left, The Comfy Original shown right):

 

263.   For example, the shape of the body exhibited by one or more of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* do not exhibit the ornamental design that is within the scope of the claim of the '788 patent as the '788 curves inward while, for example, The Comfy Original is straight and angles outward ('788 shown left, The Comfy Original shown right)

 

264.   For example, the shape and placement of the pocket exhibited by one or more of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* do not exhibit the ornamental design that is within the scope of the claim of the '788 patent as the '788 pocket appears taller than it is wide, and has a bottom third that exhibits straight sides while, for example, The Comfy Original is wider than it is tall and only a small portion of the bottom includes straight sides ('788 shown left, The Comfy Original shown right).

 

265.   For example, the overall combined appearance of features of one or more of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* do not exhibit the ornamental design that is within the scope of the claim of the '788 patent ('788 shown left, The Comfy Original shown right).

 

266.   At least due to the one or more of the substantial design differences identified above, whether considered separately or in combination, one or more of *The*

1   *Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The*
2   *Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the*
3   *Comfy Original Quarter Zip* would be viewed as not being covered by the claim of the
4   '788 patent in the eyes of the ordinary observer.

5       267.   Plaintiffs have suffered a competitive injury and been damaged by
6   Defendants' assertions that one or more of *The Comfy, The Comfy Lite, The Comfy*
7   *Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy*
8   *Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* are
9   covered by the '788 patent.

10      268.   Brian Speciale and Michael Speciale are each listed as an inventor on the
11  '788 patent.

12      269.   In filing the application that would mature into the '788 patent, both Brian
13  and Michael Speciale signed an oath that they reviewed and understand the contents of
14  the application, including the claims.

15      270.   Brian and Michael Speciale were further assisted by patent counsel in
16  preparing and prosecuting the application that would mature into the '788 patent and
17  therefore, on information and belief, each was fully aware of the limits of the scope of the
18  '788 patent.

19      271.   On information and belief, one of the reasons that Defendants' initially
20  applied to patent their product was so that Defendants could say its products were patent
21  pending.

22      272.   On information and belief, Defendants' intent in marking its products with
23  patent numbers was for the purpose of marketing and attracting attention.

24      273.   On information and belief, Defendants' intended that its representations
25  regarding its products being covered by patent applications was to entice potential
26  customers and investors into giving money to Defendants.

27      274.   On information and belief, since the issuance of the '788 patent,
28  Defendants' have represented that their products are covered by the '788 patent with the

1    intent that consumers believe that the products are covered by the '788 patent and

2    therefore will be swayed into purchasing Defendants' product over another product, such

3    as one of Plaintiffs' products.

4    275. On information and belief, Defendants knew that one or more of *The*

5    *Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The*

6    *Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the*

7    *Comfy Original Quarter Zip* is not within the scope of any claim of the '788 patent at

8    least due to such products having differing ornamental appearances than the claim of the

9    '788 patent as set forth above.

10   276. Because one or more of *The Comfy, The Comfy Lite, The Comfy Hoodie,*

11   *The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The*

12   *Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* are not covered by

13   the '788 patent, Defendants' intent that the public rely on its false representations that its

14   products are covered by the '788 patent is undertaken with the further intent to deceive

15   the public into believing that Defendants' products are covered by the '788 patent when

16   they are not.

17   277. On information and belief, Defendants further routinely make disparaging

18   remarks about competitors, such as Plaintiffs, referring to them as "Comfy knockoffs"

19   with the intent that consumers be swayed to place greater importance of the false

20   representation that Defendants' products are covered by the '788 patent and to only

21   purchase its falsely marked products.

22   278. Brian Speciale and Michael Speciale are each listed as an inventor on the

23   U.S. Patent No. 10,420,431 (the '431) patent.

24   279. In filing the application that would mature into the '431 patent, both Brian

25   and Michael Speciale signed an oath that they reviewed and understand the contents of

26   the application, including the claims.

27   280. Brian and Michael Speciale were further assisted by patent counsel in

28   preparing and prosecuting the application that would mature into the '431 patent and

therefore, on information and belief, each was fully aware of the limits of the scope of the '431 patent.

281.    On information and belief, through the Cozy Website, Defendants intend that customers are to believe that each of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* is covered by the '431 patent.

282.    The '431 patent includes sixteen claims.

283.    Every one of the claims of the '431 patent includes the limitation, "the marsupial pocket has a height between its top and bottom which is 1.2 times the distance between the neck opening and the top of the marsupial pocket."

