1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8    Top Brand LLC, et al.,                    )    No.  CV-21-00597-PHX-SPL
                                               )
9                                              )
                       Plaintiffs,             )
10                                             )    **ORDER**
     vs.                                       )
11                                             )
     Cozy Comfort Company LLC, et al.,         )
12                                             )
                                               )
13                     Defendants.             )
                                               )
14   _____  )

15           Before the Court are the parties' respective motions for summary judgment:

16   Plaintiffs' Motion for Partial Summary Judgment (Doc. 213) and Defendants' Motion for

17   Summary Judgment (Doc. 216). Both Motions are fully briefed and ready for review. (*See*

18   Docs. 213, 222, & 227; Docs. 216, 234, & 228). The Court's ruling is as follows.[1]

19   **I.       BACKGROUND**

20           This case arises out of a series of alleged patent infringements. Plaintiffs Top Brand

21   LLC, E-Star LLC, and Flying Star LLC (collectively "Plaintiffs," along with Sky Creations

22   LLC and John Ngan) are companies who produce and sell clothing, "including hooded

23   sweatshirts and wearable blankets."[2] (Doc. 122 at 4). Defendant Cozy Comfort Company

24   _____

25           [1] Because it would not assist in resolution of the instant issues, the Court finds the
     pending Motions suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R.
26   Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

27           [2] Plaintiff Sky Creations LLC (the fourth Plaintiff) licenses to the other Plaintiffs
     some of the clothing they sell. (Doc. 122 at 8). John Ngan (Counter Defendant and Counter
28   Claimant) is a Member of Top Brand, E-Star, Flying Star, and Sky Creations. (*Id.* at 5).

LLC ("Defendant" or "Cozy") is an Arizona company selling products similar to Plaintiffs' products. (*Id.* at 5). Defendants Brian and Michael Speciale are the co-founders and sole members of Cozy Comfort LLC. (*Id.*). There are five patents primarily at issue in this case (all held by Defendants)—four design patents and one utility patent[3]:

> (i)   U.S. Design Patent No. D859,788 (the '788 patent);
>
> (ii)  U.S. Design Patent No. D905,380 (the '380 patent);
>
> (iii) U.S. Design Patent No. D886,416 (the '416 patent);
>
> (iv)  U.S. Design Patent No. D903,237 (the '237 patent);
>
> (v)   U.S. Patent No. 10,420,431 (the '431 utility patent).

(*Id.* at 2–3). Plaintiffs allege Defendants contacted certain third-party retailers (*e.g.*, Amazon) where both parties sell or sold their products and accused Plaintiffs' products of patent infringement. (*Id.* at 6, 9). The third parties conducted their own internal reviews, resulting in Plaintiffs' products being barred from sale on their retail websites. (*Id.* at 6, 15–16). Plaintiffs maintain their products do *not* infringe on Defendants' products and brought this action seeking, among other forms of relief, declaratory judgments of non-infringement, invalidity, and unenforceability. (*Id.* at 2–3, 6).

On February 20, 2020, Plaintiffs filed a Complaint in the Northern District of Illinois. (Doc. 1). On April 8, 2021, the case was transferred here. (Docs. 40–42). Plaintiffs have filed three Amended Complaints (Docs. 26, 62, & 122), and assert twenty claims[4]:

> Counts 1–12: Requests for declaratory judgments of non-infringement, invalidity, and unenforceability of the '788,

---

[3] A utility patent generally covers unique ideas or inventions and protects the way that idea or invention *functions*; a design patent generally covers new designs of existing products and only protects the way the product *looks*. *See Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC*, 727 F. Supp. 2d 1038, 1051 (W.D. Wash. 2010) ("A design patent, unlike a utility patent, protects only the ornamental design of an article, and does not extend to any functional aspects of the design.").

[4] On August 9, 2021, this Court denied Defendants' Partial Motion to Dismiss, in which Defendants sought dismissal of Counts 7–12. (Doc. 89).

'380, '416, and '237 design patents;

Counts 13–16: False marking; state-law unfair competition; tortious interference with contract; tortious interference with prospective economic advantage;

Counts 17–18: Requests for declaratory judgments of non-infringement and invalidity of the '431 utility patent;

Counts 19–20: Cancellation of U.S. Trademark Registrations 5,608,347 and 5,712,456.

(Doc. 122 at 20–61). In their Answer to Third Amended Complaint (Doc. 128), Defendants assert ten infringement-related counterclaims:

Counterclaims 1, 2, 9, 10: Infringement of the '788, '380, '237, and '416 design patents;

Counterclaim 3: Federal trade dress infringement and unfair competition, in violation of 15 U.S.C. § 1125(a);

Counterclaim 4: Common law trade dress infringement and unfair competition;

Counterclaim 5: Requests for declaratory judgment of non-infringement of the '900 patent;

Counterclaims 6–8: Trademark infringement under federal and Arizona law; common law trademark infringement and unfair competition.

(Doc. 128 at 71–81).[5] On November 8, 2021, Plaintiffs filed an Answer to Defendants' Counterclaims. (Doc. 139). The parties filed their claim construction briefing between October and December 2021. (*See* Docs. 135, 137, 142, & 143). On May 20, 2022, the parties appeared before the Court for a Markman Hearing, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). (Doc. 167). On August 8, 2022, the Court entered an Order (Doc. 182) construing the disputed claims in the '788, '380, '416, '237, and '431 patents. In February 2023, the parties filed their respective Motions for Summary Judgment, the Motions that are presently before the Court. (*See* Docs. 213 & 216).

---

[5] On Aug. 18, 2021, this Court dismissed two other counterclaims originally asserted by Defendants: unjust enrichment & tortious interference with a contract. (Doc. 91).

## II.   LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material. *Anderson*, 477 U.S. at 250. In other words, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and, instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

When considering a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must view the factual record and draw all reasonable inferences in the nonmovant's favor. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

///

///

## III.   **DISCUSSION**

### A. **Alter Ego Issue**

As a general matter, the owner of a corporation or limited liability company is not liable for the obligations of that entity. *See U.S. Bank Nat'l Assoc. v. Starr Pass Resort Devs. LLC*, No. 2 CA-CV 2018-0030, 2019 WL 2237471, at *15 (Ariz. Ct. App. May 22, 2019) (citing *Dietel v. Day*, 16 Ariz. App. 206, 208 (1972)). However, "[i]mposing alter-ego liability—commonly referred to as 'piercing the corporate veil'—breaks from [this] general principle[] and holds . . . an owner liable for corporate debts." *Id.* (citing *Dietel*, 16 Ariz. App. at 208). "The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel*, 16 Ariz. App. at 208. To establish alter-ego liability, a plaintiff "must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37 (1991).

The alter-ego determination is "highly fact-based" and "require[s] considering the totality of the circumstances." *Pimal Prop., Inc. v. Cap. Ins. Grp., Inc.*, No. CV11–02323–PHX–DGC, 2012 WL 608392, at *5 (D. Ariz. Feb. 27, 2012) (quotations marks and citation omitted). Factors considered include, but are not limited to, "failure to maintain formalities of separate corporate existence; . . . plaintiff's lack of knowledge of separate corporate existence; owners' making of interest-free loans to corporation; maintaining of corporate financial records; commingling of personal and corporate funds; diversion of corporate property for shareholders' personal use; observance of formalities of corporate meetings; . . . and filing of corporate income tax returns." *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 179 Ariz. 155, 160–61 (Ct. App. 1994) (citations omitted). Additionally, "[u]ndercapitalization, where it is clearly shown, is an important factor in determining whether the doctrine of alter ego should be applied." *Ize Nantan Bagowa, Ltd. v. Scalia*, 118 Ariz. 439, 443 (Ct. App. 1978).

