**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| Top Brand LLC, et al., ) | |
| ) | No.  2:21-cv-00597-SPL |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Phoenix, Arizona |
| ) | April 9, 2024 |
| Cozy Comfort Company, LLC, ) | 8:52 a.m. |
| et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**BEFORE:  THE HONORABLE STEVEN P. LOGAN, JUDGE**

**<u>REPORTER'S EXCERPTED TRANSCRIPT OF PROCEEDINGS</u>**

**<u>JURY TRIAL DAY 1 - A.M. SESSION</u>**

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiffs:

    OSBORN MALEDON, PA
    By:  **Mr. Phillip W. Londen, Esq.**
    P.O. Box 36379
    Phoenix, AZ 85067-6379

    ARONBERG GOLDGEHN DAVIS & GARMISA
    By:  **Matthew L. De Preter, Esq.**
         **Mr. Christopher Niro, Esq.**
    **225 W. Washington Street, Suite 2800**
    **Chicago, IL 60606**

For the Defendants:

    MESSNER REEVES, LLP
    By:  **Mr. Gregory P. Sitrick, Esq.**
         **Mr. Isaac S. Crum, Esq.**
         **Mr. Sharif Ahmed, Esq.**
    7250 N. 16th St., Ste. 410
    Phoenix, AZ 85020

P R O C E E D I N G S

(Excerpt.)

COURTROOM DEPUTY:  We're on the record in CV 21-597, Top Brand, LLC versus Cozy Comfort, LLC, before the Court for a trial, Day 1.

Counsel, please state your appearances.

MR. NIRO:  Good morning, Your Honor.  William Niro on behalf of the plaintiffs.

THE COURT:  Good morning, counsel.

MR. DE PRETER:  Good morning, Your Honor.  Matthew De Preter on behalf of plaintiffs.

THE COURT:  Good morning, counsel.

MR. LONDEN:  Good morning, Your Honor.  Phillip Londen on behalf of plaintiffs.

THE COURT:  Good morning.

MR. SITRICK:  Good morning, Your Honor.  Craig Sitrick on behalf of defendants Cozy Comfort Company.  And I have the principals, Mr. Brian Speciale and Mr. Michael Speciale, with us here today.

THE COURT:  Good morning to all of you.

MR. CRUM:  Good morning, Your Honor.  Isaac Crum on behalf of the defendants.

THE COURT:  Good morning.

MR. AHMED:  And good morning, Your Honor.  Sharif Ahmed on behalf of the defendants.

THE COURT:  Good morning to you as well.

I just want to make sure you all know that we need to make sure that we have a clean record.  So since we have seven lawyers involved in this case, when you're speaking on the record or you're examining one of the witnesses, for example, make sure you tell me who you are, obviously, I know who you are, but the record does not, that way if the Ninth Circuit needs to look at this, they'll know who is talking and when they're talking.

The reason I wanted to bring you all in early is to just talk about a few housekeeping matters.  I want to make sure that you all are looking at your notes so we don't have a mistrial in this case.

The first motion in limine was Plaintiffs' Motion in Limine to Exclude Opinions By James Crumley on Plaintiffs' Infringement.  That was Document Number 268.  That was denied.

Plaintiffs' second -- Plaintiffs' Motion to -- Motion in Limine to Exclude Testimony of Mark Keegan on Likelihood of Confusion, which was Document 269, that was denied.

Third, Plaintiffs' Motion in Limine to Exclude Testimony of Robert N. Frank, Jr., on Secondary Meaning of Defendants' Trade Dress, which is Document Number 270, that was denied.

Fourth, Plaintiffs' Motion in Limine to Exclude Testimony on Advice of Counsel, which is Document Number 271,

that was denied.

Fifth, Plaintiffs' Motion in Limine to Exclude Lay Witness Testimony By Defendants on Plaintiffs' Alleged Infringement, which was Document Number 272, was denied.

Sixth, Plaintiffs' Motion in Limine to Exclude Bryce Cook's Untimely Supplemental Expert Report on Damages, which is Document Number 273, was denied.

Seventh, Plaintiffs' Motion in Limine to Exclude Lay Witness Testimony on Defendants' Alleged Trade Dress and Trademarks, which is Document Number 274, that was denied.

Eighth, Plaintiffs' Motion in Limine to Exclude Lay Witness Testimony That Any of the Defendants' Products Are Actually Patented, which was Document Number 275, that was denied.

Ninth, Plaintiffs' Motion in Limine to Exclude Testimony Based on James Crumley's November the 14th, 2022 Report, which is Document Number 276, is denied.

Tenth, Defendants' Motion in Limine to Exclude the Testimony and Reports of Plaintiffs' Expert Witness Melissa Gamble Relating to the Infringement and Validity of the Patents-in-Suit, which is Document Number 282, that was denied.

Eleventh, Defendants' Motion in Limine to Exclude the Testimony and Reports of Plaintiffs' Expert Witness Richard Stockton, Document 283, that was granted in part and denied in part.

I'm sure the parties remember I found that Richard Stockton is sufficiently qualified to testify as an expert about the U.S. Patent and Trademark Office application procedures or prosecution activities.  Richard Stockton may testify about these issues given his expertise as a patent attorney.  However, Richard Stockton is not qualified in the ordinary skill in the relevant art to testify as an expert under Federal Rule of Evidence 702 for patent infringement analysis concerning this case.  Richard Stockton has no experience in garment design or manufacturing, thus he may not testify about issues of patent infringement related to this case.

Number 14 was Defendants' Motion in Limine to Preclude Ms. Gamble From Testifying on Any Issue Related to Conducting and Critiquing Surveys.  That was Document Number 286 and that was denied.

Number 15 was Defendants' Motion in Limine to Preclude and Disqualify Ms. Gamble for Refusing to Answer Questions, which was Document Number 287, and that was also denied as moot.

