# United States Court of Appeals
# for the Federal Circuit

_____

**TOP BRAND LLC, SKY CREATIONS LLC, E STAR
LLC, FLYING STAR LLC,**
*Plaintiffs/Counter-Defendants-Appellants*

**JOHN NGAN,**
*Counter-Defendant/Counter-Claimant-Appellant*

**v.**

**COZY COMFORT COMPANY LLC,**
*Defendant/Counter-Claimant-Appellee*

**BRIAN SPECIALE, MICHAEL SPECIALE,**
*Defendants/Counter-Defendants-Appellees*

_____

2024-2191

_____

Appeal from the United States District Court for the
District of Arizona in No. 2:21-cv-00597-SPL, Judge Steven
P. Logan.

_____

Decided: July 17, 2025

_____

GREGORY A. CASTANIAS, Jones Day, Washington, DC,
argued for plaintiffs/counterclaim defendants-appellants
and counter-defendant-appellant. Also represented by
JOHN CHARLES EVANS, Cleveland, OH; MARLEE
HARTENSTEIN, Pittsburgh, PA; ERIC MICHAEL FRASER,

Osborn Maledon P.A., Phoenix, AZ.

JOHANNA WILBERT, Quarles & Brady, LLP, Milwaukee, WI, argued for defendant/counter-claimant-appellee and defendants-appellees. Also represented by MICHAEL PIERY, CHRISTIAN G. STAHL.

_____

Before DYK, REYNA, and STARK, *Circuit Judges*.

DYK, *Circuit Judge*.

Top Brand and Cozy Comfort compete in the market of oversized hooded sweatshirts. Cozy Comfort owns U.S. Design Patent No. D859,788 (the "D788 patent") and two trademarks for the "THE COMFY" for goods and services relating to blanket throws. Top Brand sought declaratory relief of noninfringement of the design patent. Cozy Comfort counterclaimed for infringement of the design patent and trademarks. After trial, the jury found infringement of both the patent and the trademarks. The district court denied judgment as a matter of law ("JMOL") to Top Brand and entered judgment on the jury verdict.

We hold that the principles of prosecution history disclaimer apply to design patents and that Top Brand was entitled to JMOL of noninfringement of the design patent because the accused infringing design was within the scope of the subject matter surrendered during prosecution. We also conclude that substantial evidence does not support the jury's verdict of trademark infringement. We therefore reverse.

BACKGROUND

I

Appellees are Cozy Comfort Company LLC ("Cozy Comfort"), Brian Speciale, and Michael Speciale.[1] Appellees sell an oversized "wearable blanket," with an appearance allegedly similar to an oversized sweatshirt, called "The Comfy." J.A. 24397 (23:2–14). Appellants are John Ngan and four companies of which he is the sole owner: Top Brand LLC, E Star LLC, Flying Star LLC, and Sky Creations LLC (collectively, "Top Brand"). Three of the companies (Top Brand LLC, E Star LLC, and Flying Star LLC (collectively, "the Top Brand Companies")) sell "hooded sweatshirts and wearable blankets,"[2] J.A. 10928, through Amazon.com and websites such as www.tirrinia.net and www.cataloniastore.com under the brand names Tirrinia and Catalonia.

Cozy Comfort owns the D788 patent, titled "Enlarged Over-Garment with an Elevated Marsupial Pocket." The D788 patent claims "[t]he ornamental design for an enlarged over-garment with an elevated marsupial pocket, as shown and described." J.A. 28. The D788 patent includes ten figures, six of which are shown below.

---

[1] Appellees Brian and Michael Speciale are the co-founders and members of Cozy Comfort LLC. *Top Brand LLC v. Cozy Comfort Co.*, 688 F. Supp. 3d 924, 931 (D. Ariz. 2023).

[2] The fourth company-appellant, Sky Creations LLC, "licenses to the [Top Brand Companies] some of the clothing they sell." J.A. 6959 n.1.



J.A. 30–37. During prosecution of the application leading to the D788 patent, the examiner initially rejected the design as anticipated by U.S. Patent No. D728,900 ("White"). To obtain allowance, Cozy Comfort agreed that its design differed from the White design in particular respects,

thereby disclaiming the significance of specific features in the Cozy Comfort design (as we explain further below).

Cozy Comfort also owns two registered trademarks for "THE COMFY," one for blanket throws and one for online retail store services featuring blanket throws.[3] J.A. 18557; J.A. 18627.