284.    During the prosecution of the '431 patent, the Applicants amended the claims that recited the limitation "approximately 1.2 times" by deleting the word "approximately."

285.    One or more of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* do not exhibit a marsupial pocket has a height between its top and bottom which is 1.2 times the distance between the neck opening and the top of the marsupial pocket.

286.    For example, the actual The Comfy Original has a pocket with a height 10.5 inches:



36

287.   The distance between the top of the pocket and the neck of The Comfy Original is 7.25 inches:



288.   A pocket having a height that is 1.2 times the 7.25 inch distance between the neck and the pocket would be a pocket having a height of only 8.7 inches.  That is nearly two inches shorter than the required pocket height (i.e. the actual pocket height of 10.5 inches).

289.   For a 10.5 inch pocket to be 1.2 times the distance from the neck to the top of the pocket, the distance from the neck to the pocket would need to be 8.75 inches (i.e. a full inch and a half longer than the structure of The Comfy Original).

290.   Thus, the actual dimension of The Comfy Original are such that the 10.5 inch pocket height is 1.45 times the 7.25 inch distance from the top of the pocket to the neck of The Comfy Original.

291.   On information and belief, and in view of the fact that the dimensions in question are so easily ascertainable, Cozy Comfort Co, and its founders and named inventors of the '431 patent knew that The Comfy Original did not meet all of the limitations of any claims of the '431 patent and thus was not covered by the '431 patent.

292.   On information and belief, despite not being covered by the patent, Defendants willfully and intentionally marked The Comfy Original with the '431 patent for the purpose of inducing and deceiving customers into believing the The Comfy Original was patented under the '431 patent when it was not.

293.   On information and belief, The Comfy Dream has a pocket height of 1.1 times the distance from the top of the pocket to the neck.

294.   On information and belief, The Comfy Teddy Bear Quarter Zip has a pocket height of 4.0 times the distance from the top of the pocket to the neck.

295.   On information and belief, The Comfy Original Quarter Zip has a pocket height of 4.0 times the distance from the top of the pocket to the neck.

296.   On information and belief, The Comfy Original Jr. has a pocket height of 1.0 times the distance from the top of the pocket to the neck.

297.   On information and belief, since the issuance of the '431 patent, Defendants have represented that their products are covered by the '431 patent with the intent that consumers believe that the products are covered by the '431 patent and therefore will be swayed into purchasing Defendants' product over another product, such as one of Plaintiffs' products.

298.   On information and belief, Defendants knew that one or more of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* is not within the scope of any claim of the '431 patent at least due to such products having a pocket with a height that is not 1.2 times the distance from the top of the pocket to the neck.

299.   Because one or more of *The Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* are not covered by the '431 patent, Defendants' intent that the public rely on its false representations that its products are covered by the '431 patent is undertaken with the further intent to deceive the public into believing that Defendants' products are covered by the '431 patent when they are not.

300.   On information and belief, Defendants further routinely make disparaging remarks about competitors, such as Plaintiffs, referring to them as "Comfy knockoffs"

1   with the intent that consumers be swayed to place greater importance of the false

2   representation that Defendants' products are covered by the '431 patent and to only

3   purchase its falsely marked products.

4          301.   Brian Speciale and Michael Speciale are each listed as an inventor on U.S.

5   D886,416.

6          302.   In filing the application that would mature into the '416 patent, both Brian

7   and Michael Speciale signed an oath that they reviewed and understand the contents of

8   the application, including the claims.

9          303.   Brian and Michael Speciale were further assisted by patent counsel in

10  preparing and prosecuting the application that would mature into the '416 patent and

11  therefore, on information and belief, each was fully aware of the limits of the scope of the

12  '416 patent.

13         304.   The '416 patent is directed to a sweatshirt having the appearance of the

14  image on the left, while the '788 patent is directed to a sweatshirt having the appearance

15  of the image on the right:



305.    One example of The Comfy Original is depicted below:



306.    On information and belief, at least The Comfy Original does not have substantially the same overall ornamental appearance as the subject matter of the '416 patent at least because The Comfy Original has a hemline that terminates above the knee whereas the subject matter of the '416 patent has a hemline that terminates at the ankle.

307.    On information and belief, since the issuance of the '416 patent, Defendants' have represented that their products are covered by the '416 patent with the intent that consumers believe that the products are covered by the '416 patent and therefore will be swayed into purchasing Defendants' product over another product, such as one of Plaintiffs' products.