Defendants request that John Ngan be found "ultimately liable for any claims asserted and damages awarded in this case, as he is the alter ego of Plaintiffs." (Doc. 216

at 9). The Court finds that material factual disputes exist precluding summary judgment in Defendants' favor on the alter-ego issue. The parties dispute the application of virtually every factor. For example, the parties dispute how the Plaintiff companies record their sales revenues and other financial data, including whether and how the companies report company-specific sales data. They dispute the significance of Plaintiffs E-Star and Top Brand's annual tax reporting of zero income after deductions. They dispute the meaning of certain fund transfers that were made. They dispute the number of employees that each Plaintiff company has had at various times and whether and by whom those employees were issued paychecks. They dispute the number of assets that each Plaintiff company has. They dispute the implications that should be drawn from Plaintiffs' overall corporate structure, which involves a consolidation of profits and losses in Plaintiff Flying Star and alleged undercapitalization of Plaintiffs E-Star and Top Brand. The parties do not even agree on numerous evidentiary issues, including the admissibility of Mr. Ngan's Declaration,[6] as well as whether Plaintiffs complied with this Court's October 27, 2022 Discovery Dispute Order which ordered Plaintiffs to disclose numerous financial records.

The Court concludes that, in this case, the alter-ego issue is not well-suited for determination based on the parties' combined ten pages of summary judgment briefing. The analysis involves untangling a web of financial documents, deposition testimony, evidentiary and factual disputes, and theories about the legality and viability of corporate structure and conduct. Given the impact that this alter-ego determination may have on questions of liability and damages in this litigation, it is critical that this issue be resolved thoroughly and correctly. The Court denies Defendants' request for summary judgment on the issue of Mr. Ngan's potential alter-ego liability.

///

---

[6] The Court notes that Defendants raise issue with Mr. Ngan's Declaration (Exhibit C to Plaintiffs' Response), asserting that the sham affidavit rule requires its exclusion from consideration. (Doc. 228 at 2–4). Given that this argument was first raised in the Reply, Plaintiffs were not afforded an opportunity to respond.

### B.  Dismissal of Individual Defendants

Defendants seek complete dismissal of individual Defendants Michael and Brian Speciale. (Doc. 216 at 9–10). Defendants reason that there are no claims that are plausibly pleaded against them, and no claims for which they could plausibly be held liable. (*Id.* at 9). The Court agrees with respect to Claims 1–12 and 17–20, which seek declaratory judgments of non-infringement, invalidity, and unenforceability as to Defendants' patents, or cancellation of Defendants' trademarks. As Defendants note, "neither Brian nor Michael Speciale are the proper defendant for declaratory judgments related to patents [or trademarks] owned by Cozy." (Doc. 216 at 10). Moreover, Plaintiffs focus their Response on ensuring the individual Defendants remain in this action with respect to the false marking, unfair competition, and tort claims. (Doc. 234 at 11–12). Plaintiffs do not make any argument with respect to the patent and trademark claims and fail to offer a plausible theory for the individual Defendants' liability under those claims. Thus, the Court grants summary judgment to Defendants Michael and Brian Speciale on Claims 1–12 and 17–20 and dismisses these claims to the extent they are brought against the individual Defendants.

With respect to the remaining claims (Claims 13–16), the Court first notes that two of them are dismissed in this Order: Claims 13 and 15. *See infra.* pt. III(C)(3) and (4). Thus, Defendants' request to dismiss the individual Defendants is rendered moot with respect to these two claims. This leaves only Claim 14 (unfair competition under Illinois state law) and Claim 16 (tortious interference with business expectancy) as possible grounds for the individual Defendants' liability. Defendants argue that Claims 14 and 16 "do not mention either Brian or Michael Speciale individually" and that "[n]either Speciale is the proper defendant for an 'unfair competition' . . . or 'tortious interference' claim." (Doc. 216 at 10). On this point, the Court does not agree. Plaintiffs allege numerous facts indicating that Defendants Michael and Brian Speciale were at least involved with Defendants' efforts to submit infringement claims to Amazon (and other third-party retailors), which resulted in the allegedly wrongful takedown of Plaintiffs' products. (*See, e.g.*, Doc. 235 at 26–28). Given that the allegedly false infringement claims and wrongful takedowns are at the center

of Plaintiffs' unfair competition and tortious interference theories, the Court rejects Defendants' contention that the individual Defendants have *nothing* to do with Claims 14 and 16 and that "neither [] is the proper defendant" for such claims.

Given their ties to the facts underlying Claims 14 and 16, the Court declines to entirely dismiss the individual Defendants from this case at this time. Whether they may be held individually liable for their own actions—or for the actions of Defendant Cozy via a piercing-the-corporate-veil theory—is a fact-intensive question that the parties do not fully and sufficiently brief in their summary judgment briefing. The Court grants summary judgment to the individual Defendants Michael and Brian Speciale on Claims 1–12 and 17–20, denies as moot Defendants' request for summary judgment with respect to the individual Defendants on Claims 13 and 15, and denies Defendants' request for summary judgment with respect to the individual Defendants on Claims 14 and 16. For now, the individual Defendants will remain in this action.

### C. Summary Judgment on Claims and Counterclaims

Plaintiffs seek summary judgment on Plaintiffs' Claims 1, 2, 4, 5, 10, 11, and 17. (Doc. 213 at 3). Plaintiffs request partial summary judgment on Plaintiffs' Claim 13. (*Id.*). Plaintiffs also seek summary judgment as to Defendants' Counterclaims 1, 2, and 9, and *concede* summary judgment in Defendants' favor on Defendants' Counterclaim 5. (*Id.*).

Defendants seek summary judgment on Plaintiffs' Claims 13, 14, 15, 16, 19, and 20, and on Defendants' Counterclaim 5. (*Id.*). Defendants *concede* summary judgment in Plaintiffs favor on Plaintiffs' Claims 4, 10, and 17, and *withdraws* Counterclaims 2 and 9. (*Id.*). The Court will now address these various summary judgment requests.

### *1. Infringement and Validity of '380 and '237 Patents*

Plaintiffs seek summary judgment on their claims for non-infringement of the '380 and '237 patents (Claims 4 & 10), as well as on Defendants' corresponding counterclaims for infringement (Counterclaims 2 & 9). (Doc. 213 at 6). Defendants no longer oppose this request and concede the infringement issue. (Doc. 222 at 5 ("Due to the Court's ruling in the Claim Construction Order, [Defendants are] no longer asserting that [Plaintiffs]

infringe[] the '237 and '380 Patents. As a result, [Defendants] withdraw[ their] claims of infringement as it relates to the '237 and '380 Patents and does not oppose [Plaintiffs'] motion with respect to non-infringement of those two patents.")). Therefore, Court grants summary judgment in Plaintiffs' favor on Claims 4 and 10 and on Counterclaims 2 and 9.

Plaintiffs additionally seek summary judgment on their claims for invalidity of the '380 and '237 patents (Claims 5 & 11). (Doc. 213 at 4). Unlike with infringement, Defendants *do* oppose Plaintiffs' request on the issue of validity. (Doc. 222 at 5). First, Defendants argue that the Court should dismiss the validity issue as moot, given that the infringement claims have been resolved. (*Id.*). This position finds some support in the caselaw. *See Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) ("[A] district court has discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement."). However, "the better practice is to treat both the validity and infringement issues," particularly where—as here—the issue of non-infringement was conceded rather than decided on the merits. *See Leesona Corp. v. United States*, 530 F.2d 896, 906, n.9 (Ct. Cl. 1976) (internal citations omitted) ("While the better practice is to treat both the validity and infringement issues, particularly in view of the public interest in the validity issue, it is not always necessary to do so. Where, as here, noninfringement is clear and invalidity is not plainly evident, it is appropriate to treat only the infringement issue."); *see also Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 330 (1945) (internal citations omitted) ("There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. It has come to be recognized, however, that of the two questions, validity has the greater public importance, and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent."). The Court declines to dismiss the validity issue as moot.

Turning to the merits of the parties' validity dispute, Plaintiffs contend that the '380 and '237 patents are invalid as anticipated, pursuant to 35 U.S.C. § 102. Plaintiffs argue

that the invention claimed in both patents ("The Comfy Original") "was in public use, on sale, or otherwise available to the public well over one year prior" to the patents' respective effective filing dates ("EFD"). (Doc. 213 at 4). Under § 102, a patent may be found invalid if it was anticipated by prior art. *See* 35 U.S.C. 102(a)(1) ("A person shall be entitled to a patent unless . . . the claimed invention was . . . in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."). To prove anticipation by prior art, the party seeking to invalidate the patent must demonstrate "that each element of the claim, properly construed, is found in a single prior art reference." *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008). "Anticipation is a question of fact" and "may be resolved on summary judgment if there is no genuine issue of material fact." *Id.* at 1356–57.