Number 16 was Defendants' Motion in Limine to Exclude Documents and Any Testimony Relating to Cozy's Online Takedown Submissions and Correspondence Relating Thereto.  That was Document Number 288.  That was granted in part and denied in part.

I'm sure the parties remember I found that the evidence is relevant for the purposes countering defendants' claim of trade dress.  Exclusivity is one factor when evaluating secondary meaning within trade dress.

Again, I went through Vision Sports, Incorporated, which is 888 F.2d at 615.  By showing that other similar products were on the market, and that defendants took steps to remove them from the market due to a patent dispute, plaintiffs make it more likely that defendants' products were not exclusive.  However, the evidence is not relevant to support plaintiffs' affirmative claims.  Defendants' alleged conduct towards third parties does not make it more or less likely that they engaged in unfair competition, tortious interference, or infringement towards plaintiffs.

Accordingly, the plaintiffs may introduce evidence of defendants' takedown submissions but only for the purpose of rebutting claims of exclusivity.

Number 17, Defendants' Motion in Limine to Preclude Ms. Gamble From Testifying on Any Issue Related to Trade Dress, which was Document Number 289, was denied.

Defendants' Motion in Limine to Exclude the Testimony and Opinions of Plaintiffs' Proposed Witness Daniel Cislo, that's C-I-S-L-O, Document Number 290, is denied.

Number 19, Defendants' Request At the Final Pretrial Conference to Present Their Case First was denied.

Number 20, Defendants' Motion for Reconsideration of Documents Number 283 and 290, which was document number filed 320, was denied.

Number 21, Plaintiffs' Motion for Leave to Present Trial Testimony of Ashley Tillinghast, that's T-I-L-L-I-N-G-H-A-S-T, Via Video Deposition, that was Document Number 328, that was denied.

Number 22, Plaintiffs' Motion for Leave to Allow Alternative Service of Trial Subpoenas on Thomas Galvini, that's G-A-L-V-I-N-I, which is Document Number 332, was granted.

We have two outstanding issues.  We have Number 23, which is the third-party Victoria's Secret motion to seal, and that's Document Number 336, and the supplement, which is Document Number 337.  I did not rule on that yet because I find that it's premature.

However, if the parties have already met and conferred about this issue and there is a stipulation as it relates to redaction, let me know.  And if you have a document that you have entered into by way of stipulation with the redactions, I'll allow it into evidence, but you all need to meet and confer and let me know what you would like to do.  But, as of now, it's premature.

And, last, Number 24 is the Third-Party Davie, D-A-V-I-E, Clothing Party's Limited Motion to Seal, which is

Document Number 340, and this Court has not ruled on that either because I find that it's premature.

Again, if the parties meet and confer and you would like to stipulate as to the redacted copy, I'll certainly entertain all of that.

Okay.  Next what I would like to do is go --

I'm sorry.  Go ahead.

MR. SITRICK:  Your Honor, may I address the --

THE COURT:  Who are you?

MR. SITRICK:  This is Greg Sitrick for the defendants.  I'm sorry about that, Your Honor.

THE COURT:  That's all right.

MR. SITRICK:  May I address the Cislo ruling, because although it was denied, you had some caveats about reading a limiting instruction, and that he wasn't qualified as an expert in your order to make an end run around on providing infringement analysis.

THE COURT:  Which limiting instruction are you referring to?

MR. SITRICK:  If I can, I'll read from the Court's bench order.

THE COURT:  I appreciate it.  Thank you.

MR. SITRICK:  Says, Daniel Cislo will be permitted to testify --

THE COURT:  Let me stop you right there.

Everyone here, and I do the same thing, when I read something and I'm all -- I do it all the time -- when you read, you tend to read really fast.  I take a lot of notes, so I need every person that's speaking in the courtroom -- and make sure you tell all of your witnesses as well -- speak directly into the microphone, and take into consideration there is a fair amount of people in here that are probably writing things down.

Sir, go ahead again, please.

MR. SITRICK:  Yes, Your Honor.

In your order at Docket 320 at 3 -- at lines 21 to 23, you made it clear that if Mr. Cislo attempted to testify to matters outside of what had been disclosed to defendants, then the Court would allow a sidebar, likely resulting in exclusion of the evidence.

The Court further continued in the November 9th final pretrial conference as part of your bench order that Daniel Cislo will be permitted to testify as to the existence of these communications and what they generally entailed.  However, if the content of the communications includes patent analysis, a limiting instruction will be given to ensure this analysis is not given weight by the jury.

If Daniel Cislo's testimony strays from anything outside of a recitation of the facts surrounding plaintiffs seeking advice of counsel, and if it does, he'll be barred from testifying in that area.

11

Daniel Cislo was not disclosed as an expert to defendants and is not qualified to opine on the issues of garment design.  He has no stated background in that area, which is relevant art here.

And, further, this Court will be careful not to allow Daniel Cislo's testimony to include how he came to legal opinions which he gave to plaintiffs prior to this lawsuit. Such opinions could be an attempt to perform an end run around Federal Rule of Evidence 701 by introducing expert legal opinions under the guise of a lay witness, which this Court will not allow.

THE COURT:  Very well.  That's what my ruling was on the issue.  When we get to that witness and that very issue, make sure you stand, request a sidebar, we can discuss it, obviously, at sidebar, or if we need to excuse the jury, we certainly will.  But thank you for making sure all of the parties understand the Court's rulings.  And I'm sure all of the parties have already done that.  You have my rulings all tabbed in front of you right now.

MR. SITRICK:  Thank you.

THE COURT:  You're very welcome.

Next I would like to go through all the exhibits in the case.  And I'll start with the plaintiffs' exhibits.  I really appreciate the fact that you guys read through the Court's standing order, and I see that Plaintiffs' Exhibits 1

through 4 have been stipulated to, so they're received into evidence.

Plaintiffs' Exhibits 54, 55, and 56 are received into evidence.  They've been stipulated to.