## II

Cozy Comfort accused some of Top Brand's hooded sweatshirts and wearable blankets of infringing the D788 patent. In response, on February 20, 2020, Top Brand LLC and Sky Creations LLC filed a declaratory judgment action against Cozy Comfort in the Northern District of Illinois, seeking determinations of noninfringement and invalidity of the D788 patent. The case was then transferred to the District of Arizona. Cozy Comfort counterclaimed for infringement of the D788 patent and asserted trademark infringement under the Lanham Act.

During the course of the proceedings, Top Brand advocated for a detailed verbal limiting construction of the D788 patent claim based on Cozy Comfort's statements during prosecution. The district court declined to adopt such a construction. At trial, the jury was simply instructed that it "must determine whether or not there is infringement by comparing the accused products to the design defined in the [D788] patent." J.A. 14554.

The jury returned a verdict finding, as relevant here, that Top Brand failed to show the D788 patent was invalid;

---

[3]    Reg. No. 5608347, in International Class 24 for "[b]lanket throws, namely, whole body blankets," J.A. 18557; Reg. No. 5712456, in International Class 35 for "[o]n-line retail store services featuring blanket throws, namely, whole body blankets," J.A. 18627.

that Top Brand infringed the D788 patent;[4] and that Top Brand infringed the trademarks. J.A. 14523–38.[5] The jury awarded $15.4 million in disgorged profits for the D788 patent infringement, J.A. 14524, and awarded $3.08 million total in disgorged profits for trademark infringement, J.A. 14533, 14535. The district court denied JMOL and entered judgment pursuant to the jury verdict against Top Brand.

Top Brand appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).[6]

---

[4] The jury found that seven of the Top Brand Companies' product lines infringed the D788 patent: HD100, HD100S1, HD120, HD200, HD201, HD210, and HD250 (collectively, "the accused products"). J.A. 14524. For purposes of this appeal, we treat the HD250 product as representative.

[5] The jury also found that the Top Brand Companies were alter egos of Mr. Ngan. J.A. 14538.

[6] After filing the notice of appeal in this action, ECF No. 1, Appellants Top Brand LLC, Sky Creations LLC, E Star LLC, Flying Star LLC, and John Ngan filed for bankruptcy, ECF No. 41. The bankruptcy court issued an order granting relief from the automatic stay under 11 U.S.C. § 362. *See* Order Granting Motion for Relief from Automatic Stay, *In re Flying Star LLC*, No. 2:25-bk-11380 (C.D. Cal. Bankr. Mar. 10, 2025), ECF No. 38; *see also* Orders Granting Motion to Approve Joint Administration of Cases filed in *In re E Star LLC*, No. 2:25-bk-11388 (C.D. Cal. Bankr. Feb. 27, 2025), ECF No. 8; *In re Flying Star LLC*, No. 2:25-bk-11380 (C.D. Cal. Bankr. Feb. 27, 2025), ECF No. 9; *In re John Shun On Ngan*, No. 2:25-bk-11416 (C.D. Cal. Bankr. Feb. 28, 2025), ECF No. 11; *In re Sky Creations LLC*, No. 2:25-bk-11384 (C.D. Cal. Bankr. Feb. 27, 2025), ECF No. 9; *In re Top Brand LLC*, No. 2:25-bk-11387 (C.D. Cal. Bankr. Feb. 27, 2025), ECF No. 8.

## DISCUSSION

When reviewing the denial of a JMOL motion, "[t]he test is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1291 (Fed. Cir. 2023) (quoting *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002)).

### I.  Design Patent Infringement

We begin with Top Brand's argument that the district court should have granted JMOL of no infringement of the D788 patent. This dispute first presents a question of claim construction—whether the district court erred in declining to construe the design patent claim as limited by prosecution history disclaimer.

### A

Cozy Comfort argues Top Brand waived its claim construction argument by failing to object to the jury instruction. We disagree. In the utility patent context, we have held that a party does not waive a claim construction argument by failing to object at the jury instructions stage when the construction proposed on appeal is the same as the construction proposed during earlier claim construction proceedings. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008) (holding that where a party's "position was previously made clear to the district court and the district court did not clearly indicate that it was open to changing its claim construction, [the party] need not have renewed [its] objections by reasserting them when jury instructions were given"); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381 (Fed. Cir. 2004); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 973 (Fed. Cir. 2018) (collecting cases).