308.    The images below depict *The Original Comfy, The Comfy Dream, the Comfy Original Quarter Zip,* and *the Comfy Original Jr.*

1
2
3
4
5
6
7
8



9    309.    On information and belief, none of the *The Comfy, The Comfy Lite, The*

10   *Comfy Hoodie, The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy*

11   *Dream, The Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* exhibit

12   a hemline that terminates at the ankle.

13   310.    On information and belief, Defendants knew that one or more of *The*

14   *Comfy, The Comfy Lite, The Comfy Hoodie, The Comfy Kids, The Comfy Original, The*

15   *Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and the*

16   *Comfy Original Quarter Zip* is not within the scope of any claim of the '416 patent at

17   least due to such products having hemlines that terminate above the knee, rather than at

18   the ankle.

19   311.    Because one or more of *The Comfy, The Comfy Lite, The Comfy Hoodie,*

20   *The Comfy Kids, The Comfy Original, The Comfy Original Jr., The Comfy Dream, The*

21   *Comfy Teddy Bear Quarter Zip, and the Comfy Original Quarter Zip* are not covered by

22   the '416 patent, Plaintiffs intent that the public rely on its false representations that its

23   products are covered by the '416 patent is undertaken with the further intent to deceive

24   the public into believing that Defendants' products are covered by the '416 patent when

25   they are not.

26   312.    On information and belief, Defendants further routinely make disparaging

27   remarks about competitors, such as Plaintiffs, referring to them as "Comfy knockoffs"

28

with the intent that consumers be swayed to place greater importance of the false representation that Defendants' products are covered by the '416 patent and to only purchase its falsely marked products.

313. Brian Speciale and Michael Speciale are each listed as an inventor on the '380 patent.

314. In filing the application that would mature into the '380 patent, both Brian and Michael Speciale signed an oath that they reviewed and understand the contents of the application, including the claims.

315. Brian and Michael Speciale were further assisted by patent counsel in preparing and prosecuting the application that would mature into the '380 patent and therefore, on information and belief, each was fully aware of the limits of the scope of the '380 patent.

316. The '380 patent is directed to a sweatshirt having the appearance of the images below, none of which include a pocket were the top of the pocket is above the armpit of each sleeve:



317. The '416 patent is directed to a sweatshirt having the appearance of the image on the left, while the '788 patent is directed to a sweatshirt having the appearance of the image on the right, both of which have pockets where the top of the pocket is above the armpit of each sleeve:

1
2
3
4
5
6
7
8



318.   During the prosecution of the '788 patent, the Applicant argued that a feature of the subject matter of the '788 patent that distinguished over the prior art was that the top of the pocket was above the armpit of each sleeve.

319.   The subject matter of the '380 patent is not substantially similar in overall ornamental appearance to the subject matter of either the '416 or the '788 patent.

320.   The same product cannot exhibit the substantially the same overall ornamental appearance as the subject matter of each of the '380 patent, the '416 patent, and the '788 patent.

321.   On information and belief, at least The Comfy Original does not have substantially the same overall ornamental appearance as the subject matter of the '380 patent at least because The Comfy Original has a pocket with a top that is above the armpit of each sleeve whereas no embodiment of the subject matter of the '380 patent includes a pocket with a top above the armpit of each sleeve.

322.   Defendants' aggressive marketing tactics promoting its products as being patented—when they are not—has driven customers to purchase Defendants' products rather that Plaintiffs' products.

323.   Defendants' false assertions of selling a product covered by the claim of any of the '788 patent, '416 patent, '380 patent, or '431 patent have consequently damaged Plaintiffs by driving customers to purchase Defendants' product over Plaintiffs'

products and artificially making Plaintiffs' products seem less attractive in the marketplace.

324.   Plaintiffs are entitled to damages pursuant to 35 U.S.C. § 292(b) to compensate for its injury.

## FOURTEENTH CLAIM FOR RELIEF

### (Unfair Competition under 815 ILCS 510)

325.   Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

326.   It is a violation of 815 ILCS 510/2 when, among other things, a person engages in a deceptive trade practice through, in the course of business, disparaging the goods, services, or business of another by making a false or misleading representation of fact.

327.   Defendants made false or misleading statements of fact to at least the online retailer Amazon.

328.   For example, Defendants represented to Amazon that Plaintiffs' products infringed the '788 design patent and the '431 utility patent when those products did not.