In this case, the '237 patent has an EFD of September 16, 2019. (Doc. 182 at 20). The '380 patent's EFD is April 11, 2020. (*Id.* at 21). In determining these dates, the Court rejected Defendants' contention that the patents were entitled to the *earlier* EFD of the '788 patent. (*See id.* at 11–21). Of particular relevance here, the Court reasoned that— having compared the designs disclosed in the '380 and '237 patents with the design depicted in the '788 patent—Defendants "failed to show that a person skilled in the art would conclude that the '788 patent . . . disclosed the design depicted by the '237 patent." (*Id.* at 20). Specifically, the Court found that "[c]onsidering the '237 patent's three embodiments together as one single design claim . . . shows a claim encompassing a distinctly wider scope of design variations than the comparably narrow design claim depicted in the '788 patent." (*Id.* at 17). The Court concluded that the designs depicted in the '237 and '380 patents contained numerous structural changes that were "sufficiently significant to produce different designs." (*Id.*).

Plaintiffs argue that Defendants' own products, including The Comfy Original, are the prior art which anticipated the '380 and '237 patents. (Doc. 213 at 5–6). The Comfy Original was first offered for sale on September 28, 2017—clearly well before the patents' EFDs. (Doc. 203-5 at 207). However, rather than performing an element-by-element

comparison of the claims to the prior art item in question, Plaintiffs argue that Defendants' own admissions during this litigation satisfy Plaintiffs' burden to prove invalidity by anticipation. (Doc. 213 at 5–6). Specifically, Plaintiffs point to an argument Defendants' counsel made at the *Markman* Hearing in which he acknowledged that—if the '380 patent and '237 patent were not entitled to rely on the earlier priority date of the '788 patent—

> all of [Defendants'] products *would immediately become prior art* and it would have been impossible for [the Patent Examiner] to issue the '380 patent or the '237 patent because in the '237 patent, images directly taken from the '788 are in that patent [and the '788 patent] *would have clearly anticipated* [the '380 and '237 patents].

(Doc. 223 at 3 (emphasis added) (citing Doc. 203-5 at 199)). In addition, Plaintiffs point to two instances in which Defendants "admitted" their products, including The Comfy Original, were covered by the '380 and '237 patents. *First*, Defendants' website stated that "The Comfy Original, The Comfy Original Jr., The Comfy Dream, The Comfy Teddy Bear Quarter Zip, and The Comfy Original Quarter Zip are protected by U.S. Patent Nos. 10,420,431[;] D859,788[;] D886,416[;] D903,237[;] D905,380." (Doc. 203-7 at 8). *Second*, in response to Plaintiffs' interrogatories, Defendants indicated that The Comfy Original was covered by the '788, '237, and '380 patents. (Doc. 203-5 at 207).

Defendants do not dispute any of these admissions and readily acknowledge that "throughout discovery and up until this Court's Claim Construction Order, Cozy believed and understood . . . that all three patents disclosed the same subject matter." (Doc. 222 at 5–6). After this Court ruled that the '380 and '237 patents "disclosed [] *different* design[s] entirely from the *Comfy Original* claimed in the '788 patent," Defendants simply changed their position and no longer maintain that the '380 or '237 patents cover their products. (*Id.* at 6 (emphasis in original); *see also* Doc. 223 at 11).

In essence, Plaintiffs' position is that Defendants' previous allegations—that The Comfy Original was covered by the '380 and '237 patents—are sufficient, on their own, to satisfy Plaintiffs' burden of demonstrating that The Comfy Original anticipated the claims

of the '380 and '237 patents. (Doc. 227 at 7–8). In contrast, Defendants' position is that Plaintiffs are "effectively request[ing] that the Court reverse itself and hold that for the purpose of summary judgment, the '788 patent and The Comfy Original described therein disclose the later patented designs in the '237 and '380 patents." (Doc. 222 at 6).

Plaintiffs rely on *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000). That case, along with *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448 (Fed. Cir. 1997), set forth a narrow exception to the general rule that a party seeking to prove invalidity by anticipation must perform an element-by-element comparison of the claim to the prior art item. The *Vanmoor–Evans Cooling* line of cases provide that "when the same product is accused of infringement by a patentee and claimed as prior art by the defendant, the alleged infringer may claim invalidity without an element-by-element analysis." *Big Baboon, Inc. v. SAP Am., Inc.*, No. 4:17-cv-02082-HSG, 2019 WL 1791421, at *2 (N.D. Cal. Apr. 24, 2019) (citing *Evans Cooling*, 125 F.3d at 1450–52). Stated slightly differently, "[w]hen the item alleged by one party to be anticipating prior art is the exact same item that the other party contends infringes, the party seeking to prove invalidity by anticipation can establish invalidity without actually performing an element by element comparison of the claim to the prior art item in question." *Nextec Applications v. Brookwood Co., Inc.*, 703 F. Supp. 2d 390, 422 (S.D.N.Y. 2010) (citing *Vanmoor*, 201 F.3d at 1366). "Because the entire basis of the infringement claim under these circumstances is the patentee's contention that the accused product contains every limitation of the patented claim, if the accused infringer can prove that the accused product actually existed before the filing date of the asserted patent, the accused infringer's evidentiary burden to prove invalidity by anticipation will be satisfied [] by the patentee's claims of infringement against that product." *Id.*

The facts of the present case simply do not align with the factual scenario described in *Vanmoor*, *Evans Cooling*, and their progeny. Here, the item alleged by Plaintiffs to be anticipating prior art (The Comfy Original) is not the "exact same item" that Defendants contend infringes (Plaintiffs' products). The present facts align more closely with "the

typical case," distinguished in *Evans Cooling*, "where the patentee [Defendants] has placed some device on sale prior to the critical date and the accused infringer [Plaintiffs] must demonstrate that this device actually embodied or rendered obvious the patented invention." *Evans Cooling*, 125 F.3d at 1451.

Plaintiffs argue that this distinction does not matter, as "[t]he analysis of whether a product is covered by the patent is the same whether the product is prior art of the inventor or a product of the alleged infringer." (Doc. 227 at 7). Even so, this is beside the point. This Court's review of the caselaw reveals that courts are *very* reluctant to extend the *Vanmoor–Evans Cooling* principles to anything other than the exact factual scenario presented in those cases. *See, e.g.*, *IXYS Corp. v. Adv. Power Tech., Inc.*, No. C 02-03942 MHP, 2004 WL 540513, at *6 (N.D. Cal. Mar. 18, 2004) (finding that "[t]he logical nexus that existed between infringement and invalidity in *Evans Cooling*" was not present "[w]here a plaintiff may succeed on its claim without proving that the allegedly 'on sale' product itself infringes"); *ViaSat, Inc. v. Space Sys./Loral, Inc.*, No. 3:12-CV-00260-H-(WVG), 2013 WL 12061800, at *4 (S.D. Cal. Jan. 8, 2013) (calling *Vanmoor–Evans Cooling* doctrine a "limited exception" and declining to extend it to different facts). Simply put, "*Vanmoor* and *Evans* [*Cooling*] stand for the proposition that where infringement claims are directed against *the very item* that is alleged to be anticipatory prior art, the infringement claims themselves suffice to establish that every element of the claim is found in the accused item." *Nextec*, 703 F. Supp. 2d at 423 (emphasis in original). Here, Defendants' infringement claim is directed against Plaintiffs' products, and Plaintiffs' anticipation argument is directed against Defendants' products, namely The Comfy Original. Perhaps even more harmful to Plaintiffs' argument for application of the *Vanmoor–Evans Cooling* doctrine is the fact that Defendants conceded that Plaintiffs' products did *not* infringe Defendants' patents. Therefore, even if the anticipatory prior art was one of Plaintiffs' products, the infringement concession in this case does nothing to prove anticipation. Under this factual setup, Defendants' infringement claim against Plaintiffs' products does not itself prove that The Comfy Original contains each and every limitation of the '380 and

13

'237 patents. The Court finds *Vanmoor* inapplicable and declines Plaintiffs' invitation to extend the case to the facts presented here.