Plaintiffs' Exhibit 93 has been stipulated to.  It's been received into evidence.

Plaintiffs' Exhibits 121 and 122 have been stipulated to.  They're received into evidence.

Plaintiffs' Exhibits 123 through 127 have all been received into evidence by way of stipulation.

Plaintiff Exhibit 141 has also been received into evidence by way of stipulation.

Plaintiff Exhibit 205 has been received into evidence by way of stipulation.

Plaintiffs' Exhibits 207 through 211 have been received into evidence by way of stipulation.

Plaintiffs' Exhibit 20 -- I'm sorry, 277 through 280 have been received into evidence by way of stipulation.

Plaintiff Exhibits 284, 285, and 286 have been received into evidence by way of stipulation.

All of those exhibits that have been received into evidence already, the plaintiffs are free to use during the course of their opening if they choose to do so.

Next I would like to shift to the defense exhibits.

All right.  I have Defense Exhibits 345 through 352

that have all been stipulated to so they will also be received into evidence at this time.

Defense Exhibits 493 and 494 will be received into evidence by way of stipulation.

Defense Exhibits --

MR. SITRICK:  Your Honor, I think that was a misread on the numbers.  I think it's supposed to be -- sorry, this is Greg Sitrick, Your Honor, for the defendants.

I believe that was a misread.  The -- I believe the stipulated numbers were 593 and 594.

THE COURT:  That's correct.  Thank you for that.  I did have that.  Thanks for that correction.

So 593 and 594 have been stipulated to and received into evidence.

Defense Exhibits 628 and 629 have been received into evidence by way of stipulation.

Defense Exhibits 636 through 645 have been received into evidence by way of stipulation.

Defense Exhibits 706 through 721 have been received into evidence by way of stipulation.

Defense Exhibit 800 has been received by way of stipulation.

803 has been received into evidence by way of stipulation.

805 has been received into evidence.

810 has been received into evidence.

816 through 818 have been received into evidence.

821 through 823 have been received into evidence.

825 through 829 have been received into evidence.

And, last, Exhibit 832 has been received into evidence.

Again, all of the items that have been received, if you all plan to show them to the jury and they're already in evidence, just to make sure we have a clear record of what's going on, just on the record, let me know what exhibit number you're handling and the fact that it's already been received before you request that this Court publish the exhibit.

Molly.

COURTROOM DEPUTY:  Yes.

(An off-the-record discussion was held between the Court and the courtroom deputy.)

THE COURT:  Once you all receive the information on the jury members, once we finish the selection of the actual jury, you cannot take the information out of this courtroom with you, so make sure you return that information to the courtroom deputy in the case.

That's all I had.  Is there anything from the plaintiffs before we pull in the jury?

MR. NIRO:  Yes, Your Honor.

THE COURT:  Sir, I'm sorry, who are you?

MR. NIRO: Yes, Your Honor. This is William Niro.

There is a few little housekeeping things that we wanted to address with the Court.

THE COURT: Sure.

MR. NIRO: The first one relates to demonstrative exhibits. The parties met and conferred, exchanged proposals, and have worked out a plan for exchanging demonstrative exhibits the day before trial.

THE COURT: Okay. Sir, I'm going to ask you just to move closer to a microphone. The lectern, you can move to the lectern if you need to.

MR. NIRO: That's okay. My mom always told me I was pretty loud anyway.

THE COURT: I'm deaf, so we have that in common.

MR. NIRO: Okay. Your Honor, is this better? Can you hear me better?

THE COURT: It's perfect.

MR. NIRO: Okay. Thank you.

The two opening demonstrative exhibits that the plaintiff wants to use has been agreed to by the defendants.

The defendants provided us with a, it looks like might be a PowerPoint or something, a number of these demonstratives we have objections to. These, again, were just exchanged minutes ago, so I'm not sure how you want to deal with these particular demonstrative exhibits the defendants want to use in

their opening.

THE COURT:  Okay.  How many objections do you have?

MR. NIRO:  Probably, let's see, one, probably about five.

THE COURT:  Okay.

MR. NIRO:  Five or six of them.

THE COURT:  Well, why don't you approach the ELMO, and put it on the ELMO so I can see what you're objecting to.

MR. CRUM:  Your Honor, if it would assist the Court --

THE COURT:  Who are you?

MR. CRUM:  Thank you, Your Honor.  This is Isaac Crum on behalf of the defendants.

We have another copy if you would like a copy as he's going through.

THE COURT:  A copy for me?

MR. CRUM:  Yes, Your Honor.

THE COURT:  That's terrific.  Come on up.  Thank you.

MR. SITRICK:  Your Honor, this is Mr. Sitrick.

We have not agreed these -- we attempted to work out an exchange of demonstratives last night, that did not happen.  We approached counsel this morning about the exchange.  We've just exchanged.  They told us what they were going to use.  We have not agreed.  They have two things that they are going to use as demonstratives that are not on --

THE COURT:  He's rolling his eyes, so clearly he

remembers something different.  You guys have been doing this for a long time, we've had this discussion other times that we were in the courtroom.

Let's do this.  I'm going to give you five minutes. Meet and confer about these issues and tell me specifically what objections you have as it relates to the plaintiffs and the defenses.

Again, if the items haven't been received into evidence, it's very hard to make an argument that you want to put it in front of the jury during your opening as it relates to some of your exhibits.  However, if it's your intent to argue that during the course of trial -- of the trial you will see X, then that's fair game.  So you all know all of this. None of you are new in the practice of law.  Everybody has over 20 years of experience.

So I'll give you five minutes, one last chance to meet and confer to see if you can resolve these issues, and then I'll help out the parties.

Court's in recess until 9:25.

(Recess taken, 9:15 a.m. - 9:24 a.m.)

THE COURT:  This court will come to order.  All parties present when the court last closed are present again.