The same principles apply in the design patent context. To preserve its objection, a party need not reiterate its preferred claim construction that it argued during earlier claim construction proceedings if the position has been rejected. *See id.*

Here, there is no question that Top Brand made its claim construction position known to the district court in its claim construction briefing. The district court rejected Top Brand's proposed construction in its claim construction order, J.A. 6990–91, and reiterated that rejection again at summary judgment, J.A. 10945. *See id.* (discussing the court's "ultimate rejection of [Top Brand's] suggested claim constructions" in its claim construction order). Cozy Comfort admits that "[t]he district court rejected Top Brand's construction multiple times and adopted Cozy Comfort's construction" at claim construction and summary judgment, Appellees' Br. 20, but argues that, because "[t]he district court left the door open to revisiting its claim construction," Top Brand was required to ask the district court to revisit the claim construction arguments at the jury instruction phase, *id.* at 21 (citing J.A. 10945–46). But at the same time, Cozy Comfort admits that the district court's statement that its construction was not "an absolute and unalterable resolution on the scope" of the claim, J.A. 10945, was <u>not</u> "ma[d]e . . . to indicate that claim construction was unresolved," Appellees' Br. 21. At trial, Cozy Comfort successfully objected to Top Brand's expert testifying as to the effects of the prosecution history statements on her noninfringement analysis, on the ground that the district court "ha[d] already ruled" on claim construction. *Top Brand LLC v. Cozy Comfort Co.*, No. 2:21-cv-00597 (D. Ariz. Apr. 12, 2024), ECF No. 359, at 205:5–6; *see also id.* at 204:18–205:19.

The fact that the district court invited further arguments as to claim construction does not make them required in order to preserve a claim construction position already argued to, and rejected by, the court. *See In re*

*Papst Licensing Digit. Camera Pat. Litig.*, 778 F.3d 1255, 1261, 1266 (Fed. Cir. 2015) (finding that where party opposed, in the district court, "the construction it now opposes" on appeal, "it was not required to state its opposition twice" but "reiterating that a district court may . . . revisit, alter, or supplement its claim constructions" as a case moves forward). Top Brand advances the same claim construction position on appeal that it argued to the district court. The district court was fully aware of Top Brand's position regarding claim construction. The district court resolved the issue before trial and instructed the jury in accordance with that decision. No further objection was required to preserve Top Brand's right to appeal the district court's ruling.

B

Cozy Comfort next argues that the doctrine of prosecution history disclaimer does not apply to design patents because "[t]he nature of design patents renders any purported disavowal ambiguous." Appellees' Br. 25. We disagree.

The doctrine of prosecution history disclaimer is well established for utility patents and addresses surrender of claim scope during prosecution of a patent. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323–26 (Fed. Cir. 2003) (collecting cases). The disclaimer can occur through claim amendments or arguments made to the PTO. *Tech. Props. Ltd. v. Huawei Techs. Co.*, 849 F.3d 1349, 1357 (Fed. Cir. 2017); *see also Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008) ("[A]n applicant can make a binding disavowal of claim scope in the course of prosecuting the patent, through arguments made to distinguish prior art references.").

For design patents, we addressed the surrender of claim scope by amendment in *Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694 (Fed. Cir. 2014). There, the applicant had sought a design patent for

the ornamental design of a marine windshield with various vent hole configurations. *Id.* at 697. The examiner issued a restriction requirement, and the applicant responded by "cancelling figures associated with all but one of the patently distinct groups of designs identified by the examiner—the four-hole embodiment—and striking references to alternate configurations from the text." *Id.* at 702–03. We held that, by doing so, "the applicant narrowed the scope of his original application, and surrendered subject matter." *Id.* at 703. We see no reason to distinguish between disclaimer by amendment and disclaimer by argument and conclude that a patentee may surrender claim scope of a design patent by its representations to the Patent Office during prosecution. This approach is supported by our en banc decision in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc), where we recognized that "a trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim," including "assessing and describing the effect of any representations that may have been made in the course of the prosecution history." *Id.* at 680. Indeed, it would be contrary to the very purpose of design patent prosecution to allow the patentee to make arguments in litigation contrary to the representations which led to the grant of the patent in the first place, and thereby recapture surrendered claim scope. *See, e.g.*, *Fenner Invs., Ltd. v. Cellco P'ship,* 778 F.3d 1320, 1325–26 (Fed. Cir. 2015) (explaining in the utility patent context that "the interested public has the right to rely on the inventor's statements made during prosecution").

C

"[T]he doctrine of prosecution disclaimer only applies to unambiguous disavowals." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012). Cozy Comfort next argues that there was no unambiguous disavowal of claim scope during prosecution of the D788 patent. The examiner rejected the claimed design as anticipated by White.