329.   Defendants made such representations willfully and with knowledge that they were false or misleading.

330.   Plaintiffs provided Defendants with a detailed explanation of why their products neither infringed the '788 patent nor the '431 patent, yet Defendants willfully ignored such bases of noninfringement in making further bad faith claims of infringement to third parties such as Amazon.

331.   On February 3, 2020 and again on February 14, 2020 counsel for Plaintiff requested that Cozy provide a claim chart supporting its assertions to Amazon that the Plaintiffs' goods infringed on the '431 patent.   See Exhibit M. Defendants never responded to the requests.

332.   Plaintiffs have been damaged by Defendants' representations at least insofar as Plaintiffs have been prevented from selling their products on Amazon.com.

333.    Additionally, Defendants have falsely advertised and marketed its products as being covered by the '788 patent when they are not.

334.    Defendants' false statements have been made at least on the Cozy Website, which is accessible to customers in Illinois.

335.    Defendants' Cozy Website includes a dropdown menu that allows for shipping of its falsely advertised and marketed products to Illinois.

336.    On information and belief, Defendants have actually sold and shipped such products to customers in Illinois.

337.    Plaintiffs have been damaged by Defendants' false representations at least insofar as Defendants' false representations reduce the market value of Plaintiffs' goods, disparage Plaintiffs' goods, drive customers in Illinois view Defendants' products as more desirable, and drive customers in Illinois to purchase Defendants' products over Plaintiffs' products.

338.    Plaintiffs have further suffered damage to their seller's ranking on Amazon due to Defendants' conduct which has caused reputational damage to Plaintiffs throughout the relevant U.S. market.

339.    Plaintiffs incorporate each of the paragraphs below as if fully set forth herein.

340.    On information and belief, each time a company submits a complaint to Amazon, like Defendant did, Amazon maintains a record of that complaint.

341.    On information and belief, Amazon does not rank the complaints or reconsider the merits of the complaints in the event that they are determined, such as by a court, to be unfounded.

342.    On information and belief, if a company receives too many complaints against a seller, Amazon will permanently revoke the seller's ability to sell on Amazon.

343.    If a seller's ability to sell on Amazon is revoked, it loses all of its reviews and Amazon site rankings.

344.   Thus, even if the seller relaunches a product that had been complained of, but for example, a court had determined that the complaint was unfounded, the seller will have to rebuild its ranking which is extremely difficult when starting anew.

345.   Due to Defendants' improper complaints, Plaintiffs' Amazon seller's profiles have been permanently damaged, and those seller's profiles are at further risk for being revoked.

346.   Plaintiffs are entitled to injunctive relief, damages, costs, and its attorney's fees.

## FIFTEENTH CLAIM FOR RELIEF
### (Tortious Interference with Contract)

347.   Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

348.   Prior to November of 2019, Top Brand had a contract with Amazon whereby Top Brand was permitted to sell its products on Amazon.com in exchange for a fee per sale.

349.   The contract was valid and enforceable.

350.   Defendants were aware of the contract because Defendant also sold on Amazon.com and therefore knew what was required of sellers like Top Brand that sold products on Amazon.com.

351.   Defendants willfully and intentionally induced Amazon to breach its contract with Top Brand and prevent Top Brand from selling its products on Amazon.com by making false claims of patent infringement against Top Brand.

352.   Defendants actively persuaded and encouraged Amazon to prohibit Top Brand from selling its products on Amazon.com by filing complaints with Amazon.com alleging that Top Brand was infringing the '788 patent and '431 patent.

353.   Plaintiffs provided Defendants with a detailed explanation of why their products did not infringe the '788 patent nor the '431 patent, yet Defendants willfully

1    ignored such bases of noninfringement in making further bad faith claims of infringement

2    to third parties such as Amazon.

3    354.   Amazon did breach its contract and prevent Top Brand from selling its

4    products on Amazon.com due to Defendants' wrongful conduct.

5    355.   Top Brand sells its products under license from Sky.

6    356.   Prior to November of 2019, E Star had a contract with Amazon whereby E

7    Star was permitted to sell its products on Amazon.com in exchange for a fee per sale.

8    357.   The contract was valid and enforceable.

9    358.   Defendants were aware of the contract because Defendant also sold on

10   Amazon.com and therefore knew what was required of sellers like E Star that sold product

11   on Amazon.com.

12   359.   Defendants willfully and intentionally induced Amazon to breach its

13   contract with E Star and prevent E Star from selling its products on Amazon.com by

14   making false claims of patent infringement against E Star.