Their reliance on *Vanmoor* aside, the Court agrees with Plaintiffs that Defendants cannot escape their previous position that The Comfy Original (and Defendants' other related products) were covered by the '788, '380, and '237 patents. As noted above, Defendants expressly stated this position in their Response to Plaintiffs' Interrogatories. (Doc. 203-5 at 207–08). Defendants' website made the same assertion. (Doc. 203-7 at 8). Even more pointedly, Defendants asserted—directly to this Court—that if the '380 and '237 patents were not entitled to the '788 patent's priority date, "all of [their] products would immediately become prior art" and would have "clearly anticipated" the '380 and '237 patents. (Doc. 203-5 at 199). Defendants do not dispute any of this evidence, nor do they offer any evidence to support their new position that the '380 and '237 patents do *not* cover The Comfy Original (or any of their other related products). To the contrary, Defendants readily acknowledge that this was their position "throughout discovery and up until this Court's Claim Construction Order," but that they have simply changed their position in response to this Court's Claim Construction Order. (Doc. 222 at 6).

As Plaintiffs point out, Defendants cannot evade summary judgment and save their patents from being found invalid as anticipated by simply changing their position on a material fact. The Comfy Original was covered by the '237 and '380 patents, as expressly asserted and admitted by Defendants numerous times. This Court's priority date determination did nothing to change this fact. Defendants assert that that a ruling invalidating the patents amounts to a reversal of, or is otherwise at odds with, this Court's previous finding on the priority-date issue. According to Defendants, "[e]ither the '237 and '380 patents are *different* than the '788 patent and The Comfy Original, or they disclose the same subject matter as Cozy argued [with respect to the priority-date dispute], and they are entitled to priority." (Doc. 222 at 6). The Court finds this to be an oversimplification. Two things can be true, and Plaintiffs do not provide any legal authority to the contrary. First, and as this Court found, the '237 patent claimed "a distinctly wider scope of design

variations" than the '788 patent, was therefore not disclosed by the '788 patent, and thus not entitled to its earlier priority date. (*See* Doc. 182 at 17–20). Second, the '237 patent—with its "distinctly wider scope of design variations"—covered products, like The Comfy Original, which were also covered by the '788 patent and thus on sale or available for public use prior to the relevant EFDs. (*See* Doc. 182 at 12 (recognizing that, "outside of the removal of the hood outline and the cuffs," the '237 patent's "third embodiment is identical to the '788 patent design")).

All told, the Court finds that Defendants have offered no legally supported reason why they should be able to deny what was long considered by both parties in this case to be an undisputed fact—that The Comfy Original was covered by the '237 and '380 patents. Given that it remains undisputed that The Comfy Original was sold long before the EFDs of either the '237 or '380 patents, the Court finds no genuine issue of material fact exists as to whether The Comfy Original, as prior art, anticipated the '237 and '380 patents. These two patents are invalid as anticipated and the Court grants summary judgment in Plaintiffs' favor on their invalidity claims (Claims 5 and 11).

### 2. *Infringement and Validity of '788 Patent*

The '788 patent claims "an enlarged overgarment with an elevated marsupial pocket as shown and described." (Doc. 122-2 at 2). Plaintiffs argue that the '788 patent is indefinite because it fails to inform those skilled in the art as to the definition of the terms "enlarged" and "overgarment." (Doc. 213 at 7–12). Plaintiffs insist that the terms "enlarged" and "overgarment" are terms of degree and that they are "entirely subjective and indefinite" because "the determination of whether or not a product is 'enlarged' is dependent not on the garment itself, but rather on the person wearing it." (*Id.* at 10). Plaintiffs offer extrinsic evidence in the form of testimony from the inventors and the inventors' patent attorney to demonstrate that a person of ordinary skill in the art would not be able to understand with reasonable certainty the meaning of the terms and the scope of the design. (*Id.* at 8–11).

In response to Plaintiffs' indefiniteness argument, Defendants first argue that Plaintiffs are attempting to reopen claim construction, and that the Court "should deny

[Plaintiffs'] Motion on the '788 Patent and hold that the '788 Patent claim has already been construed and therefore, is not indefinite." (Doc. 222 at 8–9). Defendants point out that "[a]t *no time* during [the] claim construction process did [Plaintiffs] *ever* argue that the terms 'enlarged' and 'overgarment' were indefinite," that the Court's "adopted claim construction rendered the '788 patent claim indefinite," or "that an ordinary observer 'would not understand the scope of the design' if the words 'enlarged' or 'overgarment' were used." (*Id.* (emphasis in original)). Defendants call Plaintiffs' indefiniteness argument "both untimely and improper." (*Id.* at 9).

The Court declines to reject Plaintiffs' argument outright merely because Plaintiffs did not raise their indefiniteness argument at the claim construction stage. Defendants' position implies that a party waives any indefiniteness contentions with respect to claim terms that it did not nominate for claim construction. Defendants fail to cite any legal authority recognizing such a waiver as a *per se* rule. Rather, many courts have found just the opposite, holding that an indefiniteness claim "is not waived" just because the party contesting the patent "did not seek claim construction of the [disputed] term." *Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013) ("[F]ailure to seek construction of a term during claim construction does not constitute waiver of an indefiniteness argument."); *Takeda Pharm. Co. v. Handa Pharms., LLC*, No. C-11-00840 JCS, 2012 WL 1243109, at *16 (N.D. Cal. Apr. 11, 2012) ("Due to the largely factual nature of [the indefiniteness] inquiry, the [c]ourt concludes that [the] question is more suitable for determination on summary judgment than at the claim construction phase of the case."). To be sure, "the issues of indefiniteness and claim construction are—or at least, often will be—intertwined." *Cipher Pharms. Inc. v. Actavis Lab'ys FL, Inc.*, 99 F. Supp. 3d 508, 513 (D.N.J. 2015). This is because a "[c]ourt must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness." *ASM Am., Inc. v. Genus, Inc.*, No. C-01-2190-EDL, 2002 WL 1892200, at *15 (N.D. Cal. Aug. 15, 2001). Nevertheless, "[n]othing in the law confines a party's indefiniteness argument to the claim construction stage of the litigation." *Versata Software, Inc. v. Zoho Corp.*, 213

F. Supp. 3d 829, 834 (W.D. Tex. 2016). "[T]he Federal Circuit's statements that indefiniteness is intertwined with claim construction mean only that the Court must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness, and not that the Court must determine indefiniteness during the claim construction proceedings."[7] *ASM Am.*, 2002 WL 1892200, at *15; *see also Conoco, Inc. v. Energy & Env't, Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) (quotation marks omitted) ("[A] district court may engage in claim construction during various phases of litigation, not just in a *Markman* order. We have recognized that district courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

In light of this dispute over whether considering Plaintiffs' indefiniteness claim amounts to a "reopening" of claim construction, the Court finds it appropriate to clarify what its August 8, 2022 Claim Construction Order (Doc. 182) *did* and *did not* hold. In their claim construction briefing, the parties primarily disagreed on whether the Court needed to adopt verbal constructions for Defendants' design patents. (Doc. 182 at 24–25). Plaintiffs argued that "several aspects of the claimed designs are purely functional and not protected by the patents, and that this Court [had] a duty to—at the least—construe the claims in a manner distinguishing their ornamental features from those that are purely functional." (*Id.*). Plaintiffs additionally argued "that the prosecution history of the design patents—in particular, the '788 patent—narrows the scope of Defendants' design claims" and that the Court "should adopt verbal constructions for each of the design patents that call out certain features." (*Id.* at 25). Defendants, on the other hand, argued *against* any additional claim construction of the design patents, relying on caselaw cautioning against verbal

---

[7] Indeed, at least one court has even hinted that raising indefiniteness in claim construction briefing is improper altogether and should instead be the subject of a separate motion. *See ASM Am.*, 2002 WL 1892200, at *16 ("Genus has not even filed a motion seeking to invalidate any of the claims of the '590 patent on the basis of indefiniteness, but simply asserts its arguments in its opposition claim construction brief. This is not a preferable procedure.").

constructions in design patents. (*Id.*).