It is my understanding that you all couldn't come to an agreement, so let's go through this document.

What's the first objection to this -- I'm sorry.

Whose PowerPoint is this again?

MR. NIRO:  This is -- well, let's go with the plaintiffs' first, Your Honor.

THE COURT:  Okay.

MR. NIRO:  This is a demonstrative exhibit that we want to use.  It's extremely relevant to the case, because the invention, it was inspired by -- the testimony of these parties -- it was inspired by this Arizona Cardinals sweatshirt.

THE COURT:  Wait a minute.  So -- so what -- it looks like an Arizona Cardinals hooded sweatshirt, fleece.  What's the -- so what's the relevance of you showing that?  What are you planning to do?

MR. NIRO:  Well, in my opening I'm going to talk about how this invention came to be, and it was inspired by an Arizona Cardinals sweatshirt and a blanket throw.  It's the marriage of these two things.

THE COURT:  Have we --

MR. NIRO:  This is a sweatshirt.  This is a throw.

THE COURT:  Have we talked about this pretrial?

MR. NIRO:  We have the -- we listed -- well, we told them there were going to be demonstratives and we would make them available to them in the pretrial order.  They were at Mr. Londen's office, and they never asked to come and see them.  That's the best I can say.

THE COURT:  What's the objection?

MR. SITRICK:  Your Honor, the Arizona Cardinals sweat -- this is Greg Sitrick, Your Honor.

The Arizona Cardinals sweatshirt has been objected to. It hasn't been shown to be prior art or something that has been estab -- they want to use it as prior art in this case to establish that that's how you would build the patented product. It's on their exhibit list, but we've objected to it.  We plan to object to it at its introduction later in the case.

As far as the sherpa blanket, that's never been made available.  It's not on the exhibit list.  It's a demonstrative we were just told about today.  We have never been offered an opportunity to come inspect demonstratives.

THE COURT:  So, specifically, what is your objection to the plaintiff showing both of those items to the jury?

MR. SITRICK:  Relevance.

THE COURT:  You wouldn't say it's relevant?  I mean, the whole case is about a garment that you put over your head, and there is arguments, obviously, about, you know, who owns the ideas of a, basically, a hooded sweatshirt that has different kind of material.

MR. SITRICK:  Yes, Your Honor.  In patent law, in order to piece the things together, the items have to qualify as prior art.

THE COURT:  Correct.

UNITED STATES DISTRICT COURT

MR. SITRICK:  We have objected to the sweatshirt and not qualifying as prior art.  This is the first time we've seen the blanket.  We would object to that as well.  It's not relevant.  It doesn't qualify as prior art.

THE COURT:  Counsel.

MR. NIRO:  Well, I'm not offering -- it won't be offered as prior art.  It is a demonstrative exhibit of what these -- the defendants are going to testify about, that is, they saw this -- the little boy in an Arizona Cardinals sweatshirt and a sherpa blanket sitting on the couch, and that was the -- what sprung the idea to take the Cardinals sweatshirt, make it out of a fleece material.

THE COURT:  Well, until they've actually offered that kind of evidence, it's not relevant.  I mean, during the -- during the course of your -- your case, if that comes up, we can revisit the issue, but you having the articles in front of the jury versus saying this is where it came from, we haven't developed where any of it came from yet.  So it's speculation, at best, until it's proven and it's actually received.

So the objection is sustained.  That will not be used in your opening.

What else?  You said there were five things objected to.

MR. NIRO:  That's on theirs.

MR. SITRICK:  That's it, Your Honor.  They only

disclosed two demonstratives.

THE COURT:  Oh, so that's it.  So there is nothing else?

MR. SITRICK:  Not from our side.  I think they are objecting to our PowerPoint demonstrative that you have a copy of in your hands.

THE COURT:  Okay.  I have the PowerPoint here.

MR. NIRO:  The first one, Your Honor, is the second page.

THE COURT:  Okay.  Let me get to page number 2.  It has the -- the pants, the purse, and some shoes.

MR. NIRO:  Correct.  The design patents of others.

THE COURT:  Okay.

MR. NIRO:  I don't know that that's particularly relevant.  I don't believe any of this is in evidence.

THE COURT:  This is not relevant.  I will not allow them to use it.

What else?

MR. NIRO:  We go to page -- I'm sorry, let me count through them.  That was 2, 3, 4.

THE COURT:  Okay.  Every time you count, my court reporter has to write it down.

MR. NIRO:  Oh, I'm sorry.

THE COURT:  So don't talk to yourself, please.

MR. SITRICK:  Your Honor, if I may?  On two of those

design patents that were shown, one of those design patents is our expert's, Mr. Jim Crumley's, design patent.  The other design patent is talked about in two of our expert reports.

THE COURT:  Let me stop you there.  Has it been -- is it one of the items that's been stipulated to and already received?

MR. SITRICK:  No.  No, sir, Your Honor.

THE COURT:  It's not going in.

MR. SITRICK:  Okay.

THE COURT:  Go ahead, Counsel.

MR. NIRO:  The same -- I lost the count.  I think it's about page 9.  But I should put it up on the ELMO, Your Honor.

THE COURT:  Yes, please.

MR. NIRO:  It's this trade dress one.  This is trade dress of others.

THE COURT:  Hold on just a moment.

MR. NIRO:  Okay.  Sorry.

THE COURT:  Okay.  Go ahead.

MR. NIRO:  This is, apparently, the trade dress of others.  It is not relevant to any issue in this case -- it might be relevant to an issue in the case, but we don't -- we don't -- and it's not in evidence.  I think it's one of the things that might be in a report.

THE COURT:  Counsel.

MR. SITRICK:  He's correct.  This is -- these are on

the exhibit list.  These are used with the experts.  They are not stipulated to, though, at this point.

THE COURT:  Okay.  Again, if it hasn't been received into evidence, you're not going to put the exhibit in front of the jury until the foundation is laid and it's received into evidence.