To obtain the D788 patent, Cozy Comfort argued the overall ornamental appearances of the claimed design and the prior art White design were distinguishable under the ordinary observer test. Cozy Comfort explained how its design differed from White by focusing on specific distinguishing features such as the shape and placement of the marsupial pocket and shape of the bottom hem line. In making these arguments, Cozy Comfort surrendered the identified features as supporting a finding of overall similarity. As discussed in the next section, in distinguishing White, Cozy Comfort clearly surrendered its ability to rely on the surrendered claim scope in arguing for infringement. The district court erred in failing to "assess[] and describe[e] the effect of [Cozy Comfort's] representations . . . made in the course of the prosecution history." *Egyptian Goddess*, 543 F.3d at 680.

## D

Finally, as to design patent infringement, we address whether, under the proper construction of the D788 patent, the district court erred in denying JMOL of no infringement.[7] We conclude it did, because Top Brand has

---

[7] Here, again, Cozy Comfort argues waiver. "A motion under [Federal Rules of Civil Procedure] Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). In its pre-verdict Rule 50(a) motion, Top Brand asked for "judgment as a matter of law on non-infringement of the [D788 patent]," J.A. 25147 (4:13–14), but did not specifically, again, raise the underlying claim construction dispute. J.A. 25147 (4:3–21). Cozy Comfort argues Top Brand waived its argument for JMOL of no infringement under Rule 50(b) because "Top Brand did not raise

12                    TOP BRAND LLC v. COZY COMFORT COMPANY LLC

demonstrated that no reasonable jury, viewing the evidence in the light most favorable to Cozy Comfort, could find infringement on the facts of this case.

Design patents are given narrow scope. *See, e.g.*, *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) (explaining that "[d]esign patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). Whether an accused product reads on a properly construed claim is a question of fact. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). To prove infringement, a patentee must show that to an ordinary observer the accused design and the claimed design are "substantially the same." *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871); *see also Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1294, 1303 (Fed. Cir. 2010). This analysis is conducted through the lens of an ordinary observer familiar with the prior art

---

claim construction in its Rule 50(a) motion." Appellees' Br. 24.

However, the Supreme Court has held that "a post-trial motion under Rule 50 is not required to preserve for appellate review a purely legal issue resolved at summary judgment." *Dupree v. Younger*, 598 U.S. 729, 736 (2023); *see also Cunning v. Skye Biosci., Inc.*, No. 23-55248, 2024 WL 4540775, at *2 (9th Cir. Oct. 22, 2024) (nonprecedential) (applying *Dupree* and concluding party did not forfeit issue by failing to raise it in a Rule 50(a) motion where district court had decided issue as a matter of law at summary judgment). The district court declined to adopt Top Brand's proposed interpretation at the claim construction stage and again at summary judgment. As to claim construction, there was no fact-dependent question that would require a trial record to resolve, and the issue was not waived.

taking into account any disclaimers during prosecution. *See Egyptian Goddess*, 543 F.3d at 676–78.  The proper inquiry is "whether the accused design has appropriated the claimed design as a whole," *id.* at 677, but this analysis necessarily focuses on the similarities or differences of individual features of the claimed and accused designs, as well as the existence of other non-common features and the arrangement of the features in the overall design.  *See id.* at 677–80.

In *Egyptian Goddess*, we assessed specific features of the accused design in deciding the ultimate infringement question, i.e., whether an ordinary observer familiar with the prior art would find the overall visual impression left by the patented and accused designs substantially similar. The accused nail buffer at issue had the same general shape of the patented design.  *Id.* at 680.  The infringement analysis focused on "[t]he difference between the two"— namely, "that the accused buffer ha[d] raised buffing pads on all four sides, while the patented buffer ha[d] buffing pads on only three sides"—in light of the prior art.  *Id.*  We concluded that when examining "the effect of those differences on the appearance of the design as a whole," a reasonable jury could not find that an ordinary observer would be deceived by the overall impression of the alleged infringing design.  *Id.* at 681–83.

Here, Cozy Comfort bore the burden of proof.  *Id.* at 678; *OddzOn*, 122 F.3d at 1405.  We conclude that no reasonable factfinder could, in light of the proper claim construction, "find that [Cozy Comfort] met its burden of showing, by a preponderance of the evidence, that an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design." *Egyptian Goddess*, 543 F.3d at 682.

We first consider the scope of the prosecution history disclaimer and its impact on the previous analysis.  In considering whether the differing features of the accused

product and the claimed design create a different overall impression to the ordinary observer, it is necessary to discount any features that were disclaimed during prosecution. Here, Cozy Comfort surrendered claim scope to obtain the D788 patent. To show infringement, Cozy Comfort cannot rely on features similar to those in White that were disclaimed during prosecution.