15   360.   Defendants actively persuaded and encouraged Amazon to prohibit E Star

16   from selling its products on Amazon.com by filing a complaint with Amazon.com

17   alleging that E Star was infringing the U.S. Utility Patent No 10,420,431 in the same

18   manner as its assertions for infringement of the '788 Design patent. When asked by

19   Plaintiffs' counsel to provide a substantiating claim chart as a basis for the infringement

20   claim, Defendants simply ignored Plaintiffs' counsel's repeated requests for that

21   infringement analysis.

22   361.   Amazon did breach its contract and prevent E Star from selling its products

23   on Amazon.com due to Defendants' wrongful conduct.

24   362.   Prior to November of 2019, Flying Star had a contract with Amazon

25   whereby Flying Star was permitted to sell its products on Amazon.com in exchange for a

26   fee per sale.

27   363.   The contract was valid and enforceable.

28

47

364.    Defendants were aware of the contract because Defendant also sold on Amazon.com and therefore knew what was required of sellers like Flying Star that sold products on Amazon.com.

365.    Defendants willfully and intentionally induced Amazon to breach its contract with Flying Star and prevent Flying Star from selling its products on Amazon.com by making false claims of patent infringement against Flying Star.

366.    Defendants actively persuaded and encouraged Amazon to prohibit Flying Star from selling its products on Amazon.com by filing a complaint with Amazon.com alleging that Flying Star was infringing the U.S. Utility Patent No 10,420,431 in the same manner as its assertions for infringement of the '788 Design patent. When asked by Plaintiffs' counsel to provide a substantiating claim chart as a basis for the infringement claim, Defendants simply ignored Plaintiffs' counsel's repeated requests for that infringement analysis.

367.    Amazon did breach its contract and prevent Flying Star from selling its products on Amazon.com due to Defendants' wrongful conduct.

368.    Flying Star sells its products under license from Sky.

369.    Plaintiffs have suffered damages as a result of Defendants' wrongful conduct at least insofar as they have been prevented from selling products through Amazon.com, have lost sales, and their seller's reputations have been damaged because of Defendants' tortious actions.

**SIXTEENTH CLAIM FOR RELIEF**

**(Tortious Interference with Prospective Economic Advantage)**

370.    Plaintiffs reallege and incorporate each of the foregoing paragraphs as if fully set forth in this paragraph.

371.    Prior to November of 2019, Top Brand had a business relationship with Amazon whereby Top Brand was permitted to sell its products on Amazon.com in exchange for a fee per sale.

372.     Top Brand reasonably expected that it would continue to sell its products through Amazon.com.

373.     Defendants were aware of the relationship because Defendant contacted Amazon about Top Brand's products being sold on Amazon.com and therefore knew that Top Brand expected to continue to sell its products on Amazon.com.

374.     Defendants willfully, intentionally and unjustifiably induced Amazon to terminate the business relationship and Top Brand's expectancy and prevented Top Brand from selling its products on Amazon.com by making false claims of patent infringement against Top Brand.

375.     Defendants actively persuaded and encouraged Amazon to prohibit Top Brand from selling its products on Amazon.com by filing complaints with Amazon.com alleging that Top Brand was infringing the '788 patent and '431 patent.

376.     Plaintiffs provided Defendants with a detailed explanation of why their products did not infringe the '788 patent and '431 patent, yet Defendants willfully ignored such bases of noninfringement in making further bad faith claims of infringement to third parties such as Amazon.

377.     Amazon did terminate its business relationship with Top Brand, preventing Top Brand from selling its products on Amazon.com due to Defendants' wrongful conduct.

378.     Top Brand sells its products under license from Sky.

379.     Prior to November of 2019, E Star had a business relationship with Amazon whereby E Star was permitted to sell its products on Amazon.com in exchange for a fee per sale.

380.     E Star reasonably expected that it would continue to sell its products through Amazon.com.

381.     Defendants were aware of the relationship because Defendant contacted Amazon about E Star's products being sold on Amazon.com and therefore knew that E Star expected to continue to sell its products on Amazon.com.

382.   Defendants willfully, intentionally and unjustifiably induced Amazon to terminate the business relationship and E Star's expectancy and prevented E Star from selling its products on Amazon.com by making false claims of patent infringement against E Star.

383.   Defendants actively persuaded and encouraged Amazon to prohibit E Star from selling its products on Amazon.com by filing a complaint with Amazon.com alleging that E Star was infringing the U.S. Utility Patent No 10,420,431 in the same manner as its assertions for infringement of the '788 Design patent. When asked by Plaintiffs' counsel to provide a substantiating claim chart as a basis for the infringement claim, Defendants simply ignored Plaintiffs' counsel's repeated requests for that infringement analysis.