The Court focused its analysis *solely* on the issues of functionality and prosecution history, namely whether and to what extent such considerations had a limiting effect on the scope of Defendants' design patents. (*See id.* at 24–33). In the end, the Court found that factual disputes existed precluding any definitive ruling on the issues. (*Id.* at 32–33). Critically, it was *this* finding—that factual disputes existed on the issues of functionality and prosecution history—that led the Court to its ultimate rejection of Plaintiffs' suggested claim constructions:

> All told, the Court rejects the claim constructions suggested by Plaintiffs for the '788 . . . patent[] because they rely on functionality and prosecution history arguments that this Court declines to decide at this time. Even if functionality and prosecution history are relevant and narrow the scope of Defendants' design claims, "in order to prevent placing 'undue emphasis' on certain elements of the design, they ought [to] be addressed at the summary judgment or jury instruction stage, rather than the claim construction stage." *Nike*, 2019 WL 12528983, at *10 (quoting *Reddy v. Lowe's Co., Inc.*, 60 F. Supp. 3d 249, 254 (D. Mass. 2014)). "To provide the jury with a verbalized construction of the [design patents'] claims which directs their attention to the . . . illustrations in the patent and then describes only those elements that are implicated by prosecution history and functionality would place undue emphasis on those few elements. This is precisely the danger against which the *Egyptian Goddess* court cautioned." *Depaoli v. Daisy Mfg. Co., Inc.*, No. 07ocv-11778-DPW, 2009 WL 2145721, at *5 (D. Mass. July 14, 2009). The design patents in issue (the '788, '416, '237, and '380 patents) are construed as they are presently written.

(*Id.*). The Court repeats its claim construction holding—and, in particular, its underlying reasoning—to caution the parties against treating the Court's rejection of Plaintiffs' suggested claim constructions (and corresponding adoption of Defendants' position that no verbal constructions be issued) as an absolute and unalterable resolution on the scope and construction of Defendants' design patents. The Court did not adopt Plaintiffs' suggested verbal constructions, but it also did not hold that the '788 patent claim had been constructed once and for all. In discussing Plaintiffs' request for summary judgment on indefiniteness,

18

the parties spend much of their briefing arguing whether the Court would be "reopening" or "redoing" claim construction by considering Plaintiffs' indefiniteness argument. (*See* Docs. 222 at 8–9 & 227 at 8). To this, the Court simply notes that claim construction is an ongoing process that can be revisited if necessary. *See Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves. . . . This is particularly true where issues involved are complex . . . because the meaning of the claims is unclear from the intrinsic evidence."); *see also Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381–82 (Fed. Cir. 2003) (holding that district court did not err in amending claim construction during oral arguments for pretrial motions nearly two years after original construction).

The Court now turns to Plaintiffs' indefiniteness argument. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). A patent is always presumed to be valid and "the burden of proving invalidity [is] on [Plaintiffs]." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984); *see also* 35 U.S.C. § 282(a). "That burden is constant and never changes and is to convince the court of invalidity by clear evidence." *Id.*; *see also Sci. Applications Int'l Corp. v. United States*, 154 Fed. Cl. 594, 613 (2021) ("[I]ndefiniteness must be proven by clear and convincing evidence."). Although the ultimate question of definiteness is one of law, it often involves underlying questions of fact. *See Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010) ("Definiteness . . . [is a] question[] of law with underlying factual determinations."); *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1371 (Fed. Cir. 2003) ("[D]efiniteness . . . is amenable to resolution by the jury where the issues are factual in nature.").

"As a threshold matter, 'it is well-settled that, in interpreting an asserted claim, the

court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history' because 'intrinsic evidence is the most significant source of the legally operative meaning of the disputed claim language.'" *Sci. Applications & Rsch. Assocs. Inc. v. Zipline Int'l, Inc.*, No. 22-CV-04480-JSC, 2023 WL 4551067, at *3 (N.D. Cal. July 14, 2023) (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.")). "In most cases, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term, and *in such cases, it is inappropriate to rely on extrinsic evidence*." *Id.* (emphasis added). "Moreover, where intrinsic evidence resolves ambiguity, it is improper for extrinsic evidence, such as expert testimony, to introduce ambiguity." *Id.*

    The Court finds that Plaintiffs have failed to show clear and convincing evidence sufficient to prove indefiniteness at this summary judgment stage. Plaintiffs' indefiniteness argument relies exclusively on one specific type of extrinsic evidence: the deposition testimony of the '788 patent's inventors and drafting attorney. (*See* Doc. 213 at 8–11). Specifically, Plaintiffs argue that these three individuals could not identify the meaning of the terms "enlarged" and "overgarment" when asked during their depositions. (*Id.*). However, the law is clear that, generally, "[i]t is particularly inappropriate to consider inventor testimony obtained in the context of litigation in assessing validity under section 112, paragraph 2, in view of the absence of probative value of such testimony." *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000). *Solomon* explained this stance toward inventor testimony by relying on the Federal Circuit's holding in *Markman*:

> In *Markman*, we addressed the closely related issue of litigation-driven inventor testimony in the context of claim construction, and concluded that such testimony is entitled to little, if any, probative value. . . . We reasoned that an inventor is not competent to construe patent claims. . . . We find this analysis equally compelling in the present context, as the determination of whether a claim complies with section 112, paragraph 2, is "drawn from the court's performance of its duty

20

as the construer of patent claims." . . . Although we recognize that "which the applicant regards as his invention" is subjective language, . . . once the patent issues, the claims and written descriptions must be viewed objectively, from the standpoint of a person of skill in the art.

*Id.* at 1379–80 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995)) (other internal citations omitted). The *Solomon* court concluded that the district court had erred by using inventor testimony to invalidate the claims of a patent under § 112. *Id.* at 1380; *see also EcoServices, LLC v. Certified Aviation Servs., LLC*, 312 F. Supp. 3d 830, 843 (C.D. Cal. 2018) (quoting *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir. 1996)) (finding defendant "failed to prove indefiniteness by clear and convincing evidence" after rejecting inventor testimony, noting "*Markman* requires us to give no deference to the testimony of the inventor about the meaning of the claims").

Plaintiffs contest this line of caselaw with two arguments, neither of which are persuasive. First, Plaintiffs argue that "the substantive caselaw relied on by Cozy all pre-dates *Nautilus*[8] when courts were obligated to apply the now rejected 'insolubly ambiguous' and 'not amenable to construction' standards when addressing indefiniteness." (Doc. 227 at 9). Although it is true that *Solomon* was decided over twenty-three years ago—well before *Nautilus*—Plaintiffs do not meaningfully explain how *Nautilus*' rejection of the "insolubly ambiguous" and "not amenable to construction" standards changed how courts should view inventor testimony. Moreover, Plaintiffs do not cite to any case in which *Solomon*'s rule with respect to inventor testimony was actually overruled or even disfavored. Rather, courts have continued to use the relevant principles set forth in *Solomon* in the years since *Nautilus* was decided. As just one example, in *Leupold*—a 2020 decision—the District of Oregon rejected similar inventor testimony and relied on *Solomon* to do so. *Leupold & Stevens, Inc. v. Lightforce USA, Inc.*, 434 F. Supp. 3d 886, 898–99 (D. Or. 2020). In that case (a case expressly relied upon by Defendants), the defendant contested the plaintiff's motion for summary judgment on the indefiniteness issue by

---

[8] *Nautilus* was decided in 2014. *See Nautilus*, 572 U.S. at 898.

referring to the patent inventor's deposition admissions "that he [did] not know how [the two disputed terms] differ[ed]" and that he "[did] not know what [another disputed term] means as used in the claims." *Id.* at 899. "Without further argument or evidence, [the defendant] argue[d] that this admission alone evinces a 'lack of clarity' in the meaning of the terms." *Id.* The *Leupold* court rejected the defendant's argument, noting "the Federal Circuit's admonition against inventor testimony in this context," finding that the defendant's "reliance on the inventor's deposition testimony alone is not sufficient to [meet its burden on summary judgment]," and holding that "without any further argument or evidence from [the defendant] as to why [the disputed claims] may be indefinite, [the plaintiff]'s motion for summary judgment on the issue is granted." *Id.*; *see also Cayenne Med., Inc. v. Medshape, Inc.*, No. 2:14-cv-0451-HRH, 2016 WL 2606983, at *4 (D. Ariz. May 6, 2016) (post-*Nautilus* case relying in part on *Solomon*'s general caution against inventor testimony).