So, go ahead.

MR. SITRICK:  That could shortcut a few of these then.  If that's your ruling, that helps.

THE COURT:  Absolutely.

MR. NIRO:  On the next page, again, Your Honor --

THE COURT:  So just go back to the other page.

MR. NIRO:  I'm sorry.

THE COURT:  Just to make sure we're clear.  That will not be shown to the -- to the jury.  So that -- that objection is sustained as well.

Go ahead.

MR. NIRO:  I believe two pages in there is a -- some image that we don't know what -- on the right-hand side -- where that comes from.  I don't -- I don't believe any of this is -- is evidence in the case.

THE COURT:  Go ahead, counsel.

MR. SITRICK:  We could remove that image from the demonstrative, Your Honor.  The other images, though, we would still like to appear on that slide.  And we plan to replace the

image that you see on that slide that they're objecting to with the text that you see in the slide before that lays out Cozy Comfort's trade dress elements.  The picture was just a representation.

THE COURT:  Hold on just a moment.

So the page before, the right says the Comfy trade dress.  The next page is a smiling lady on the right with a bunch of arrows.

So you've agreed to delete that photo?

MR. SITRICK:  That photo.  Now, the -- the line of products, that HD line, 250 line that you see on the left side, those are their images that they have stipulated to from their interrogatory responses.

THE COURT:  Very well.  So I will allow that.

So you said you're going to add something.  I don't want you to add something while we're waiting for the jury, and then the plaintiffs see what you've added and then there is another objection and we have to do this again.

MR. SITRICK:  Yes.  That's why I was stating, Your Honor, that image that's objected to will be replaced with the text elements that you see on the page before.

THE COURT:  Very well.  Very well.

What else?  You said you had five things, we've gone through four.

MR. NIRO:  There is a -- appears to be some video.

UNITED STATES DISTRICT COURT

There is three people on a page here.

THE COURT:  With the guy on the left, has a Christmas tree above his head.

MR. NIRO:  Yes, right.  This is something from a television show.

THE COURT:  What is this?

MR. SITRICK:  Your Honor, this is a video from QVC from the company's appearance.  It's on the exhibit list, but based on your preference not to allow exhibits that have not been stipulated to in opening, we will withdraw that one.

THE COURT:  Okay.  Very well.  Is that it?

MR. NIRO:  No.  Next one -- next page it's the same thing.  It's -- this is some sort of composite.

THE COURT:  Same objection?

MR. NIRO:  Yes, Your Honor.

THE COURT:  Counsel.

MR. SITRICK:  Same response, Your Honor.

THE COURT:  It's gone.  It's gone.  I don't -- I don't need anything as long as it's in line with what you know I'm going to rule as it relates to the photos.

What else?

MR. NIRO:  This one, Your Honor, that's -- has a highlighted portion, we don't -- we don't have an objection necessarily to the image on the left, but by highlighting this, it's -- there is three things here.  First, it's argumentative,

and the -- it's misrepresenting -- it's attempting to misrepresent the facts.

THE COURT:  So you don't have an argument with the photo on the left?

MR. NIRO:  Correct.

THE COURT:  Well, the photo on the left will be -- I'll allow its use, but the photo on the left says Comfy in the top left, so why do you have an issue with the right, the Post-it?

MR. NIRO:  Well, because the explanation for that appearing there is a subject of testimony.  And I expect they can argue what the -- what it means at the appropriate time, but I don't believe that highlighting it or mentioning it in the opening is -- is appropriate because it is argumentative.

THE COURT:  Very well.

MR. SITRICK:  Your Honor, this exhibit is stipulated to.  I believe we can present it and show the jury what's difficult to read there as a callout for demonstrative.

THE COURT:  It's stipulated to, the right side as well?

MR. SITRICK:  The right side is not an exhibit.  It is a demonstrative that blows up that wording so that the jury can see what it says.

THE COURT:  Well, why is it on a, what appears to be a yellow Post-it?  What's the significance of that?

MR. SITRICK:  It's just highlighted so you can read it better.  We can remove the highlighting if you would prefer. It's just very difficult for the jury to see.

THE COURT:  Well, make the ELMO photo larger to see if you can read Comfy in the left photo, top left.

MR. NIRO:  Barely, but it's equivalent of any other part of this image.

THE COURT:  It looks pretty clear.  So on that page the right side will not be used, but if you need to point out what it says on the left photo, top left, you certainly can.

MR. SITRICK:  Your Honor, we will not be using the ELMO.  We'll be presenting this on the screen via PowerPoint. I don't think we'll have the ability to zoom in.

THE COURT:  Okay.  I can see it just fine in its present form so --

MR. SITRICK:  Okay.

THE COURT:  -- you can tell on the top left says Comfy, C-O-M-F-Y.

What else?

MR. NIRO:  This -- there is Comfy pajamas here.

THE COURT:  Okay.  What page?

MR. NIRO:  Well, the pages aren't numbered so I can't -- don't know exactly.

THE COURT:  Oh, I see it.

What's the objection?

MR. NIRO:  Again, this is not in evidence and no relevance to the case.

MR. SITRICK:  Your Honor, this is in evidence.  It's on the exhibit list, but it hasn't been stipulated to yet, so we'll remove it.

THE COURT:  Thank you.

What else?

MR. NIRO:  The very last page, Your Honor.

THE COURT:  The one that's all black?

MR. NIRO:  No, I'm sorry, second-to-last.  They present a bunch of photographs of experts, and then they argument -- they argumentatively say Mr. Ngan benefits while directing companies to infringe.  We think this is argumentative and I would say that it's prejudicial.

THE COURT:  Whoever has their phone going off or whatever is going on, make sure you check all of your electronic devices.  Obviously I can't have you shut them down, but make sure they're silent so we don't interrupt the trial and so our staff members can do their jobs better.

I'm sorry, Counsel.  My apologies that you were interrupted.