During prosecution, Cozy Comfort argued that "the pocket located on the front of the torso" in the claimed design was "substantially different in the claimed design and the White design" and that "[f]or this alone, the claimed design [was] allowable." J.A. 15107. It explained that "[t]he pocket in the inventive design [was] approximately one-third of the width of the torso," while White's pocket "occupie[d] roughly 90% of the torso's width," J.A. 15108, and provided annotated comparisons of the two designs:



White, Fig. 3
(J.A. 15108
(annotations in
original))

D788 patent, Fig. 4
(J.A. 15108
(annotations in
original))

The accused products fall within the scope of that surrender. The undisputed evidence shows that the front pocket

of the accused products is similar in this respect to the White design:



Accused product
(Appellants' Br. 39
(citing J.A. 17028)
(color alterations in
original))

The front pocket of the accused products covers the majority of the width of the torso, like in White (and unlike in the claimed design).

Cozy Comfort also represented that White's more angular and trapezoidal pocket differed from the claimed pocket's square-like shape. *See* J.A. 15107, 15109. In making these arguments to distinguish White and obtain allowance, Cozy Comfort surrendered claim scope. The shape of

16                     TOP BRAND LLC v. COZY COMFORT COMPANY LLC

the accused products' pocket is also similar to White's trap-
ezoidal pocket:



Accused product
(Appellants' Br. 39
(citing J.A. 17028)
(color alterations in
original))

White, Fig. 3
(Appellants' Br. 39
(citing J.A. 15110)
(color alterations and
annotations in
original))

During prosecution, Cozy Comfort also argued the bot-
toms of the claimed armscyes (i.e., armholes) in its design
were "actually below the top of the marsupial pocket," in
contrast to White's armscyes that were "well above the top
of the marsupial pocket," as shown in the annotated figures
below. J.A. 15109. Cozy Comfort argued that the claimed
design "thus ha[d] different relative proportions and loca-
tions of the armscyes and the marsupial pocket," as com-
pared to White, and that such differences were "not
insignificant" but instead were "discernable by an ordinary
consumer." *Id.* Again, Cozy Comfort surrendered claim

scope. In the majority of the accused products, the pocket is placed, as in White, below the armholes:[8]



White, Fig. 3
(J.A. 15109
(annotations in
original))

D788 patent, Fig. 4
(J.A. 15109
(annotations in
original))

Accused product
(Appellants' Br. 40 (citing J.A. 17028)
(color alterations in original))

During prosecution, Cozy Comfort argued the angle of the bottom hem of the claimed design differed from the

---

[8]    In five of the accused products, the top of the pocket is below the bottom of the armholes. *See* J.A. 17028 (HD250), 17048 (HD100), 17059 (HD100S), 17062 (HD120), 17064 (HD201). Top Brand admits two of the accused products had higher pockets. Appellants' Br. 40–41 (citing J.A. 17043 (HD200), 18693 (HD210)).

18                     TOP BRAND LLC v. COZY COMFORT COMPANY LLC

prior art White design: "In the White hoodie, the bottom hem slopes upward from the front to the back. In the inventive design, the bottom hem slopes downward[]" and provided annotated figures showing this distinguishing feature. J.A. 15110. Claim scope was again surrendered. The undisputed evidence shows that the accused products do not have a downward sloping hemline as in the claimed design:



Accused product
(Appellants' Br. 40
(citing J.A. 17028)
(background removed
in original))

D788 patent, Fig. 4
(J.A. 33)

D788 patent, Fig. 6
(J.A. 15110
(annotations in
original))

Thus, multiple significant aspects of the accused products are the same ones Cozy Comfort disclaimed during prosecution, and they cannot be relied on to show design

similarity between the accused and patented designs. *See, e.g.*, *Omega Eng'g*, 334 F.3d at 1323–24. Cozy Comfort has pointed to no other similar features (i.e., features that were not disclaimed) in arguing for infringement.

Finally, we have explained that "[i]f the claimed design consists of a combination of old features that creates an appearance deceptively similar to the accused design, even to an observer familiar with similar prior art designs, a finding of infringement would be justified." *Egyptian Goddess*, 543 F.3d at 677–78. But Cozy Comfort has not argued that the overall arrangement of features creates such an impression in this case, nor does either party suggest that there are non-common features that bear on infringement. The testimony of Cozy Comfort's expert on infringement of the D788 patent is wholly conclusory, simply stating that the accused products were "substantially similar to the [D788] patent design." J.A. 24577 (9:12–13) (HD100 product line); *accord* J.A. 24574–81 (other accused product lines).