384.   Prior to November of 2019, Flying Star had a business relationship with Amazon whereby Flying Star was permitted to sell its products on Amazon.com in exchange for a fee per sale.

385.   Flying Star reasonably expected that it would continue to sell its products through Amazon.com.

386.   Defendants were aware of the relationship because Defendant contacted Amazon about Flying Star's products being sold on Amazon.com and therefore knew that Flying Star expected to continue to sell its products on Amazon.com.

387.   Defendants willfully, intentionally and unjustifiably induced Amazon to terminate the business relationship and Flying Star's expectancy and prevented Flying Star from selling its products on Amazon.com by making false claims of patent infringement against Flying Star.

388.   Defendants actively persuaded and encouraged Amazon to prohibit Flying Star from selling its products on Amazon.com by filing complaints with Amazon.com alleging that Flying Star was infringing the U.S. Utility Patent No 10,420,431 in the same manner as its assertions for infringement of the '788 Design patent. When asked by Plaintiffs' counsel to provide a substantiating claim chart as a basis for the infringement

1  claims, Defendants simply ignored Plaintiffs' counsel's repeated requests for that
2  infringement analysis.

3       389.    Flying Star sells its products under license from Sky.

4       390.    Plaintiffs have suffered damages as a result of Defendants' wrongful
5  conduct at least insofar as they have been prevented from selling products through
6  Amazon.com, have lost sales, and their seller's reputations have been damaged because
7  of Defendants' tortious actions.

8  **PRAYER FOR RELIEF**

9       WHEREFORE, Plaintiffs respectfully pray for this Court to enter an Order
10 granting the following relief on the claims in suit and against Cozy Comfort, Brian
11 Speciale, and Michael Speciale, jointly and severally:

12      1.    A declaration that Plaintiffs' products do not infringe, either directly,
13 indirectly, or contributorily any valid and enforceable claim of the '788 patent;

14      2.    A declaration that the claim of the '788 patent is invalid;

15      3.    A declaration that the '788 patent is void and unenforceable;

16      4.    A declaration that Plaintiffs' products do not infringe, either directly,
17 indirectly, or contributorily any valid and enforceable claim of the '380 patent;

18      5.    A declaration that the claim of the '380 patent is invalid;

19      6.    A declaration that the '380 patent is void and unenforceable;

20      7.    A declaration that Plaintiffs' products do not infringe, either directly,
21 indirectly, or contributorily any valid and enforceable claim of the '416 patent;

22      8.    A declaration that the claim of the '416 patent is invalid;

23      9.    A declaration that the '416 patent is void and unenforceable;

24      10.    A declaration that Plaintiffs' products do not infringe, either directly,
25 indirectly, or contributorily any valid and enforceable claim of the '237 patent;

26      11.    A declaration that the claim of the '237 patent is invalid;

27      12.    A declaration that the '237 patent is void and unenforceable;

28

13.     An order declaring that Plaintiffs are the prevailing party and that this is an exceptional case, awarding Plaintiffs their costs, expenses, and reasonable attorney's fees under 35 U.S.C. §285;

14.     An order awarding Plaintiffs damages for the injury they suffered due to Defendants' false marking;

15.     An order that Defendants, jointly, severally and all those acting in concert or participation with them be permanently enjoined from contacting third-parties to remove Plaintiffs' products as infringing any of the '788, '380, '416, '237 and '431 patents;

16.     An order awarding Plaintiffs their damages adequate to compensate Plaintiffs for Defendants' tortious acts;

17.     An order awarding Plaintiffs punitive damages due to Defendants' willful and wanton misconduct;

18.     An order awarding Plaintiffs such other and additional and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues so triable.

DATED this 21st day of May, 2021.

OSBORN MALEDON, P.A.


By  s/ Phillip W. Londen
    Eric M. Fraser
    Phillip W. Londen
    2929 North Central Avenue, Ste. 2100
    Phoenix, Arizona  85012-2793

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARONBERG GOLDGEHN DAVIS & GARMISA
William L. Niro (pro hac vice)
Christopher W. Niro (pro hac vice)
M. Chip De Preter (pro hac vice)
330 North Wabash Avenue, Suite 1700
Chicago, Illinois 60611

Attorneys for Plaintiffs/Counterclaim-Defendants