Second, Plaintiffs attempt to distinguish *Solomon* by arguing that, unlike this case— where the issue is whether the claims provide a person of ordinary skill reasonable certainty as to their scope—"the problem addressed [in *Solomon*] was a district court's holding claims invalid due to a conflict between the claim language and inventor testimony as to the *intent* of the inventor and what the inventor *believed* it invented." (Doc. 227 at 9 (emphasis in original)). To be sure, although the law is clear that "[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim," *Markman*, 52 F.3d at 985, the Federal Circuit has indeed recognized that an inventor's testimony *may* be "pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347, n.5 (Fed. Cir. 2008). However, the Court has fully reviewed the relevant deposition testimony in this case and cannot conclude that the inventors were actually testifying in this capacity or to this specific issue. Rather than being asked whether the terms "enlarged" and "overgarment," when "read in light of the specification . . . and the prosecution history, fail

22

to inform . . . those skilled in the art about the scope of the invention," the inventors were plainly asked for their understanding of the meaning of the terms. The Court has no idea whether they were speaking from their own subjective perspective as to their intent in using the terms, or if they were speaking from their expertise as "one skilled in the art" who was "viewing the design as would an ordinary observer." *See In re Maatita*, 900 F.3d 1369, 1377 (Fed. Cir. 2018); *see also EcoServices*, 312 F. Supp. 3d at 843 ("While [the inventor] could provide testimony as to what a person skilled in the art may understand [the disputed term] to mean, Defendant does not provide such testimony. Therefore, what little new testimony Defendant offers does not change the fact that Defendant has failed to prove indefiniteness by clear and convincing evidence.").

Even if the testimony in this case is viewed as expert testimony probatively speaking to the inventors' understanding of the established meaning of the terms "enlarged" and "overgarment" in the relevant art, the Court is not persuaded that the '788 patent can be found indefinite *solely* on the basis of such extrinsic testimony. Again, Plaintiffs do not rely on any other evidence to support their indefiniteness argument; in particular, Plaintiffs do not provide any meaningful discussion of intrinsic evidence, despite the importance of such evidence in the indefiniteness analysis. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed.Cir.2004) (quotations and citation omitted) (noting that extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language"). This, coupled with the other factual disputes remaining related to the scope of the '788 patent (functionality and prosecution history), leads the Court to find that summary judgment in Plaintiffs' favor is not appropriate at this time. Plaintiffs' request for summary judgment on their indefiniteness claim as to the '788 patent (Claim 2) is denied. Additionally, the Court denies Plaintiffs' request for summary judgment as to their noninfringement claim (Claim 1) and as to Defendants' corresponding infringement claim (Counterclaim 1), as Plaintiffs' argument on these claims was premised on this Court first finding the '788 patent to be invalid. (*See* Doc. 213 at 12).

///

### 3. *False Marking and Unfair Competition Claims*

Plaintiffs assert a false marking claim (Claim 13) against Defendants. (Doc. 122 at 34–49). Both parties now seek summary judgment on the claim. The false marking statute, 35 U.S.C. § 292(a), prohibits the use in advertising of any words or combination of words implying that the article being sold is patented when it is not. A false marking claim has two elements: "(1) marking an unpatented article and (2) intent to deceive the public." *Forest Grp., Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009). To have standing to bring an action for a violation of § 292(a), one must have suffered a "competitive injury" as a result of the violation. § 292(b); *see also Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1402 (Fed. Cir. 2015) ("[Section] 292 limits standing to entities that have 'suffered a competitive injury as a result of a violation of [§] 292(a).").

Plaintiffs request partial summary judgment as to the first element only—that is, Plaintiffs seek a ruling as a matter of law that Defendants falsely marked certain products with patent numbers. (Doc. 213 at 12–14). Conversely, Defendants argue that the entire false marking claim should be dismissed because Plaintiffs (1) admitted they do not compete with Defendants and therefore lack standing; (2) lack any evidence that they suffered any harm due to any alleged false marking; and (3) lack any evidence as to the second element, *i.e.*, intent to deceive the public. (Doc. 216 at 11–14).

The Court agrees with Defendants' first and second points. First, Plaintiffs entirely fail to respond to Defendants' argument that Mr. Ngan and Mr. Nick Lin—two representatives who testified on behalf of the Plaintiff companies—testified during their depositions that Plaintiffs' products did not compete with Defendants. (*See* Doc. 234 at 7–10). Such failure to respond may be deemed a concession on the issue. *See Garcia v. Salt River Project Agric. Improvement & Power Dist.*, 618 F. Supp. 2d 1092, 1099 (D. Ariz. 2007) (citing LRCiv. 7.2(i)) ("Generally, a party's failure to respond to arguments in a motion 'may be deemed consent to the denial or granting of the motion and the Court may dispose of the motion summarily.'"); *see also Gravelle v. Kaba Ilco Corp.*, 684 Fed. Appx. 974, 978 (Fed. Cir. 2017) (quotation marks and citation omitted) (noting that "competitive

injury" has been defined as "a wrongful economic loss caused *by a commercial rival*").

Even assuming that Plaintiffs were competitors with Defendants in the relevant market, however, the Court additionally finds that Plaintiffs have failed to demonstrate that they suffered a competitive injury *caused by Defendants' alleged false marking*. A "competitive injury" has been defined as "a wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Gravelle*, 684 Fed. Appx. at 978 (quoting *Sukumar*, 785 F.3d at 1400). "In the false marking context, the injury must be one inflicted on a firm's competitive activity, *caused by the false marking*." *Id.* (citations omitted) (emphasis added).

Here, the false marking alleged by Plaintiffs occurred when Defendants advertised on their website that their various Cozy products were protected by the '431, '788, '416, '237, '380, and other pending patents. (*See* Docs. 122 at 34–49 & 213 at 12–13). Plaintiffs allege that this representation was false. (*Id.*). In responding to Defendants' argument that they lacked evidence demonstrating that they suffered any harm or injury due to the alleged false marking, Plaintiffs argue that they "lost sales from the inability to sell during the takedown periods" and that they "incurred legal expenses in addressing wrongful takedowns, which takedowns were supported by Cozy's false assertions that its products were covered by certain patents." (Doc. 234 at 7–8). The problem with these assertions of competitive injury, however, is that such lost sales and legal expenses were caused by Defendants' allegedly wrongful use of its patents to "takedown" Plaintiffs' products from online retailers like Amazon, *not* by Defendants' alleged false markings. Indeed, Plaintiffs make no attempt to show or argue that the lost sales and legal expenses were caused *by the alleged false markings on Defendants' website*. The harms relied upon by Plaintiffs—lost sales and legal expenses—are adequately addressed by Plaintiffs' claim for tortious interference with business expectations (Claim 16), which alleges that Defendants made false claims of patent infringement to online retailers (*e.g.*, Amazon) and induced them to terminate their business relationship with Plaintiffs and to take down Plaintiffs' products

from their websites. (*See* Doc. 122 at 54). Given the absence of a material factual dispute regarding how Plaintiffs were directly injured from the allegedly false representations Defendants made on their website, the Court concludes that summary judgment in Defendants' favor is appropriate on Plaintiffs' false marking claim. Claim 13 is dismissed. Given this dismissal, the Court also denies Plaintiffs' corresponding request for partial summary judgment on the false marking claim. (*See* Doc. 213 at 12–13).

Additionally, Defendants request summary judgment as to Claim 14 (Unfair Competition Under 815 ILCS 510/2). (*See* Doc. 216 at 11 (requesting summary judgment on Claim 14 for "Unfair Competition Premised on False Marking")). Defendants fail to meaningfully explain why Claim 14 should be dismissed or why dismissal of Plaintiffs' false marking claim necessitates dismissal of Claim 14 as well.