MR. NIRO:  That's quite all right.

As I said, Your Honor, this is -- you know, this is, you know, after these smiling experts, we get a rather dower picture of Mr. Ngan, and then, you know, the boxes around it

and then talking about the benefits while directing the company to infringe.  That's argumentative.

And I believe the presentation, the way this is presented, is certainly -- I don't want to say intended to be prejudicial -- but I think it is prejudicial, and it -- and it certainly goes toward bias.

THE COURT:  Well, it certainly is during an opening statement.

Counsel.

MR. SITRICK:  Your Honor, Mr. Ngan is the owner of all these companies.  It's not disputed.  That's what we're trying to demonstrate and that he's in control of all these companies.

THE COURT:  You're trying to -- I mean, by this slide it says that he benefits while directing companies to infringe. You're basically in your opening saying that this has been established that he's some kind of crook.

MR. SITRICK:  Our allegations are that they infringe.

THE COURT:  Correct.

MR. SITRICK:  Willfully.  This slide is to demonstrate --

THE COURT:  You're saying them, but you haven't established any of that, and it's argumentative at this point, so that will not be allowed.

If you want to keep the slide where it says he's the -- he owns it or they're his different LLCs, I'll certainly

allow that.

MR. SITRICK:  Okay, Your Honor.  Thank you.

MR. NIRO:  We would object to having the picture. Ngan is right in the courtroom sitting right there.  They can point to him if they want.

THE COURT:  I'll allow the photo, but you can make a record of your objection if you need to.

MR. NIRO:  You'll allow this photo, Your Honor?

THE COURT:  Yes.

MR. NIRO:  Okay.  Just so I'm clear, what is it that is allowed on this?

THE COURT:  The photo on the left and not the comments on the right.

MR. NIRO:  Okay.

THE COURT:  Any questions about how the Court's ruled, plaintiffs?

That's a negative response.

Defense?

MR. SITRICK:  No questions, Your Honor.

THE COURT:  And I'm, for the most part, referring to you two gentlemen since you seem to speak the -- or talk the most at this point, however, if we have any of the other six or seven lawyers that need to talk, just stand up and let me know you have something to say, and, again, just let me know who you are.

Is there anything else to take up before we bring the jury in here, plaintiffs?

MR. NIRO:  Yes, there is, Your Honor.

Oh, I'm sorry.  Yes, there is, Your Honor.  William Niro.

Your Honor, we -- we're mindful of your rule of exclusion, however, on the exception that you stated, we want to ask that Ms. Gamble be permitted to attend for the testimonies of Cislo, Stockton, and their expert witnesses.

THE COURT:  Who is Ms. Gamble again?

MR. NIRO:  Ms. Gamble is plaintiffs' expert on -- in connection with the patents and the trade dress at issue in the case.

MR. SITRICK:  We would object to Ms. Gamble being present for any of the facts witnesses.  She's a rebuttal witness to Mr. Crumley, Mr. Keegan, Mr. Frank, and we would not object to her attending trial for those testimonies, but we would object to her attending for plaintiffs' presentation of their case through their fact witnesses.

THE COURT:  Is there any issue with that?

MR. NIRO:  Yes.  Ms. Gamble's report specifically refers to the deposition testimonies of Mr. -- both of the Speciales, Brian and Michael, as well as the expert reports of all of their -- their experts except Cook.  He's the financial guy.

So what we want to do is have her available -- and she also relied on and examined Mr. Cislo's letters and Mr. Stockton's expert report.

THE COURT: I'll tell you what I'll do. There is so many lawyers at both tables, keep track of what the witnesses are discussing while they're under oath, and if you need to prepare your witnesses, whether it's plaintiff or defense, do that in line of what's happened in the courtroom, but I will not allow witnesses that are called in the case in chief to sit in the courtroom.

What else?

MR. NIRO: We ask for leave to add the two exhibits marked at the deposition of Mr. Cook.

THE COURT: Just one moment. Just one moment.

Which numbers?

MR. NIRO: 291 and 292.

THE COURT: Hold on. And why are these exhibits being added so late?

MR. NIRO: Because you recall, Your Honor, that you gave us leave to take the deposition of their expert Mr. Cook after his supplemental report. The exhibits were marked at his deposition in connection with part of the -- and asked about in connection with his -- or his conclusions on trade dress infringement and damages.

We've noted on the list that we're only seeking to add

them to the list, we're not seeking to introduce them at this point in time, only that they be permitted to be added to the list so we have them available to us.

THE COURT:  What's the objection?

MR. SITRICK:  These are highly prejudicial.  They're super late.  If I may -- this is Greg Sitrick, Your Honor.  If I may, let me provide some context.

Our damages expert does not opine on infringement. They -- they brought two prior art patents that are dated early enough that they could have produced them while discovery was out.  What they did is they tried to put these in front of our expert, asked him if he thought that these would infringe, and now they're trying to stick them in the case late.

These are -- these are documents that should have been produced a long time ago.  We haven't had any discovery around them.  The dates on them clearly reflect they were available during discovery.  This is a complete end around attempt to get in additional pieces of prior art that they did not bring into this case at all when they had the opportunities.  We highly object to these documents as prejudicial at this point.

THE COURT:  Counsel.

MR. NIRO:  Your Honor, we marked them as exhibits. They're U.S. patents, part of the public record.

THE COURT: Okay.  I'll -- I'm sorry, I was talking over you.  My apologies.  Go ahead.

MR. NIRO:  No, that's quite all right.

THE COURT:  Okay.  What I'm going to allow is they're marked as Exhibits 291 and 292, but I'll address the issues that the defense has raised just now on the record once we get -- if this issue ever comes up.

MR. NIRO:  That's fine with us, Your Honor.

THE COURT:  What else from the plaintiffs?