Under the correct construction of the D788 patent, the evidence, construed in the light most favorable to Cozy Comfort, permits only one reasonable conclusion: that a hypothetical ordinary observer could not find infringement. The district court erred in denying JMOL.

Cozy Comfort nonetheless argues that a narrower jury instruction would not have changed the jury verdict because the White reference and file history were admitted into evidence at trial and Top Brand's design expert testified regarding the file history, and so we can assume the jury rejected these arguments regarding claim scope. But claim scope is a legal question, and it is not the jury's function to construe the claim. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390–91 (1996). In any event, we have concluded that under the correct construction, the evidence, even taken in the light most favorable to the verdict winner, does not support a finding of infringement.

Because our disposition leaves the case without a design patent infringement determination, we do not reach the validity of the D788 patent.  It is true that "[a] party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."  *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993).  But here, the party seeking a declaratory judgment of invalidity, Top Brand, represented at oral argument that if we reversed the district court's denial of JMOL on design patent infringement, we need not opine on its invalidity claim.  Oral Arg. at 13:54–14:24.  Under such circumstances, we need not address invalidity.  *See CloudofChange, LLC v. NCR Corp.*, 123 F.4th 1333, 1342 n.2 (Fed. Cir. 2024) ("At oral argument, [the party] contingently abandoned its counterclaim for declaratory judgment of invalidity should this court reverse the infringement verdict. . . .  Accordingly, we do not reach the issue of invalidity.").

## II.  Trademark Infringement

We now turn to the issue of federal trademark infringement.  Cozy Comfort alleged that Top Brand infringed Cozy Comfort's registered trademarks for "THE COMFY" for blanket throws and related online retail services, primarily pointing to the use of the word "Comfy" on a Top Brand-run website.  The jury found that Top Brand infringed Cozy Comfort's trademarks under the Lanham Act.  Top Brand argues the district court should have granted JMOL of no trademark infringement.  We agree that the jury's verdict as to trademark infringement was not supported by substantial evidence.

The Lanham Act provides a civil cause of action against anyone who

> without the consent of the registrant[] . . . use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or

> advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(a).  "The term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127.  Cozy Comfort had the burden of proving that Top Brand's use was likely to cause consumer confusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004) ("Section 1115(b) [of Title 15] places a burden of proving likelihood of confusion (that is, infringement) on the party charging infringement . . . ."); *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).  In reviewing determinations of trademark infringement, we apply regional circuit law, in this case, Ninth Circuit law.  *Nautilus Grp., Inc. v. ICON Health & Fitness, Inc.*, 372 F.3d 1330, 1334 (Fed. Cir. 2004).  We thus review the jury's likelihood of confusion determination for substantial evidence. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1013–14 (9th Cir. 1985).

In the Ninth Circuit, "[a]n eight-factor test—the so-called *Sleekcraft* factors—guides the assessment of whether a likelihood of confusion exists." *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007) (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006)).  The *Sleekcraft* factors are:

> (1) the strength of the [protected] mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the [accused infringer's] intent in selecting the mark; and (8) the likelihood of expansion into other markets.

TOP BRAND LLC v. COZY COMFORT COMPANY LLC

*Id.* (quoting *McCord*, 452 F.3d at 1136 n.9)*; see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). "The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Perfumebay.com Inc.*, 506 F.3d at 1173 (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005)); *see also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) ("Some factors are much more important than others, and the relative importance of each individual factor [is] case-specific."). "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield*, 174 F.3d at 1054. The jury was instructed on seven of the eight factors.[9]

---

[9]   The jury was instructed that, in considering the likelihood of confusion, it should examine:

(1) Strength or weakness of the Cozy Comfort's The Comfy . . . trademark . . . .

(2) [Top Brand's] use of the . . . trademark . . . .

(3) Similarity of Cozy Comfort's and [Top Brand's] designs. . . .

(4) Actual confusion. . . .

(5) [Top Brand's] Intent. . . .

(6) Marketing/Advertising Channels. . . . [and]

The parties did not address each of the seven factors at trial, nor do they do so on appeal. The relatedness of the goods is undisputed. As to the remaining *Sleekcraft* factors, while the parties do not conduct their analyses in terms of the *Sleekcraft* case, the parties' arguments nonetheless focus on: strength of the protected mark, similarity of the protected mark and the allegedly infringing mark, and evidence of actual consumer confusion.