Pursuant to 815 ILCS 510/2, Illinois law prohibits deceptive trade practices, which occur when a person, among other things, "disparages the goods, services, or business of another by false or misleading representation of fact." 815 Ill. Comp. Stat. Ann. 510/2(a)(8). Here, Plaintiffs' Claim 14 is partially premised on Plaintiffs' allegations of false marking. (*See* Doc. 122 at 50)). However, as Plaintiffs point out in their Response, (*see* Doc. 234 at 10), Claim 14 is *also* based on another, separate theory—that Defendants "falsely represented to Amazon that Plaintiffs' products infringed" their patents, causing Plaintiffs to be damaged insofar as Plaintiffs were prevented from selling their products on Amazon's website. (Doc. 122 at 49–50). Defendants offer no explanation as to why Claim 14 should be dismissed merely because Plaintiffs' false marking theory was rejected and dismissed. Defendants do not even mention Claim 14 in their Reply. (*See generally* Doc. 228). The Court denies Defendants' request for summary judgment on Claim 14.

### 4. *Tortious Interference Claims*

Plaintiffs assert two separate tortious interference claims: tortious interference with a contract (Claim 15) and tortious interference with a prospective economic advantage/business expectancy (Claim 16). (Doc. 122 at 51–56). Both are premised on the same theory—that Defendants made false claims of patent infringement to third parties

such as Amazon, causing the third parties to prevent Plaintiffs from selling their products on their retail websites and thereby interfering with Plaintiffs' contracts and business expectancies. (*Id.*). Defendants request summary judgment in their favor on both claims.

"To succeed on a claim of tortious interference with contract, a plaintiff must prove: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferer; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly." *Tortolita Veterinary Servs., PC v. Rodden*, 252 Ariz. 96, 104 (Ct. App. 2021) (quotation marks and citation omitted). Defendants argue that Plaintiffs' claim for tortious interference with a contract must be dismissed because, among other reasons, Plaintiffs "have presented no contract between the Plaintiffs and Amazon." (Doc. 216 at 15). The Court agrees. The *only* evidence offered by Plaintiffs supporting the existence of a contract is their reference to their own Exhibit PP, which contains the "Amazon Seller Agreements." (*See* Doc. 235-4 at 266–306). Such evidence fails to meaningfully demonstrate that Plaintiffs had a contract with Amazon that could serve as the basis for their claim. First, as Defendants point out, the Amazon Seller Agreements cited by Plaintiffs appear to be nothing more than "generic sample terms located on the Amazon website" that fail to "evidence a contract between any individual Plaintiff and Amazon." (Doc. 228 at 9). Second, even if the Amazon Seller Agreements somehow demonstrated Plaintiffs' contractual agreements with Amazon, this Court has already expressly precluded the Amazon Seller Agreements from consideration as evidence in this action. (*See* Doc. 259 at 9–10). Therefore, given the absence of any evidence of a contract, the Court grants summary judgment to Defendants on Plaintiffs' claim for tortious interference with a contract (Claim 15).

To succeed on a claim for tortious interference with a business expectancy— sometimes referred to as interference with a "business relationship" or a "prospective economic advantage"—a plaintiff must prove the following elements: "(1) [t]he existence of [a] valid contractual relationship or business expectancy; (2) knowledge of the

relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Antwerp Diamond Exch. of Am., Inc. v. Better Business Bureau of Maricopa Cnty., Inc.*, 130 Ariz. 523, 529–30 (1981) (citations omitted). Defendants argue that dismissal of this claim is appropriate because, among other reasons, Federal Circuit law protects her from having her own good-faith assertion of patent infringement used against her in a state-law tort action. (Doc. 216 at 16–18).

Defendants are correct that "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cit. 2004) (citation omitted). The key here is good faith, for Plaintiffs can "survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement." *Id.* The Court finds that a factual dispute exists as to whether Defendants' infringement claims were made to Amazon in good faith, precluding summary judgment on this claim. *At the least*, the record indicates that Defendants objectively knew that Plaintiffs' products did not infringe the '431 patent and that "no cease-and-desist communications were supposed to be sent out [to Amazon] identifying the '431 patent" as a basis for infringement. (Doc. 216 at 18, n.7); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("[B]ad faith is not supported when the information is objectively accurate."). Regardless of how it happened, such communications *were* sent to Amazon and some of Plaintiffs' products were taken down based on their alleged infringement of the '431 patent. Although Defendants contend that this was merely an accident and not suggestive of bad faith, Plaintiffs offer evidence—deposition testimony from the individual Defendants Michael and Brian Speciale and emails relating to Defendants' takedown efforts—showing that Defendants failed to take action to correct the mistake even after learning that Amazon had improperly taken down products based on the '431 patent. (*See* Doc. 235 at 26–27, 35).

Even assuming that Defendants' takedown efforts based on the '788 patent were made in good faith, this factual dispute regarding the '431 patent is sufficient to preclude summary judgment on the tortious interference with a business expectancy claim.[9] The Court denies Defendants' request for summary judgment on Plaintiffs' claim for tortious interference with a business expectancy/prospective economic advantage (Claim 16).

### 5. *Trademark Cancellation Claims*

In Claims 19 and 20, Plaintiffs seek to cancel two trademark registrations owned by Defendants: Registration No. 5,608,347 for THE COMFY ("the '347 trademark") and Registration No. 5,712,456 for THE COMFY ("the '456 trademark"). (Doc. 122 at 58–61). The '347 trademark "is directed and limited to goods in Class 24 for blanket throws, namely whole body blankets." (*Id.* at 58). The '456 trademark "is directed to Class 35 for On-line retail store services featuring blanket throws, namely, whole body blankets." (*Id.* at 60). Plaintiffs' Response brief indicates that Plaintiffs have at least two theories underlying their claims for cancellation of Defendants' trademarks.[10] (Doc. 234 at 13–18). First, Plaintiffs argue for cancellation based on fraud. (*Id.* at 13–17). Specifically, Plaintiffs contend that, although the trademark applications listed "blanket throws, namely whole body blankets" as the applied-for goods, the product actually sold by Defendants—according to Defendants' own admissions and other evidence such as their patent application—is a *garment* rather than a blanket. (*Id.*). Thus, Plaintiffs argue that Defendants made a false representation of fact in their applications and that Defendants have never sold the goods set forth in the applications. (*Id.*). Second, Plaintiffs argue that Defendants' trademark

---

[9] Although they do not return to the argument in their Reply, Defendants appear to also argue that Plaintiffs failed to demonstrate evidence supporting the first element—that is, evidence that Plaintiffs had a valid business expectancy. (*See* Doc. 216 at 15–18). The Court does not agree. It is undisputed that Plaintiffs were selling their products on Amazon. Plaintiffs' continued business with Amazon, on its own, constitutes a "valid business expectancy" to support Plaintiffs' claim.

[10] Defendants note that Plaintiffs' Complaint appears to *also* allege cancellation based on "genericness" and "abandonment," but that "Plaintiffs have not produced or identified any information supporting these arguments." (Doc. 216 at 18–19, n.8).

"THE COMFY" is "merely descriptive" of the articles involved and as such invalid. (*Id.* at 17–18); *see also Bada Co. v. Montgomery Ward & Co.*, 426 F.2d 8, 11 (9th Cir. 1970) ("The law is that a word which is in its primary meaning merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller.").

As to the fraud theory, "[a] party who believes he has been harmed by a trademark's registration may seek the cancellation of that trademark's registration on certain specified grounds, including that the trademark was obtained by the commission of fraud on the United States Patent and Trade Office ("USPTO")." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013); *see also* 15 U.S.C. § 1064 ("A petition to cancel a registration of a mark . . . may . . . be filed . . . [a]t any time if the registered mark . . . was obtained fraudulently or contrary to the provisions of section 1054 of this title or of subsection (a), (b), or (c) of section 1052 of this title."). "Fraud in procuring a trademark occurs only when an applicant knowingly makes false, material representations of fact in connection with [the] application." *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 615 F. Supp. 3d 982, 1028 (D. Ariz. 2022) (quotation marks and citation omitted). "To prevail on a claim for cancellation based on fraud, therefore, a claimant must have evidence of '(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance.'" *Id.* (quoting *Hokto*, 738 F.3d at 1097).