MR. NIRO:  Yes.  Plaintiffs' Exhibit 26 is an e-mail from the records of Cozy Comfort Company.  It's an e-mail from Mr. Cislo to Ms. Tillinghast and then passed on to the Speciales.

Missing from that is the letter that's attached.  The letter -- what we seek to do is ask that the full letter be made part of Exhibit 26 so that when the examination of Mr. Cislo takes place, he'll have access to that letter.  It comes from their files.  We have discussed this actually at the time of Mr. Cislo's -- the motion in limine with Mr. Cislo, and Your Honor indicated that the letters that he provided to them and that were in their records were this -- could be the subject of his testimony.

THE COURT:  Counsel.

MR. SITRICK:  Your Honor, they're citing to an e-mail where one of Cozy Comfort's employees forwarded an e-mail to another employee but did not copy this attachment.  This attachment is not a part of this e-mail.

What they're trying to do is stick in the attachment from the original e-mail that was sent not this e-mail that Ms. Ashley sent.

MR. NIRO:  Your Honor, if -- if -- did -- may I -- may I give you a copy of this?

THE COURT:  Yes.  You may approach.

Molly, can you make sure the jury people know we're --

COURTROOM DEPUTY:  They are.  Yeah.  I was messaging with them.

THE COURT:  Thank you.

MR. NIRO:  If you look at the --

THE COURT:  Hold on.  Hold on.

MR. NIRO:  I'm sorry.  I'm sorry, Your Honor.

THE COURT:  What is this marsupial pocket information, what's the relevance of that?  It's bottom right, 3889 is your Bates number, I believe.

MR. NIRO:  The relevance of the over garment with the elevated marsupial pocket?

THE COURT:  Correct.

MR. NIRO:  This is an exhibit to that letter that is the patent of the -- the Cozy Comfort Company.  It's the utility patent.

If you look, Your Honor, you'll see the Bates numbers at the bottom, they're all in series.  This is Cozy Comfort document from their files, starts at 3865, 386 -- excuse me,

two 3865s, and then continues 3866 through the end.  So this is, essentially, what is in their files.  The only thing that Exhibit 26 on the list shows is the first two pages.  So we're seeking to add, for completeness, the rest of that exhibit.

THE COURT:  Okay.  It's your case, in terms of what exhibits you may have, so what is the objection specifically?

MR. SITRICK:  Your Honor, if you would please take a look at Plaintiffs' Exhibit 26.  The Bates label on it is CCCTB 014387.  It is not sequential with the Bates numbers that they're representing to you are sequential in this.

Exhibit 26 was an e-mail, I believe, from a cell phone that was -- that was responding.  There is no forwarding of an attachment.  I'm not saying that these records weren't produced by us, but this is not what they have cited on the exhibit list.  This is not the document that's been on the exhibit list up until a couple days ago.

THE COURT:  Well, let me ask the plaintiffs.  Is what you propose something you anticipate using to impeach the defense witness as it relates to this issue?

MR. NIRO:  No.

THE COURT:  So what -- what do you plan to use it for?

MR. NIRO:  Mr. Cislo is allowed, by Your Honor's ruling, to testify to the correspondence that he prepared and sent to the various parties, Amazon, the plaintiffs, and Mr. Sitrick as attorney for the plaintiffs.

THE COURT:  And you believe that you can establish, while this person's on the stand, you can lay the proper foundation that this is the information that was sent?

MR. NIRO:  Correct.  He's bringing his actual original files with him to court, Your Honor.

THE COURT:  If you can lay the foundation, if you have an objection, I'll allow you to preserve it at that time.

MR. SITRICK:  Thank you, Your Honor.

MR. NIRO:  Thank you.

THE COURT:  What else from the plaintiffs?

MR. NIRO:  One more thing, Your Honor.

THE COURT:  This is your fourth one more thing, but go ahead.  It's one more thing-ish.  How is that?

MR. NIRO:  Last thing, Your Honor.

THE COURT:  All right.

MR. NIRO:  Okay.  We want to bring to the Court's attention Mr. Ngan's medical condition.  He has a medical condition that occurred in the month of March that impacts his stamina, his -- he's on medication and needs to have blood tests every three days at a special clinic in Los Angeles.

So we're just asking the Court to give an instruction to the jury not to infer anything if Mr. Ngan is absent from a day of court.  We have obtained some letters from his doctors if you -- if the Court would like to see those, but all we're really asking is Mr. Ngan may not be able to be here for a day

of court.

THE COURT:  Okay.

MR. NIRO:  And so -- and so his absence, we don't want the jury to infer anything from his absence.

THE COURT:  Okay.  The parties, for the most part, the nonlawyers, they can come and go as they please.  However, if the lawyers want to provide the Court with some kind of stipulation that reads that the parties in the case may have other business or personal dealings that they need to address, please don't infer from their absence that they don't have interest in the case, or whatever way you want that to be read to the jury, I have no issue with that.

And, sir, I'm sorry to hear that you have a serious medical condition that you're dealing with.

What would be the objection from the defense?

MR. SITRICK:  We have no objection, Your Honor.  If that wants to be read for -- equally for both sides, we are fine with that.

THE COURT:  Absolutely.  So meet and confer, there is a whole lot of you here, just meet and confer, draft something, and I'll absolutely read it.

And, Counsel, if you would like me to read it Friday morning, because that will be the third -- that will be the fourth day, I mean, I certainly will the first thing in the morning.  And what I can do is just read it specifically about

your client or generically about the nonlawyers present.

MR. NIRO:  Okay.  That's -- that's --

THE COURT:  So whatever the parties agree to, I'm willing to take up.  However, what I don't like is when lawyers are just getting up every 15 minutes to go use the restroom and get water and all of that.  When court is in session, the lawyers are at counsel table, period.