As to the strength of the protected mark, "[t]he purpose of examining the strength of the . . . mark is to determine the scope of trademark protection to which the mark is entitled. The more unique the mark, the greater the degree of protection." *Surfvivor Media*, 406 F.3d at 631 (citation and footnote omitted). "Marks that are descriptive or highly suggestive are entitled to a narrower scope of protection, *i.e.*, are less likely to generate confusion over source identification, than their more fanciful counterparts." *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1339 (Fed. Cir. 2015).

The undisputed evidence put forth at trial, viewed in the light most favorable to Cozy Comfort, allows only one reasonable conclusion: that Cozy Comfort's mark, "THE COMFY," is entitled to weak protection. "When a mark incorporates generic or highly descriptive components, consumers are less likely to think that other uses of the common element emanate from the mark's owner." *United States Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 562 (2020). Here, the dominant part of the mark, "comfy," is "descriptive or highly suggestive," *Juice*

---

(7) Degree of [Consumer] Care[.]

*Top Brand LLC v. Cozy Comfort Co.*, No. 2:21-cv-00597 (D. Ariz. Apr. 26, 2024), ECF No. 388, at 29:2–30:23 (numbering added). Neither party contests the jury instruction on appeal.

*Generation*, 794 F.3d at 1339, of the goods and services at issue, namely, blanket throws and online retail services featuring the same. Given how descriptive the mark is of the goods at issue (blanket throws),[10] the marks provide weak protection. *See Drackett Co. v. H. Kohnstamm & Co.*, 404 F.2d 1399, 1400 (CCPA 1969) ("The scope of protection afforded [to] such highly suggestive marks is necessarily narrow and confusion is not likely to result from the use of two marks carrying the same suggestion as to the use of closely similar goods."); *id.* ("The marks 'ENDUST' and 'DUSTOP' are highly suggestive terms which were obviously adopted to indicate that the products sold thereunder are intended to end or stop dust or dusting. It is well settled that the scope of protection afforded marks of this character must necessarily be narrow . . . ."); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1143–44 (9th Cir. 2002). The marks for "THE COMFY" were only entitled to weak protection.

We next consider the similarity of the protected mark and the allegedly infringing mark. In this connection, we consider whether Cozy Comfort established that Top Brand used a similar mark as a source identifier. Cozy Comfort argues the evidence presented at trial was adequate to support the jury's conclusion based primarily on evidence of the brief use of the word "Comfy" on a Top Brand-run website.

There is insufficient evidence to support a jury determination that Top Brand used a similar mark as a source identifier. Cozy Comfort did not present <u>any</u> evidence

---

[10]   One of the Appellees, Mr. Michael Speciale, testified that "comfy means comfortable." J.A. 24274 (67:10–11). Cozy Comfort's trade dress expert, Dr. Robert Frank, explained that the word "comfortable" "could be descriptive and . . . could also possibly be generic" for a soft blanket. J.A. 24678–79 (110:25–111:6).

showing that Top Brand used Cozy Comfort's full mark "<u>THE</u> COMFY."[11]  Cozy Comfort only submitted evidence showing Top Brand used the word "Comfy" on an archived website ("the Catalonia website") advertising the Top Brand Companies' products.  J.A. 20492.

This does not establish that the word "Comfy" was used as a source identifier.  The Catalonia website shows a drop-down menu with the heading "Wearable Blanket" that lists "Oversize Hoodie," "Mermaid Tail Blankets," "<u>Comfy</u>," and "Snuggly."  J.A. 20492 (emphasis added).  Mr. Ngan testified that he used "Comfy" in that context to "<u>describe the product</u>, how soft [it is]."  J.A. 23771 (199:7–10) (emphasis added).  Cozy Comfort failed to present evidence to contradict this testimony.[12]  For example, at trial, Cozy Comfort put forth an expert, Dr. Robert Frank, to support its claims of trade dress infringement but did not ask him about the trademark infringement claims.  *Top Brand LLC v. Cozy Comfort Co.*, No. 2:21-cv-00597, ECF No. 356, at 59:1–3.  The rest of the identifiers in the drop-down menu similarly show the use of descriptive terms.  We conclude that here

---

[11]  One of the Appellees, Mr. Michael Speciale, indicated that the word "THE" is an important part of Cozy Comfort's mark.  He testified that according to Cozy Comfort's advertising, "[I]f it doesn't say The Comfy, it's not a Comfy."  J.A. 24275 (68:23–25).