In seeking summary judgment, Defendants argue that Plaintiffs cannot demonstrate evidence to support the first element—that is, that Defendants made a false representation regarding a material fact in connection with the trademark applications. (Doc. 216 at 18–19). Specifically, Defendants argue that "whole body blankets" *are* Cozy's primary product and that Plaintiffs' contention that the product is not a blanket but rather a "garment" is merely a "litigation-driven argument" that "is not a basis to cancel Defendants' trademark registrations when both the USPTO and Defendants consider 'whole body blanket' to be

an accurate description of the Comfy products being sold." (*Id.* at 19). In support of this, Defendants cite to a single excerpt from Defendant Michael Speciale's (Cozy's owner) deposition testimony:

> Q: Do you have any idea what a whole-body blanket is?
>
> [Speciale]: I define it as a wearable blanket.
>
> Q: What's a wearable blanket?
>
> A: The Comfy.

(*Id.*). Based on this, Defendants ask the Court to dismiss Plaintiffs' trademark cancellation claims with prejudice. (*Id.*).

Given that Defendants' Motion only raises issue with the first element of a cancellation-based-on-fraud claim, Plaintiffs need only demonstrate that a material factual dispute exists as to that first element in order to preclude summary judgment. The Court finds that Plaintiffs have done so. Their Response cites to testimony from Defendants Michael and Brian Speciale indicating that they did not know what a "whole body blanket" was. (Doc. 234 at 13–14). This testimony, arguably on its own, creates a factual dispute because it contradicts the testimony relied upon by Defendants. Plaintiffs also point to a patent application filed by Michael and Brian Speciale prior to their trademark application. (*Id.*). In the patent application, they defined the product as an "overgarment." (*Id.*). Similarly, Plaintiffs allege that just a few months before the '347 trademark application, Defendants described its product in an email by stating "[w]hereas the Snuggie is a wearable blanket, the Cozy is an actual garment." (*Id.* at 16 (citing Doc. 235-4 at 3)). The Court finds that Plaintiffs have satisfied their burden of demonstrating a material factual dispute with respect to the first factor by pointing to instances in which Defendants have referred to the product as a garment or otherwise denied that it is a "whole body blanket."

In the Reply, Defendants respond by first listing the five elements of a cancellation-based-on-fraud claim. (Doc. 228 at 10). Defendants then argue that:

> Here, after two years of litigation there is ZERO evidence of

31

1

2

3

4

> fraud. ZERO evidence that calling THE COMFY a "whole body blanket" is false. ZERO evidence that Defendants called THE COMFY a "whole body blanket" with knowledge it was false. And ZERO evidence that the trademark office relied on Defendants' calling THE COMFY a "wearable blanket" to their damage.

5

6

7

8

9

10

11

12

13

14

15

16

(*Id.* at 11). Not only is this a series of conclusory assertions insufficient to satisfy Defendants' burden at summary judgment, but they also relate to elements that Defendants did not challenge in their short, two-paragraph argument in their original Motion. (*See* Doc. 216 at 18–19). For example, Defendants contention that there is "ZERO evidence that Defendants called THE COMFY a 'whole body blanket' with knowledge it was false" relates to the second element. Likewise, Defendants contention that there is "ZERO evidence that the trademark office relied on Defendants' calling THE COMFY a 'wearable blanket' to their damage" relates to the fourth and fifth elements. Even if such assertions were supported by evidence, the Court could not consider them. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("We agree . . . that 'where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond.'").

17

18

19

20

21

22

23

24

25

Although the parties provide arguments relating to Plaintiffs' apparent "descriptiveness" theory, (*see* Docs. 234 at 17–18 & 228 at 11–12), the Court will not address them. Defendants did not seek summary judgment on this alternate theory, in part because they assert Plaintiffs failed to mention the theory as a basis for their claims in the parties' pre-summary judgment conferral, (*see* Doc. 216 at 18), *and* because, according to Defendants, Plaintiffs "have not produced or identified any information supporting [the descriptiveness] argument[]" and "did not conduct any study, draft any report, or hire any expert to do so." (*Id.* at 18–19, n.8). In sum, the Court denies Defendants' request for summary judgment on Plaintiffs' trademark cancellation claims (Claims 19 and 20).

26

### 6. *Concessions by Parties*

27

28

Plaintiffs asserted a claim (Claim 17) seeking a declaratory judgment of non-infringement as to the '431 patent, a utility patent owned by Defendants. (Doc. 122 at 56–

57). In their Response to Plaintiffs' Motion, Defendants indicate that they do not allege infringement by Plaintiffs of the '431 patent and that summary judgment of non-infringement is appropriate. (Doc. 222 at 7). Therefore, the Court grants summary judgment to Plaintiffs on Claim 17.

Defendants asserted a counterclaim (Counterclaim 5) seeking a declaratory judgment that their products do not infringe Plaintiffs' U.S. Design Patent No. D728,900 (the '900 patent). (Doc. 128 at 76). In their Motion, Plaintiffs "stipulate that none of the products Defendants raise in their Counterclaim infringe the '900 patent." (Doc. 213 at 3, n.2). Therefore, the Court grants summary judgment to Defendants on Counterclaim 5.

## IV.   **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Docs. 202 & 213) is **granted in part and denied in part** as to Plaintiffs' various requests for summary judgment. Specifically, the Court rules as follows:

1. Summary judgment is **entered in Plaintiffs' favor** on Claims 4 and 10 (non-infringement of the '380 and '237 patents). Summary judgment is also **entered in Plaintiffs' favor** on Counterclaims 2 and 9 (infringement of the '380 and '237 patents). Counterclaims 2 and 9 are **dismissed**.

2. Summary judgment is **entered in Plaintiffs' favor** on Claims 5 and 11 (invalidity of the '380 and '237 patents).

3. Plaintiffs' request for summary judgment on Claims 1 and 2 (invalidity and non-infringement of the '788 patent) is **denied**. Plaintiffs' request for summary judgment denying Defendants' Counterclaim 1 (infringement of the '788 patent) is **denied**.

4. Plaintiffs' request for partial summary judgment on Claim 13 (false marking) is **denied**.

///

///

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 216) is **granted in part and denied in part** as to Defendants' various requests for summary judgment. Specifically, the Court rules as follows:

1. Defendants' request for summary judgment on the issue of John Ngan's potential alter-ego liability is **denied**.

2. Summary judgment is: **granted** in favor of individual Defendants Brian Speciale and Michael Speciale as to **Claims 1–12 and 17–20**; **denied as moot** with respect to the individual Defendants Brian Speciale and Michael Speciale on **Claims 13 and 15**; and **denied** with respect to the individual Defendants Brian Speciale and Michael Speciale on **Claims 14 and 16**. Defendants' request that Brian Speciale and Michael Speciale be dismissed from this action entirely is **denied**.

3. Summary judgment is **entered in Defendants' favor** on Claim 13 (false marking). Claim 13 is **dismissed**.

4. Defendants' request for summary judgment on Claim 14 (unfair competition) is **denied**.

5. Summary judgment is **entered in Defendants' favor** on Claim 15 (tortious interference with a contract). Claim 15 is **dismissed.**

6. Defendants' request for summary judgment on Claim 16 (tortious interference with a business expectancy/prospective economic advantage) is **denied**.

7. Defendants' request for summary judgment on Claims 19 and 20 (cancellation of trademarks '347 and '456) is **denied**.

**IT IS FURTHER ORDERED** that the parties' concessions and stipulations with respect to Claim 17 (non-infringement of the '431 utility patent) and Counterclaim 5 (non-infringement of the '900 patent) are **granted**. Summary judgment in Plaintiffs' favor on Claim 17 is **granted**. Summary judgment in Defendants' favor on Counterclaim 5 is **granted.** Claim 17 and Counterclaim 5 are **dismissed**.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FURTHER ORDERED** that **all other Claims or Counterclaims** not addressed in this Order—or in a previous Order from this Court—**remain**.

Dated this 24th day of August, 2023.

Honorable Steven P. Logan
United States District Judge