And I know you have some lawyers behind you.  If you have lawyers behind the counsel table, I see one gentleman there, of course he can leave and go do what he needs to do as it relates to what we're doing on the record, or if a lawyer needs to go out to make sure their next witness is available, I can understand that, but I've seen so many different things go on.  And we take a lot of different breaks.  We break at 10:30.  We break at noon to 1:00.  So any personal issues you have to take care of, you can do that without going in and out and distracting the jury every time that happens.

What else?

MR. NIRO:  That's it, Your Honor.  I said the last.

THE COURT:  Terrific.

Defense.

MR. SITRICK:  Yes, Your Honor.  We have two rebuttal expert witnesses to Ms. Gamble.  We would request that Mr. Crumley and Ms. Harder be allowed to attend trial and listen to the testimony that Ms. Gamble presents so they can

rebut appropriately.

THE COURT:  Plaintiff.

MR. NIRO:  Well, I think good for goose, good for gander.

THE COURT:  Absolutely, I already ruled on that issue.

MR. SITRICK:  Okay.

THE COURT:  So that will not be allowed.

MR. SITRICK:  That will not be allowed?

THE COURT:  That's correct.

MR. SITRICK:  Thank you, Your Honor.

THE COURT:  What else?

MR. NIRO:  That's it for the plaintiff, Your Honor.

THE COURT:  Who is the really tired gentleman back there in the short sleeve shirt?

MR. SITRICK:  This is a clerk of ours at our firm. He's here just to help out if we needed anything run for.

THE COURT:  Oh, very well.  Very well.

MR. SITRICK:  His name is Ron Coulter, Your Honor.

THE COURT:  So there is nothing else going on, so we'll --

MR. SITRICK:  No, I wasn't quite done.  I'm sorry.

We addressed with other -- with opposing side, and I believe we have an agreement, that --

THE COURT:  You believe or you have an agreement?

MR. SITRICK:  We have an agreement, I believe, that

fact witnesses go once in this case, such that after -- if they call our witnesses up for a cross, we'll be able to put our direct on at that time, rather than recalling our witnesses for our case.

MR. NIRO:  We are fully in line with that, Your Honor.

THE COURT:  Okay.  If we're in alignment with that, when I ask is the witness subject to recall, and you say no and no, the witness is gone.

I've had this feel-good story before in this room where a side has then stood up and said, but, wait, they went into an area that we weren't expecting, so we need to recall witness such and such that's already been excused.  So -- but if you all have talked about it and come to an agreement, I have no issue with that, but if something like that happens, I'm not going to, you know, halt the trial so you can find a witness that's been excused.

MR. NIRO:  From the plaintiffs' side, Your Honor, the only person who would come in rebuttal would be Ms. Gamble.

THE COURT:  Very well.

MR. SITRICK:  From our perspective, I think we would have no problems with that.

THE COURT:  With what?

MR. SITRICK:  With calling -- with calling the witnesses once, as long as the Court does not preclude us from asking in our direct of our witnesses questions that were not

necessarily asked on the cross-examination.

THE COURT:  I would absolutely allow all of the above. I appreciate you gentlemen meeting and conferring about the issues.  It will cut down on trial time, so thank you for that.

And, also, since you're being so generous as it relates to the witnesses, when you have lunch, sit down with the exhibit list.  There is a lot of exhibits that are still out there, and I don't know what you plan to do, but if we are laying the foundation for the additional thousand exhibits that we have, we'll be here until next year.  So maybe you all can meet and confer about some of those issues as well.  I'm certainly not ordering you to do that, but as officers of the court, it could be helpful to your respective cases.

What else from the defense?

MR. SITRICK:  Yes, Your Honor.

As far as handling your process for jury question followup and strikes, will you give us guidance on that?  Is that something you want us -- do you have a procedure you'd like us to follow?

THE COURT:  I do.  It's the same procedure we talked about during the final pretrial conference.  I'll propose all of the questions to the jury, and each side has five, but they're follow-up questions to the questions I've already asked.  That's it.

MR. SITRICK:  And do we ask those directly to the

jurors, will you present that opportunity, or do we ask -- do we meet with you separately to provide you with those questions?

THE COURT: No. You can ask them directly to the jury, or if you would rather have me ask the jury, you can -- you can basically place them in written form and I'll allow it. I'll do it for you. But I -- typically the lawyers stand at the lectern and ask those five follow-up questions.

MR. SITRICK: Thank you, Your Honor.

MR. NIRO: We're confused by that, Your Honor. Your pretrial order indicated that we could submit five additional questions to Your Honor. Both sides did that and you ruled.

THE COURT: No, all of -- all of the items that we've already talked about during the final pretrial conference, whether you had additional questions that I have allowed or said no to, if I've already said no to the questions that you wanted to ask in addition to my questions, they won't be asked.

However, if you ask, you know, Panel Member Number 13 a question, and I've asked the person follow-up questions to include: Do you believe -- you still believe you can be fair and impartial under these circumstances, and she says yes, if you write down that you have maybe an issue and wanted to follow up with the question that I asked Number 13, that's what I'm talking about, not the questions -- the questions that you submitted on the joint voir dire document, all of that has

already been resolved.

MR. NIRO:  Okay.

THE COURT:  We're just talking about five and five for follow-up.

MR. NIRO:  Okay.  All right.  That's good.  Thank you, Your Honor.

THE COURT:  You're very welcome.

What else from the defense?

MR. SITRICK:  We don't have anything else, Your Honor.

THE COURT:  Well, I'll tell you, let's do this.  Since we've been going now for an hour and 15 minutes, we'll go on the record again at 10:15, but we will not be breaking at 10:30.

Court's in recess until 10:15 when the jury's present.

(Recess taken, 9:58 a.m. - 10:16 a.m.)

(End of excerpt.)

*          *          *

UNITED STATES DISTRICT COURT

C E R T I F I C A T E

I, CHRISTINE M. COALY, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 10th day of April, 2024.

/s/ Christine M. Coaly_____
Christine M. Coaly, RMR, CRR

UNITED STATES DISTRICT COURT