[12]  Cozy Comfort argues Top Brand used its mark as a source identifier because (1) Mr. Ngan filed a trademark application for "COMFY PAJAMAS" for certain types of apparel, J.A. 20167–87; and (2) Cozy Comfort presented evidence of product drawings that Top Brand sent to manufacturers labeled with the title "COMFY," J.A. 16990–91.  Neither of these pieces of evidence is sufficient to support the jury's verdict.  Neither of these uses was directed to consumers, so they could not cause any likelihood of consumer confusion.

there is insufficient evidence from which a reasonable jury could find that the word "Comfy" was used as a source identifier as opposed to as a descriptor.

Indeed, Cozy Comfort cannot remove the descriptive term "comfy" from the public domain without a showing of secondary meaning, which it has not made. *See Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) ("To take a descriptive term out of the public domain, a plaintiff must demonstrate that the relevant buying public accords it secondary meaning."). The evidence does not show that Top Brand used the word "Comfy" on the Catalonia website as anything other than a descriptor. The use of only the descriptive adjective "comfy" to describe a blanket or sweatshirt product is not actionable trademark infringement here.

Finally, Cozy Comfort argues that there was evidence of actual confusion. It points to a comments portion of an Amazon listing for one of Top Brand's Tirrinia products as evidence of actual consumer confusion.[13] The comments section of the webpage depicts a customer question, "is this

---

[13] There is no evidence showing a connection between the Catalonia webpage discussed previously and the consumer comments page discussed here. Cozy Comfort argues on appeal that "[i]f users clicked on the 'Comfy' link [from the drop-down menu on the Catalonia webpage], they were re-directed to an Amazon store to have their orders fulfilled." Appellees' Br. 10 (citing J.A. 23773 (201:1–23)). Even accepting that as true, Cozy Comfort has not pointed to any record evidence showing what (if any) Amazon webpage users were "re-directed to" from the Catalonia webpage. The Amazon webpage in the record provided to this court lists one of Top Brand's Tirrinia products. Cozy Comfort does not allege that the Catalonia webpage redirected to that Tirrinia listing.

the real brand 'comfy'?", and displays four answers that appear to be provided by various third parties:

> (1) "Tirrinia is the brand name of this sweatshirt however it is the exact thing as a Comfy";

> (2) "No but we [sic] the comfy brand one too and they are similar in quality.  Other than comfy name looks the same";

> (3) "Yes, It is. . . .  It is very soft"; and

> (4) "The Comfy, yes."

J.A. 20477.  The first three answers are not evidence of actual confusion.  The first and second answers acknowledge that the product sold on the webpage is <u>not</u> the branded product "The Comfy" sold by Cozy Comfort.  The third and fourth answers, when viewed in the light most favorable to Cozy Comfort, arguably show two instances of confusion.  But Cozy Comfort does not point to any evidence tying the Amazon webpage comments to any language used by Top Brand to describe its products.  The Amazon webpage identified Top Brand's product under the brand name Tirrinia, J.A. 20469, and did not use the word "comfy" to describe its product.  In other words, there is no evidence that Top Brand was the source of any actual confusion that existed as to the webpage.  Even if there were evidence that Top Brand was somehow responsible for the confusion, the question and two answers are not substantial evidence of likelihood of confusion here.  *See* 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23:14 (5th ed. May 2025 update) ("Evidence of only a small number of instances of actual confusion can be dismissed as inconsequential or *de minimis*."); *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.,* 809 F.2d 601, 606 (9th Cir. 1987) (affirming court's finding that any actual confusion was *de minimis* where "the instances of confusion, at best, were thin, and at worst, were trivial"); *Entrepreneur Media,* 279 F.3d at 1150 ("A reasonable juror may . . . find *de minimis*

TOP BRAND LLC v. COZY COMFORT COMPANY LLC

evidence of actual confusion unpersuasive as to the ultimate issue of likelihood of confusion." (citations omitted)).

Cozy Comfort bore the burden of proving trademark infringement and relies on no other factors to support its argument. We conclude that, based on the undisputed evidence viewed in the light most favorable to Cozy Comfort, no reasonable jury could have found that Cozy Comfort met its burden to prove trademark infringement. Accordingly, we reverse the district court's denial of JMOL of no trademark infringement.

## CONCLUSION

For the foregoing reasons, we reverse the district court's denial of JMOL as to noninfringement of the D788 patent and the trademarks. We do not reach the other issues raised by the parties concerning alter ego liability and disgorgement of profits.

## REVERSED